# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

IN THE MATTER OF,                    Case No. 03-48939
                                     Detroit, Michigan
NM HOLDINGS COMPANY, LLC             January 11, 2006
_____/         12:13 p.m.

MOTION HEARING
BEFORE THE HONORABLE THOMAS J. TUCKER
TRANSCRIPT ORDERED BY: <u>DEBORAH FISH, ESQ.</u>

APPEARANCES:

| | |
|---|---|
| For the Debtor: | LAURA EISELE, ESQ. (P42949) |
| | JUDY O'NEILL, ESQ. (P32142) |
| | Foley & Lardner |
| | 500 Woodward Avenue |
| | Suite 2700 |
| | Detroit, MI  48226 |
| | 313-234-7100 |
| | |
| | JULIE TEICHER, ESQ. (P34300) |
| | Erman, Teicher, Miller, Zucker |
| | & Freedman |
| | 400 Galleria Officentre |
| | Suite 444 |
| | Southfield, MI 48034 |
| | 248-827-4100 |
| For Doeren Mayhew: | RONALD ROSE, ESQ. (P19621) |
| | Dykema, Gossett |
| | 400 Renaissance Center |
| | Detroit, MI 48243 |
| | 313-568-6800 |
| For Jefferies: | JILLIAN GUTMAN MANN, ESQ. |
| | (IL6286300) |
| | 8000 Sears Tower |
| | Chicago IL  60606 |
| | 312-876-8000XXXXXXXXX |
| For Conway, MacKenzie & | RALPH MCDOWELL, ESQ. (P39235) |
| Dunleavy: | Bodman, LLP |
| | 100 Renaissance Center |
| | Floor 34 |
| | Detroit, MI 48243 |
| | 313-393-7592 |

```
 1 | For the Creditors' Committee:   WILLIAM COHEN, ESQ. (P57965)
                                     Pepper, Hamilton, LLC
 2 |                                 100 Renaissance Center
                                     Suite 3600
 3 |                                 Detroit, MI  48243
                                     313-393-7361
 4 |
                                     FRED S. HODARA, ESQ.
 5 |                                 Akin, Gump, Strauss, Hauer &
                                     Feld, LLP
 6 |                                 590 Madison Avenue
                                     New York, NY 10022
 7 |                                 212-872-1000

 8 |                                 JOEL APPLEBAUM, ESQ. (P36774)
                                     Clark, Hill
 9 |                                 500 Woodward Avenue
                                     Suite 3500
10 |                                 Detroit, MI   48226
                                     313-965-8377
11 |
   | For JP Morgan Chase Bank:       WILLIAM BURGESS, ESQ. (P36922)
12 |                                 Dickinson, Wright, PLLC
                                     500 Woodward Avenue
13 |                                 Suite 4000
                                     Detroit, MI 48226
14 |                                 313-223-3500

15 | For Pre-Petition Seniors:       MATTHEW CLEMENTE, ESQ.
                                     Sidley, Austin, Brown & Wood
16 |                                 Bank One Plaza
                                     10 S. Dearborn Street
17 |                                 Chicago, Illinois  60603
                                     312-853-7710
18 |
   | For Deluxe Pattern:             STEPHEN TOWBIN, ESQ.
19 |                                 Shaw, Gussie
                                     321 N. Clark Street
20 |                                 Suite 800
                                     Chicago, IL 60601
21 |                                 312-276-1333

22 | For Larry Winget:               NANCY PETERMAN, ESQ.
                                     Greenberg, Traurig
23 |                                 77 Wacker Drive
                                     Suite 2500
24 |                                 Chicago, MI  60601
                                     312-456-8400
25 |
```

```
 1                                  RALPH MCKEE, ESQ. (P39484)
                                    Allard & Fish
 2                                  535 Griswold Street
                                    Suite 2600
 3                                  Detroit, MI 48226
                                    313-061-6141
 4
       For U.S. Trustee:           CLARETTA EVANS, ESQ. (P36933)
 5                                  U.S. Department of Justice
                                    211 W. Fort Street
 6                                  Suite 700
                                    Detroit, MI  48226
 7                                  313-226-7912

 8     PRESENT:                    ANTHONY BLANKINSOP, ESQ.

 9     Court Recorder:            Shelley Grasel

10     Transcriber:               Deborah Kremlick

11

12

13

14

15     Proceedings recorded by electronic sound recording, transcript
       produced by transcription service.
16

17

18

19

20

21

22

23

24

25
```

1    (Court in Session)

2          THE CLERK:  Please rise.  This Court is back in

3    session.  You may be seated.  The Court will call the matter

4    of NM Holdings Company, LLC, case number 03-48939.  And Deluxe

5    Pattern Corporation, 04-54977.

6          THE COURT:  Actually, we're not calling Deluxe yet.

7          THE CLERK:  Okay.

8          THE COURT:  The Deluxe folks --

9          MS. EISELE:  Good afternoon, Your Honor.  Laura

10   Eisele on behalf of NM Holdings.

11         THE COURT:  Good afternoon.  Let's have other

12   appearances in this case.

13         MS. O'NEILL:  Judy O'Neill, Your Honor, on behalf of

14   the debtor NM Holdings.

15         MR. ROSE:  Ronald Rose, Your Honor, Dykema, Gossett

16   on behalf of our final fee application.  We're also appearing

17   for Doeren Mayhew on behalf of its final fee application.

18         MS. MANN:  Jillian Gutman Mann on behalf of

19   Jefferies.  I also have an application to be admitted.

20         THE COURT:  All right.  We'll get to that in just a

21   moment.

22         MR. MCDOWELL:  Good afternoon, Your Honor.  Ralph

23   McDowell of Bodman, LLP on behalf of Conway, MacKenzie, and

24   Dunleavy.

25         MR. COHEN:  Bill Cohen, Your Honor, Pepper,

 1  Hamilton, former counsel -- former co-counsel for the

 2  creditors' committee.

 3          MR. HODARA:  Good afternoon, Your Honor.  Fred

 4  Hodara, Akin, Gump, Strauss, Hauer, and Feld for the

 5  creditors' committee.

 6          MR. BURGESS:  Good afternoon, Your Honor.  William

 7  Burgess of Dickinson, Wright on behalf of JP Morgan Chase

 8  Bank.

 9          MR. CLEMENTE:  Good afternoon, Your Honor.  Matt

10  Clemente of Sidley, Austin on behalf of the pre-petition

11  senior lenders.

12          MR. BLANKINSOP:  Good afternoon, Your Honor.

13  Anthony Blankinsop, B-l-a-n-k-i-n-s-o-p on behalf of the

14  Massachusetts Attorney General's office.

15          MR. APPLEBAUM:  Joel Applebaum, Clark, Hill on

16  behalf of the committee.

17          MR. TOWBIN:  Good afternoon, Your Honor.  Stephen

18  Towbin on behalf of the Deluxe debtors.

19          MS. TEICHER:  Julie Teicher of Erman, Teicher,

20  Miller, Zucker, and Freedman, special counsel for the debtors.

21          THE COURT:  All right.

22          MS. EVANS:  Claretta Evans for the United States

23  Trustee.

24          MR. MCKEE:  Ralph McKee appearing on behalf of Mr.

25  Winget.

1          MS. PETER MAN:  Nancy Peterman also on behalf of Mr.

2     Winget.

3          THE COURT:  All right.  Before we begin, we have one

4     attorney or are there more than one attorney that needs to --

5     would like to be admitted?  Just you, okay.

6          MR. BLANKINSOP:  Your Honor, I am not admitted.  I

7     don't have an application with me.

8          MS. EISELE:  We have agreed as far as his

9     application for administrative expense as to how we're going

10    to proceed, so I can put that on the record, Your Honor.

11         THE COURT:  All right.  Mr. Blankinsop, you're not

12    appearing today, you're not admitted.  Okay.

13         MS. EISELE:  Your Honor, I would move for the

14    admission of Jillian Gutman Mann to the United States District

15    Court for the Eastern District of Michigan.  I have her

16    application for admission here and after this proceeding we

17    can have that filed with the District Court.

18         THE COURT:  All right.  Would you hand that card up,

19    please?  All right.  Thank you.  All right.  Ms. Gutman Mann,

20    I'll administer the oath.  Raise your right hand, please.

21         (ATTORNEY JILLIAN GUTMAN MANN WAS SWORN)

22         THE COURT:  All right.  I'll sign your card here.

23    All right.  I've signed your card and we'll hand that back to

24    you and welcome to the Bar of this Court.

25         MS. GUTMAN MANN:  Thank you, Your Honor.

1            MS. EISELE:  Thank you, Your Honor.

2            THE COURT:  All of our cases are just like this one,

3   by the way.  All right.  Ms. Eisele, we have a bunch of things

4   up today.  It seemed to me, and you tell me if you think

5   otherwise, that we ought to deal with the attorney fee

6   application matters first followed by the Court's show cause

7   order on dismissal or conversion followed by the

8   administrative claim objections.

9            MS. EISELE:  That would be fine, Your Honor.  As to

10  the administrative claim objections, seven of those we have

11  agreed to adjourn and there have been either stipulations

12  filed, or they will be filed.

13       On three we've agreed to the amount and there are --

14  stipulations have been filed or will be filed.  And there's

15  one that they actually withdrew their application.  So

16  either --

17            THE COURT:  Well, I'll tell you what, we've launched

18  into those, so let's do those then.

19            MS. EISELE:  Okay.

20            THE COURT:  In light of what you've said, let's do

21  those.

22            MS. EISELE:  Okay.  The -- the matters that have

23  been -- that we have agreements to adjourn is Joseph Bione,

24  his application for an admin claim.  It's docket number 3533.

25            THE COURT:  I thought that was settled.  We were

1 told that was settled.  It's not?

2          MS. EISELE:  No.  It was -- it was -- we agreed to

3 adjourn it.  The -- really indefinitely because if there's not

4 money to pay it, he doesn't want to go through the -- the

5 process of having to put on evidence to prove the claim.  But

6 there was a stip filed, I believe, yesterday in connection

7 with that matter.

8          THE COURT:  Well --

9          MS. EISELE:  The second one is the PB --

10          THE COURT:  Well, wait a minute, wait a minute.

11          MS. EISELE:  Oh, I apologize.

12          THE COURT:  Adjourn indefinitely, it sounds a little

13 too in depth then to me.

14          MS. EISELE:  And I apologize, I don't have that

15 stipulation with me.

16          THE CLERK:  I'll call it up here, but it's a long

17 document and it might take a while.

18          THE COURT:  All right.  Well --

19          MS. EISELE:  Should we reset that --

20          THE COURT:  Let's come back to that in a moment then

21 once she pulls that up.  Go ahead.

22          MS. EISELE:  Okay.  The PBGC has agreed to adjourn

23 until February 15" their application for an administrative

24 expense claim.

25          THE COURT:  I think that's already been handled.

1    MS. EISELE: That has been filed. Huntington

2  National Bank, there has not been a stip filed yet, but they

3  -- they want to adjourn theirs until the February 15th date as

4  well.

5    THE COURT: All right.

6    MS. EISELE: Counsel for Golf Course Services is

7  here in the courtroom today. Or I thought she was here, but

8  we've agreed to adjourn that matter to February 15th as well.

9    THE COURT: All right.

10    MS. EISELE: JP Morgan Chase, they would also like

11  to adjourn until February 15th and we'll be submitting a

12  stipulation with respect to JP Morgan Chase.

13    THE COURT: All right.

14    MS. EISELE: There are two fee applications that are

15  being adjourned, one is a final fee application, one Deloitte

16  and Touche and the other is Pricewaterhouse Coopers.

17    THE COURT: Well, wait a minute. Let's stay on the

18  administrative claims.

19    MS. EISELE: Okay.

20    THE COURT: For the moment. Let's -- let's go

21  through and finish those.

22    MS. EISELE: Okay. Resolve Site Group.

23    THE COURT: The stipulation is entitled stipulation

24  resolving?

25    THE CLERK: Stipulation resolving creditor Joseph

1  Bione's application for payment for administrative claims.

2  Shall I print that?

3          THE COURT:  Yeah.

4          THE CLERK:  It will take forever.

5          THE COURT:  We'll print that stipulation, take a

6  quick look at it.

7          MS. EISELE:  Okay.

8          THE COURT:  So we'll come back to that.  All right.

9          MS. EISELE:  Will Resolve Site Group file, the

10 Mandarin claim.  I was -- they did not have contact

11 information on their application and I was not able to get in

12 touch with them, so I guess I would suggest that we adjourn

13 that as well unless there is --

14         THE COURT:  Resolve Site?

15         MS. EISELE:  Resolve Site Group.

16         THE COURT:  I think technically that one was not

17 even scheduled for today, but we can set that for February --

18         MS. EISELE:  Okay.

19         THE COURT:  -- 15.  All right.

20         MS. EISELE:  As to Richard T. Gordon, we've

21 stipulated as to the amount of their claim and we'll be

22 submitting a stipulation in that regard.

23         THE COURT:  So that's resolved.

24         MS. EISELE:  That's resolved.

25         THE COURT:  All right.

1          MS. EISELE:  The State of New Hampshire, the debtors

2   agree with the amount of their claim, but the State of New

3   Hampshire has asked for immediate payment.  We obviously can't

4   agree to that.  What we did agree is that we could enter a

5   stip that agrees to the amount of their claim.  The State of

6   New Hampshire would like some time to review the settlement

7   agreement and some other documents to get comfort that there

8   really isn't money to pay them right now.  And we'd like to

9   put over their request for immediate payment to February 15.

10         THE COURT:  All right.

11         MS. EISELE:  Steven Hopkins, there was an

12  application for admin expenses filed by Steven Hopkins.  They

13  did withdraw that application.

14         THE COURT:  There was a notice of withdrawal filed

15  or some – or something to that effect?

16         MS. EISELE:  Right.  There was a withdrawal filed.

17         THE COURT:  All right.

18         MS. EISELE:  And then this was not an admin claim

19  that was set for hearing today, Your Honor, but I just wanted

20  to bring it to your attention as the PIC, Productivity

21  Improvement Center had filed some time ago a motion for

22  administrative expense claim.  They also filed an objection to

23  a couple of fee applications.

24         We have agreed to the amount of their claim and I believe

25  they filed a stipulation yesterday.  They have also agreed to

1  withdraw their objections to the fee applications that were

2  outstanding and I was told that they were going to be filing

3  those withdrawals this morning.

4      But that -- that is the record of what I have for

5  administrative expense claims, Your Honor.  If you would like

6  to --

7          THE COURT:  Well, while you're on the subject of

8  PIC, Product Improvement, I was aware of them objecting to

9  your -- your -- your firm's seventh fee application, but not

10 any others.  What others did they object to, do you know?

11         MS. EISELE:  I know that they objected to an interim

12 application of Conway, MacKenzie and there may have been

13 others, I don't recall offhand.

14         THE COURT:  All right.

15         MS. EISELE:  But they have agreed to withdraw any

16 objections they had outstanding as to fee applications.

17         THE COURT:  All right.  Does that cover all of the

18 administrative claims?

19         MS. EISELE:  That covers all the administrative

20 claims that --

21         THE COURT:  One of the reasons I had thought at

22 least initially to talk about the administrative claims after

23 we deal with the show cause order, is a couple of questions I

24 have about it, what's going to happen with these objections

25 once the case, assuming the case is converted to Chapter 7,

1   you know, questions like do the debtors even have standing

2   anymore to object in the context of a Chapter 7 and also as a

3   practical question, who is going to prosecute to the extent

4   there's litigation.   Who is going to prosecute these

5   objections on behalf of the debtors, unless -- given the --

6   you know, the problem with debtors' counsel in this Chapter 11

7   not being able to get paid for post conversion services unless

8   they're hired by the trustee, for example.   So what are your

9   -- what are your thoughts on the matter?

10              MS. EISELE:   Those are --

11              THE COURT:   We're getting a little ahead of

12   ourselves, but I think conversion seems to be coming, so what

13   - what are your thoughts on that?

14              MS. EISELE:   Those are important issues, Your Honor,

15   and I think special counsel would have concerns with that as

16   well because they're handling at least one of the objections.

17   I think ideally we'd want to turn over the prosecution of

18   those to the Chapter 7 trustee and they could decide whether

19   they want to pursue them or not.

20       We also, you know, unless we were, you know, employed as

21   special counsel to the trustee for certain purposes and -- and

22   that's something that the trustee wanted to proceed with.   But

23   we hadn't thought through these --

24              THE COURT:   So -- so not -- so they wouldn't be

25   prosecuted really in the name of debtors anymore, but in the

1  name of the trustee.

2           MS. EISELE:  That's correct.

3           THE COURT:  Perhaps with you -- your firm as special

4  counsel if you're hired and if you want to be hired by this

5  unnamed future Chapter 7 trustee if the case is converted.

6           MS. EISELE:  That's correct, Your Honor.

7           THE COURT:  Okay.

8           MS. EISELE:  That would be my initial thought.

9           THE COURT:  Looking at this stipulation regarding

10  Mister is it Bione?  Is that how you say it?

11          MS. EISELE:  Right.

12          THE COURT:  It says the debtors and creditor do not

13  agree.  It says Bione withdraws his application for

14  administrative claim.

15          MS. EISELE:  That's correct, I apologize, Your

16  Honor.  I believe he withdrew it with the ability to bring --

17  to pursue it later if there was determined to be money in the

18  estate to -- for payment.

19          THE COURT:  Okay.  So there's no need to adjourn

20  your objection, it's resolved by this.

21          MS. EISELE:  That's correct.

22          THE COURT:  Okay.  So the Bione matter is resolved

23  by Mr. Bione withdrawing his application for administrative

24  expense, right?

25          MS. EISELE:  That's correct, Your Honor.

1    THE COURT:  Okay.  So that -- that one will be

2  deemed resolved and his application withdrawn.  All right.

3  Does that bring us then to the -- now to the attorney fee

4  matters?

5    MS. EISELE:  That's correct, Your Honor.  Ms.

6  O'Neill from our firm is going to be handling that -- our fee

7  application.  I just wanted to point out the two applications,

8  final fee applications that have been adjourned, the Deloitte

9  and Touche and Pricewaterhouse Coopers.  But I wanted to just

10  note for the record that Mr. Winget's objection was applicable

11  to both of those entities as well.  And with that, I'll turn

12  it over to Ms. O'Neill.

13    THE COURT:  I'm sorry, Pricewaterhouse and what was

14  the other one?

15    MS. EISELE:  Deloitte and Touche.

16    THE COURT:  Yeah, okay, I see that.  All right.

17    MS. O'NEILL:  Your Honor, Judy O'Neill from Foley

18  and Lardner on behalf of the firm Foley and Lardner who has

19  filed its final fee application.

20    There were two outstanding objections, Your Honor, given

21  the withdrawal of the PIC objection.  And that is the

22  objection of the United States Trustee and the objection of

23  Mr. Winget.  We have resolved the United States Trustee -- the

24  U.S. Trustee's objection by the agreement to a $50,000

25  reduction from the final actual amended amount given for the

1  December 1 through January 11th period.  So that leaves us only

2  with the Mr. Winget objection.

3      I will --

4          THE COURT:  So that's December 1, '05 through

5  January 1, '06.

6          MS. O'NEILL:  January 11, '06.

7          THE COURT:  I'm sorry, January 11, '06 period.

8          MS. O'NEILL:  Correct.  Your Honor, we have filed on

9  a regular basis our monthly statements in accordance with the

10 order that set forth the 8820 rule on attorney's fees.  And we

11 have also filed quarterly fee applications.  We had one

12 outstanding for Foley and Lardner, now with the withdrawal of

13 the one PIC objection that could perhaps be entered -- entered

14 because there are no objections to it.

15         THE COURT:  That's the seventh.

16         MS. O'NEILL:  That's the seventh.

17         THE COURT:  There were no other objections to the

18 seventh.

19         MS. O'NEILL:  That's correct, Your Honor.

20         THE COURT:  All right.

21         MS. O'NEILL:  I will not repeat for this Court all

22 of the facts of this case because I know this Court and all

23 parties here are painstakingly aware and knowledgeable of all

24 those facts.  This Court knows that it's been a long and

25 arduous journey in this case, one that did not see the

1 agreements that were negotiated at the outset of the case and

2 then subsequently manifest in a plan of reorganization. But

3 ultimately a sale that ended up at least recovering money

4 through credit bid for the senior lenders.

5 Your Honor, we are here today though with only one

6 objection. And that objection is that of Mr. Winget. And

7 he's filed it to all the debtors' professionals. So to the

8 extent that these arguments apply to all the debtors'

9 professionals, I ask the Court to take heed with respect to

10 all of them.

11 He seeks, Your Honor, to avoid the res judicata effect on

12 the final fee order. And he does that for the reason that he

13 claims to -- that he may have, and I use the term may from --

14 directly from his objection. He may have claims to or on

15 behalf of the debtors against the debtors' professionals.

16 He does not provide any specificity for those claims. He

17 does not assert with any particularity any unreasonableness to

18 the fees. He doesn't make any arguments as to no benefit to

19 the estate. He has no objections to any time entries. Just

20 this amorphous assertion that he may have claims for --

21 against the debtors' professionals for or on behalf of the

22 debtors. These --

23 THE COURT: Of which he has not asserted anywhere

24 yet.

25 MS. O'NEILL: Claims which he has not --

1          THE COURT: At least not yet.

2          MS. O'NEILL: Never asserted anywhere. And, Your

3 Honor, they were the same -- that same amorphous assertion was

4 asserted in a prior fee objection that he asserted to the

5 final fee apps of other professionals when they filed them. I

6 believe that was back in October. And he indicated there that

7 he -- he may have those same claims against Foley and Lardner,

8 although their final fee app had not been filed at that time.

9          Through this objection he tries to prevent the

10 application of the doctrine of res judicata. And he tries to

11 do that, Your Honor, without any basis.

12          First, Your Honor, it's a misuse of the doctrine of res

13 judicata which is something that is a defense brought in a

14 subsequent proceeding and therefore applied by a subsequent

15 Court to bar an action that is brought that should have or

16 could have been asserted in the prior action. So I'm not sure

17 this is even properly before this Court.

18          But the clearest reasons to deny this objection is that

19 there is no basis asserted on the merits for this objection.

20 If Mr. Winget had claims, there's been a long and arduous road

21 in which he could have asserted those. In fact the rules

22 provide that there is a means to seek affirmative relief when

23 you file an objection. That was not done here.

24          And, Your Honor, we believe that even if he had claims he

25 would not have standing to assert those claims. When you look

1  at his objection he says he has these claims and -- and I'll

2  quote this because I think it's important, he may possess

3  claims against Foley and Lardner, LLP directly or derivatively

4  for services rendered to or on behalf of the debtors.

5      That, Your Honor, is essentially a claim for malpractice.

6  Malpractice claims under Michigan law can only be brought by

7  the client for whom the attorney renders service.  Mr. Winget

8  was never the client to Foley and Lardner, LLP.  Indeed he had

9  a position throughout the case as this Court well knows in

10  conflict with the attorney -- with the client for -- for Foley

11  and Lardner.  And in fact that is why he's been represented by

12  separate counsel.

13      Only the debtor can bring causes of action for

14  malpractice.  And even if it was a claim that could be brought

15  derivatively, and I see no law cited by Mr. Winget in his

16  objection at all on behalf of these arguments, but if he could

17  bring these claims derivatively there's a process to do that

18  and that involves going before the Court.

19      That is not something, Your Honor, that he could do, lie

20  in wait for -- for these three years until the board's all

21  turned over and then -- and then say, you know, I want to

22  bring a derivative suit and not even have gone through the

23  process to bring a derivative suit.

24      So, Your Honor, we believe that he does not have a valid

25  objection stated here.  It's not clear that he could bring a

1  malpractice claim derivatively.  If he could he hasn't done so

2  in the appropriate manner.  And he cites no loss according to

3  this position.

4      Can he hold up the finality that these professionals seek

5  by this means?  Our argument is no.  First of all because he

6  can't be excluding from res judicata certain claims, they have

7  to be asserted and litigated.  And they haven't been at the

8  appropriate time.  He well knew that at the appropriate time.

9  He's been aware of them since as I say he filed his prior

10 objection back in October.

11     For these reasons, Your Honor, and with all our

12 objections resolved, we believe this Court should give Foley

13 and Lardner the finality it seeks on these fees.  Again,

14 there's been no arguments of no benefit and we believe we

15 should be entitled to this final fee award.

16         THE COURT:  Well, is it your view then that based on

17 these cases Mr. Winget cites or other authority, that if your

18 firm's fees are given -- if your final application is approved

19 today, that that would bar through res judicata, Winget from

20 filing any malpractice -- malpractice claims later, assuming

21 he did have the standing otherwise to do that?

22         MS. O'NEILL:  Yes, it is my view that that's the

23 case.  And Your Honor, the reason I say that is because the

24 doctrine of res judicata applies to claims that -- that arise

25 from the same transaction or occurrence and that these would

1  be that type of claim.  They should have been asserted in --

2  in the objection to the fee application.  So, yes, I do

3  believe the cases he cites are correct and I think there are

4  even cases that he cites that would hold that.

5          THE COURT:  Do you -- is it your -- what about a

6  Chapter 7 trustee if this case gets converted?  A Chapter 7

7  trustee is appointed and looks at this and decides that

8  there's a professional in here that worked for the debtor who

9  ought to be sued for malpractice or some other claim on behalf

10 of the estate.

11         MS. O'NEILL:  I think he would also be barred.

12         THE COURT:  He would, even though he wasn't around

13 at the time of these -- the hearing on the final application?

14         MS. O'NEILL:  That's right, Your Honor, because it's

15 the debtors' claims and they are -- they need to be asserted

16 by the parties in interest at the time of the final fee award.

17         THE COURT:  Why should I grant final approval of any

18 fees if that's true?

19         MS. O'NEILL:  Because, Your Honor, the parties have

20 all had opportunities to raise these issues.

21         THE COURT:  Well, the trustee is not.  There is no

22 trustee, it's coming.

23         MS. O'NEILL:  But, Your Honor, the parties that

24 would have been harmed had the -- had the ability to assert

25 that.  The parties that could have been harmed, the

1 | corporation itself, could have brought those -- those claims.

2 | They could have negotiated against these fees.  Fee statements

3 | were filed in accordance with this Court's order and there was

4 | a mechanism to object and raise issues.  Quarterly fee

5 | applications were filed.

6 | So anyone could have used those opportunities to assert

7 | these claims.  If Your Honor was correct that -- that we

8 | should leave things open for a subsequent Chapter 7 trustee,

9 | there would be no final orders in -- in Chapter 11 cases that

10 | are ultimately converted and that's not the case.

11 | THE COURT:  Well, this comes on the eve of what is

12 | probably the eve of conversion.  And debtors again are

13 | concerned -- I know some of these final applications were

14 | filed some time ago, not on the eve of conversion, a few

15 | months ago even in some cases.  But in your case it was filed

16 | on the eve -- what may be the eve of conversion because of a

17 | concern about the Specker case.

18 | I hadn't understood that there was any desire to -- in

19 | seeking final approval now, to any specific intent or desire

20 | to bar a Chapter 7 trustee from considering and possibly

21 | bringing any claims against your firm if they thought it was

22 | appropriate on behalf of the estate.  And I understand debtors

23 | have expressed the view in their papers regarding the request

24 | for expedited hearing on their 10" application that Specker --

25 | this -- the Specker Court noting that there was an interim

1  allowance rather than a final, it really isn't important in

2  that Court's ultimate holding about disgorgement.

3       So there's -- there's obviously an open issue at a

4  minimum about that.  But is there -- is there authority you're

5  aware of and if it's in these cases cited by Winget, let me

6  know that.  Forgive me for not knowing that, but is there

7  authority that you're aware of on the question of whether a

8  Chapter 7 trustee would be barred by res judicata from the

9  final order now?

10      My -- my concern -- my -- I have been willing to

11 accommodate the debtors' request to have a hearing with the

12 eye toward granting final approval of fees before we convert

13 the case if that's what's going to happen, focus solely on the

14 Specker concern, not focused at all on this issue.  So, is

15 there authority that you're aware of to or fro on the question

16 of the Chapter 7 trustee?

17           MS. O'NEILL:  Yes, Your Honor.

18           THE COURT:  There is.  What -- what is it?

19           MS. O'NEILL:  Excuse me, Your Honor.  In the matter

20 of Intella -- Intellogic Trace, Inc. at 200 F 3d 382.

21           THE COURT:  That's one of the cases cited by Winget,

22 I see.  All right.  That was to bar a Chapter 7 trustee, was

23 it?

24           MS. O'NEILL:  Yes, it was, Your Honor.

25           THE COURT:  All right.

1    MS. O'NEILL:  And the Court -- and the reason that

2  they were barred is because the Court said all issues were

3  known and could have been raised at any time during the fee --

4  objections to fees.  Your Honor, if one were to take -- I

5  understand this Court's --

6    THE COURT:  Well, the trustee of course is not

7  around, but he is the successor to --

8    MS. O'NEILL:  To the debtor.

9    THE COURT:  -- the debtor in fact and the debtor has

10  not objected --

11    MS. O'NEILL:  That's correct.

12    THE COURT:  -- to its own attorney's fees or brought

13  claims against its own attorneys in this case.

14    MS. O'NEILL:  At any time.  And, Your Honor, we're

15  one to always be concerned about that subsequent trustee.

16  There would be no final Chapter 11 debtor attorneys'

17  applications because the debtor attorneys are always stuck in

18  the case until it converts.  And so, Your Honor --

19    THE COURT:  I think the argument might be, therefore

20  there shouldn't be until there is -- until after conversion in

21  their Chapter 7 case.

22    MS. O'NEILL:  But that's not the case.  There are --

23  debtors' professionals do get finality.  That's what I'm

24  saying to you.

25    Take into an extrapolation you would never be able to

1  allow a final fee app process for -- for a Chapter 11 debtor's

2  attorney.

3         THE COURT:  Until there's a Chapter 7 pending.

4         MS. O'NEILL:  Until there's a Chapter 7 trustee.

5         THE COURT:  Right.

6         MS. O'NEILL:  And, Your Honor --

7         THE COURT:  And that trustee has an opportunity to

8  object on that basis.

9         MS. O'NEILL:  Right, right.

10        THE COURT:  Okay.  Go ahead.

11        MS. O'NEILL:  Our point here, Your Honor, is the

12 people who have standing to assert this claim have never even

13 objected, have never raised any of these issues.  And --

14        THE COURT:  I'm not suggesting by my questions that

15 I have any thought that this -- there is such a claim out

16 there or likely or possible.  You know, it's totally

17 theoretical at this point obviously.  So I have nothing

18 critical to say to the debtors' attorneys in this case.

19        MS. O'NEILL:  And thank you, Your Honor.

20        THE COURT:  So I don't want to suggest by my

21 question that -- otherwise.

22        MS. O'NEILL:  Well, thank you, Your Honor, I

23 appreciate that.  My concern here, Your Honor, is we cannot

24 hold up the process that the statute puts in place.  And, Your

25 Honor, if the final fee app would have been final and no

 1  objections, even in the ordinary course had this not -- this

 2  Court not shortened the time by the few days that it shortened

 3  it, it likely would have been final before conversion and

 4  subject ripe for an entry of an order.

 5      There is no reason that -- that there should be finality

 6  held up to protect a claim that's never been asserted and is

 7  only something theoretically asserted by a party who doesn't

 8  have standing to do it.  And not even done with any

 9  particularity as the rules permit.

10          THE COURT:  Are you aware of any cases that say that

11  a Chapter 7 trustee is not barred by a final allowance entered

12  in the 11 case from -- from make -- filing claims against the

13  professionals?

14          MS. O'NEILL:  I am not, Your Honor.  And I can't

15  tell you that I've looked for that either.  I believe the res

16  judicata makes sense to me and I've seen the cases that hold

17  res judicata, so I --

18          THE COURT:  Okay.

19          MS. O'NEILL:  So for those reasons, Your Honor, we

20  urge this Court to allow us to have the finality that we would

21  have had just a few days later if you had not -- if this Court

22  had not shortened the time at which we believe is preserved in

23  the case.

24          THE COURT:  All right.  Thank you.  Why don't we

25  hear from any other fee applicants who have been subjected to

 1  this objection by Mr. Winget and who want to say anything

 2  further about -- about that, then we'll hear from Mr. Winget.

 3      MR. ROSE:  Your Honor, on behalf of Dykema, Gossett

 4  was the predecessor debtors' firm in this case before Ms.

 5  O'Neill moved to Foley.  We do have our final fee application

 6  up.  Doeren Mayhew has asked us to represent it as well.

 7      With regard to your inquiry of Ms. O'Neill, the other

 8  party that could have raised these issues is the committee.

 9  And the committee certainly is the stakeholder in this case

10  and -- and has done extensive investigation and -- and

11  participated in litigation.  And if there were matters that

12  should have been brought to this Court's attention with regard

13  to any malpractice actions, certainly the committee both had

14  the duty and -- and the incentive to do that.

15      The -- the -- there was one other objection filed, Your

16  Honor, to the Dykema fee application by the committee and --

17  and while the committee hasn't withdrawn its application,

18  committee counsel who is here in Court have told me they were

19  not going to press their objection to the Dykema fee

20  application.  It was a single objection that was unique to the

21  Dykema fee application.

22      One other thing, Your Honor, Doeren Mayhew filed its

23  final fee application but did not state in its final fee

24  application the total amount that it's seeking as final fees.

25  All of its interim fee applications were approved by an order

 1  of this Court.  And when we get to the appropriate time in

 2  this hearing, Your Honor, I can give you those final numbers.

 3          THE COURT:  It's just the total of all the interim

 4  amounts that were allowed by previous order?

 5          MR. ROSE:  Yes.  Plus -- plus the current one that's

 6  up today, Your Honor.

 7          THE COURT:  Plus the current what would otherwise be

 8  an interim.

 9          MR. ROSE:  The -- it's the final interim and the

10  request for a final allowance.  And the final interim request,

11  Your Honor, is $18,703.75 and that then the total of all of

12  the interims including that $18,000, is $2,374,836.

13          THE COURT:  All right.

14          MR. ROSE:  Thank you.

15          THE COURT:  Thank you.  Anyone else on the fee

16  applicant side of this want to be heard?

17          MR. MCDOWELL:  Good afternoon, Your Honor.  Ralph

18  McDowell on behalf of Conway, MacKenzie.

19      Your Honor, very briefly, I concurred in Foley's response

20  to the Winget objection and I won't repeat those arguments.

21  Conway, MacKenzie did file its fee application -- its final

22  fee application in October and Mr. Winget objected in October.

23  And so this matter has been -- is not on the eve of

24  conversion, but has been pending for a while.

25          I would point out to the Court a couple of -- of matters.

1    This is the sixth and final fee application.  Your Honor, for

2    -- for reasons that aren't clear, the third application, third

3    interim application was never granted.  There were no

4    objections to it.  There was some confusion because the U.S.

5    Trustee objected to the fourth application and it was

6    mislabeled in various places and so that order granting the

7    third application was never granted even though there were no

8    objections.  So that is brought in --

9              THE COURT:  Are you sure?  Because I've heard that

10   before about applications and found out that that's not

11   correct.  So, are you sure?

12             MR. MCDOWELL:  That -- that's my information, Your

13   Honor.  And I don't think it's of any moment in the sense that

14   -- that is it included in this final application in terms of

15   the request.

16             THE COURT:  All right.

17             MR. MCDOWELL:  And  and it won't change that,

18   obviously the payment scheme.  That's number one.  Number --

19             THE COURT:  When was that third application filed?

20             MR. MCDOWELL:  It covered -- it covered the period

21   October 1, '03 and through December 31, '03, Your Honor.

22             THE COURT:  So when was it filed, do you know, or do

23   you know about when?

24             MR. MCDOWELL:  I don't have that.

25             THE COURT:  I have a docket that is a mile long as

1  you know.

2       MR. MCDOWELL:  Yeah, I can find that, Your Honor.

3       THE COURT:  All right.

4       MR. MCDOWELL:  Okay.

5       THE COURT:  Perhaps you could let us know the -- the

6  better thing would be the docket entry number of the

7  application, but the date would help.

8       MR. MCDOWELL:  Okay.  Also, Your Honor, Conway,

9  MacKenzie had filed a fifth application covering April 1, '04

10  through December 31, '04.  That was the -- the only objection

11  to that application was the PIC objection.

12       And again even though that was filed some time ago, and

13  the objection filed some time ago, that was never resolved or

14  set for hearing.  And so we're requesting approval of that

15  application in this as well.  The --

16       THE COURT:  And that was filed when, what docket

17  number?  Give me that.

18       MR. MCDOWELL:  Same question, Your Honor.  And then

19  finally the sixth application, Your Honor, covers a period of

20  January 1 through April 29 of 2005 which is just under $35,000

21  in fees and expenses, really the tail period.  Conway,

22  MacKenzie resigned at the end of April of 2005 and obviously

23  its work had trailed off prior to that due to the

24  circumstances of the case.

25       My only point, Your Honor, in addition to Mr. Rose's and

1 | Ms. O'Neill's comments are that the administration of the case

2 | should not be held up. That the administration of the case is

3 | not about Mr. Winget or his claims that he has not identified

4 | and it doesn't revolve around those concerns.

5 | And so we believe, Your Honor, that it is appropriate for

6 | the Court to continue to administer the Chapter 11 and that

7 | the granting of these fees in that process should not be held

8 | up. And the effect of that grant would be left to someone

9 | else in terms of the -- what has occurred. So we do request

10 | that those -- the final fee application of Conway, MacKenzie

11 | be granted. Thank you.

12 | THE COURT: All right. Any other applicant?

13 | MS. GUTMAN MANN: Hi, Your Honor. Jillian Gutman

14 | Mann on behalf of Jefferies.

15 | Jefferies would like to concur in the arguments already

16 | put forward and additionally like to state that in regards to

17 | Jefferies' final fee application which was filed on October 7,

18 | I apologize for not having the precise docket number, that

19 | Jefferies' fees were pre-approved by this Court pursuant to

20 | Section 328(a) of the Bankruptcy Code. And that retention

21 | order was docket number 128.

22 | And, Your Honor, in that retention order Your Honor

23 | previously found that the fee arrangement set up for Jefferies

24 | was reasonable. And taking that into account, the -- the 6th

25 | Circuit has held that fees awarded under 328(a) should only be

1  -- they're not subject to the 330 reasonable considerations

2  analysis, but rather they should only be disturbed if

3  unanticipated circumstances have made the fee arrangement

4  improvident.

5      And as we stated in our objection filed with the Court,

6  Mr. Winget has made no such allegation.  In fact he's made

7  nothing but a bare bones allegation that he may at some point

8  have some sort of claim and is worried about the res judicata

9  effect it might have.

10     So considering the nature of these fees and Your Honor's

11  prior approval, there doesn't seem to be a basis or any merit

12  to Mr. Winget's objection as it applies to Jefferies' fees.

13  Thank you.

14          THE COURT:  All right.  Thank you.  Any other

15  applicants want to be heard?  All right.  Why don't we hear

16  from Mr. Winget then.

17          MR. COHEN:  Excuse me, Your Honor.

18          THE COURT:  Yeah.

19          MR. COHEN:  I didn't know if you were limiting it at

20  this point to debtors' counsel.  Pepper, Hamilton was prior

21  counsel for the creditors' committee.  Bill Cohen here on

22  behalf of Pepper, Hamilton as former co-counsel with Akin,

23  Gump.

24      Your Honor, we have filed eight interim fee applications

25  and I was advised last night that we mistakenly filed a

1  certificate of no objection to the latest fee application one

2  day early and we were directed by this Court through a

3  memorandum to file another certificate after the additional

4  one day period expired which we did yesterday.

5          THE COURT:  Yeah.  And at the same time this -- this

6  was set for expedited hearing today.

7          MR. COHEN:  It was.  I was going to mention that,

8  Your Honor.

9          THE COURT:  Yeah.

10          MR. COHEN:  The fee applications that we have filed

11  and that are before you today in the form of our request for

12  approval on a final basis, include both the seven interim fee

13  applications and the eighth fee application.  The prior

14  interim fee applications amount to $1,144,237 in fees and

15  $72,132.96 in expenses for the period March 23rd through

16  October 31", 2000 -- March 23rd, 2003 through October 31", 2005.

17          The amount that we are requesting to be included in the

18  final award if the Court approves our request for the eighth

19  fee application amounts to $2,434.50 in fees and $480.59 in

20  expenses.  That covers the period November 1, 2005 through

21  December 29th, 2005.

22          We will be filing, and although it's not before the Court

23  today, I wanted to mention it.  We will be filing a supplement

24  to the final fee application to cover services rendered for

25  the litigation of preferences.  We have been retained, I

 1   believe as the Court knows, on the basis of an order to

 2   litigate preferences on behalf of the estate and those cases

 3   where debtors' counsel had a conflict.

 4        And we also have additional fees to request and we will

 5   cover that in a supplemental fee application for the Winget

 6   matter, the Winget litigation in which we participated with

 7   our co-counsel Akin, Gump.  So specifically before you today

 8   is our request for final approval of the seven interim fee

 9   applications that you have already approved by separate Court

10   order in the small matter covered by the eighth.

11             THE COURT:  So it's not really a final.

12             MR. COHEN:  As final.

13             THE COURT:  You want finalize to -- can I bifurcate

14   my final fee allowances that way?

15             MR. COHEN:  I don't think I have a choice.

16             THE COURT:  No, no.  Is that something the Court can

17   do?

18             MR. COHEN:  I believe so.  Because the order with

19   respect to the preference litigation under the terms of the

20   retention application, specific order provided that we had to

21   file a separate fee application for the preference matters.

22   And there's been some confusion as to the application of

23   payments by the wind down agent, but that matter will be

24   resolved and that's the major reason why we were not able to

25   file a separate fee application covering preferences in the

1  Winget litigation.

2  In other words the final award could be limited to the

3  specific services as co-counsel for the trustee for matters

4  other than the preference --

5  THE COURT:  Or the committee.

6  MR. COHEN:  Yes.  Matters other than the preference

7  litigation and other than the litigation pertaining to Winget.

8  And that --

9  THE COURT:  Well, remind me, the preference

10  litigation your firm is retained as counsel for who?

11  MR. COHEN:  As co-counsel to the creditors'

12  committee.

13  THE COURT:  For the committee.

14  MR. COHEN:  Yes.

15  THE COURT:  Not the debtors.

16  MR. COHEN:  Right.  And -- but the order

17  specifically provided, and I can hand that up to the Court,

18  that we had to file a separate application to cover those.

19  THE COURT:  Yeah, I'd like to see that.  Well, this

20  order is maybe a little less than clear about who you're

21  representing in those avoidance actions that this covers.

22  MR. COHEN:  I think, Your Honor --

23  THE COURT:  It seems -- I mean arguably it says

24  you're representing the debtor.

25  MR. COHEN:  I thought the title, Your Honor,

1   specifically described the capacity in which we were being

2   retained.  And it was -- it's m y understanding that it was

3   amended because originally the scope of our services did not

4   include the pursuit of preferences.

5            THE COURT:  All right.  Let me hand you this back.

6            MR. COHEN:  Thank you.  Your Honor, Mr. Applebaum

7   just clarified something.  We were retained by the committee

8   to prosecute these actions in the name of the estate because

9   of conflicts that Foley had in prosecuting and others had in

10  prosecuting certain preference actions.  So we were pursuing

11  these as committee co-counsel, but in the name of the estate.

12           THE COURT:  What does that mean?

13           MR. COHEN:  I think it means that to the extent that

14  the causes of action belong to a trustee for a debtor, that

15  the party that would usually prosecute those absent a Court

16  order would be debtors' counsel.  And that because of the

17  conflicts, I believe that's what it means.

18           THE COURT:  So the order is a little unclear because

19  it refers to the Gibson Group case, suggesting maybe the

20  committee is bringing the action on behalf of the estate,

21  having standing under that case and that concept.

22       So, you know, we're getting, I think mixed signals here

23  and the terms of whether you represent debtors or the

24  committee through the Gibson Group committee standing concept.

25  See what I mean?

1          MR. COHEN:  I do, Your Honor.

2          THE COURT:  All right.  All right.  Well, that

3   perhaps needs clarification, but your point is whichever it

4   is, I think your point is whichever the case may be on that,

5   the order contemplates a separate fee application track and

6   fee applications and therefore the Court can give final

7   approval to the -- to the eight applications that you've

8   referred to.

9          MR. COHEN:  Exactly.

10          THE COURT:  Okay.

11          MR. COHEN:  Thank you.

12          THE COURT:  Thank you.  Mr. Hodara.

13          MR. HODARA:  Thank you, Your Honor.  For the record,

14   Your Honor, Fred Hodara of Akin, Gump, Strauss, Hauer, and

15   Feld on behalf of our firm with respect to our fee

16   applications and on behalf of the creditors' committee.

17          Your Honor, at the outset you had indicated you wanted to

18   hear first from the parties that are subject to an objection

19   from Mr. Winget.  Do you want us to wait for Mr. Winget to

20   speak to those, because there is no objection from Mr. Winget

21   to our fee application, or would you like us to talk to our

22   fee application at this time?

23          THE COURT:  You're up, so let's go ahead and talk

24   about your fee application as -- as you would like.

25          MR. HODARA:  Thank you, Your Honor.  Our fee

1 | application was filed on or about January the 4" and Your
2 | Honor provided us with the courtesy of permitting us to
3 | expedite notice of the fee application so that we could get on
4 | the same time track with the other professionals.

5 | The fee application that we filed covers the entire
6 | period of the case from March of 2003 through the current
7 | date.   The fee application subsumes nine periodic fee
8 | applications that have been filed from the beginning of the
9 | case through June of 2005, each of which had been approved,
10 | certain of which had included reductions pursuant to requests
11 | of the United States Trustee and those amounts were reduced
12 | from the applications as they were finally approved.

13 | And then subsequent to the June 2005 period, Akin, Gump
14 | filed monthly statements in accordance with the administrative
15 | fee order that was entered in this case and those monthly
16 | statements covered the periods or the months of July 2005
17 | through and including November 2005.  And then for purposes of
18 | this final fee application they did include our detailed fee
19 | statement for the month of December as well.

20 | So the fee application covers the entire period of the
21 | case as I said, from beginning through the end of December.
22 | And then finally included an estimate of fees through our
23 | estimate of the end of the Chapter 11 proceedings, including
24 | those estimates the aggregate fees covered by the applications
25 | is $5,888,956.50.  That amount includes just short of $700,000

1   specifically for the designated committee actions in the

2   litigation that the committee is conducting with respect to

3   those actions.  And the fee application also includes

4   aggregate expenses of $319,404.83, just short of $15,000 of

5   those expenses relate to the designated committee actions.

6       Of the amounts that I have described, the billed but

7   unpaid portion is $982,366.64 and then with respect to the fee

8   estimate that we've provided fees and expenses of $38,000

9   through -- through the current date we have actual accrued and

10  unbilled fees and expenses of $15,424.55.

11      Your Honor, we did receive one objection to the fee

12  application which was directed at the timing of the fee

13  application and that came from the office of the United States

14  Trustee.  We have met with Claretta Evans of the office of the

15  United States Trustee and agreed that notwithstanding that

16  Your Honor did authorize expediting the application and we did

17  incur some considerable expense in meeting the overnight

18  requirements of that notice that in order for the United

19  States Trustee to be satisfied, that they would be able to

20  deal with the fee application, there would be an accommodation

21  of a reduction in fees of $40,000.

22      And on that basis the United States Trustee has offered

23  to withdraw their objection.  And, Your Honor, no other

24  objections have been received.

25              THE COURT:  All right.  So this application includes

1 an estimate for work to -- to be done after today.

2         MR. HODARA:  Yes, Your Honor.  And we did that

3 estimate on the expectation that it was highly likely the case

4 would be converted to a Chapter 7 sometime in the middle of

5 January.  And as I said we estimated that amount of fees at

6 $30,000, expenses at 8,000.

7     The reason why the expense number is so

8 disproportionately high relative to the fees is because many

9 of the largest expenses that we have, which is really mostly

10 conference calls with our committee come into our system

11 slowly.  And so our estimate was that by the time all of those

12 conference call bills come into the system, our expenses would

13 be approximately $8,000.

14     Obviously to the extent that we are fortunate enough to

15 be paid down the road in this case to the extent that our fees

16 or expenses came in less than those estimated amounts, we

17 would reduce the amount outstanding to be paid by that actual

18 amount.

19         THE COURT:  Well, in any event you've just said that

20 you've agreed to a $40,000 reduction.

21         MR. HODARA:  Yes, Your Honor.

22         THE COURT:  In any event which would exceed the

23 amount of this estimated business.  All right.  All right.

24 Anything else you'd like to say, Mr. Hodara?

25         MR. HODARA:  Yes.  And cut me off if I'm getting out

1 ahead of an issue that's not necessarily ours, but of course

2 we are concerned as the other professionals are with the

3 Specker situation.

4      And I heard what Your Honor said about binding a trustee

5 in Chapter 7.  And it seemed to me that one way to handle the

6 competing concerns of a party that is the trustee who is not

7 even here today relative to the concerns of parties who not

8 only are here today, but have been with this for three years,

9 would be to say that the trustee would not be cut off with

10 respect to those kinds of things that typically aren't cut off

11 like malpractice, gross negligence, things of that sort.  But

12 that all of the parties who are here today and have had proper

13 notice themselves would be cut off in all respects.  And again

14 that's a concept that is somewhat half baked as I'm just

15 thinking through the issues as Your Honor raised them today at

16 this hearing.

17      THE COURT:  Is that something in your view that

18 would work, something the Court can do that would work as a

19 matter of law under the Intellogic Trace and other decisions

20 dealing with res judicata.

21      MR. HODARA:  With apologies, Your Honor, because I

22 had not intended to -- to deal with that issue.  I can't

23 properly respond to that question of the Court.

24      THE COURT:  All right.  Thank you.  Anything else,

25 Mr. Hodara?

1          MR. HODARA:  No.  Thank you, Your Honor.

2          THE COURT:  All right.  Mr. McDowell, you're up

3   again.  You want to give me that information?

4          MR. MCDOWELL:  Yes.  I just pulled it out of my

5   briefcase, I'd like to --

6          THE COURT:  Okay, go ahead.

7          MR. MCDOWELL:  The third application was filed on

8   January 30, '04.  It was supplemented on April 20, '04 and the

9   notice regarding the supplement or the re-notice if you will,

10  went out on May 4, '04.  I'm not sure why the delay occurred

11  there.  The fifth application was filed May 2nd of '05.

12         THE COURT:  And you don't have docket entry numbers,

13  I see.

14         MR. MCDOWELL:  I don't, Your Honor.  I just have

15  those --

16         THE COURT:  All right.

17         MR. MCDOWELL:  -- the papers.

18         THE COURT:  All right.  Thank you.

19         MR. MCDOWELL:  Thank you.

20         THE COURT:  Anyone else on behalf of any of the

21  applicants want to be heard?  Ms. Evans, would you like to be

22  heard now, or do you want to wait until we hear from Mr.

23  Winget?

24         MS. EVANS:  I'll hear from -- I'd like to wait, Your

25  Honor.  Thank you.

1          THE COURT:  All right.  Mr. Winget's counsel.

2          MR. MCKEE:  Good afternoon, Your Honor.  Ralph

3  McKee, Allard and Fish appearing on behalf of Mr. Winget.

4      I want to preface my comments by saying it doesn't give

5  me any great pleasure today to make this argument.  I think

6  most of the people in this room would consider some of these

7  comments to be akin to professional suicide and -- and I think

8  they need to be taken in that light.

9      On the other hand there are important issues here that I

10 think need to be addressed and my client demands be addressed.

11 It needs to be noted at the outset that my client wasn't

12 interested at this juncture in objecting to fees and holding

13 up the process of fee allowance except at -- to the extent

14 necessary to preserve his rights.

15     What we are doing here is objecting to final allowance

16 which triggers, according to the cases that we cited and that

17 point was concurred in by Ms. O'Neill and other counsel for

18 the applicants, that would bar Mr. Winget from making certain

19 claims in other litigation or potential litigation in the

20 future.  That's what we're objecting to, pure and simple.

21     If there was an appropriate statement that allowed direct

22 or derivative claims and excluded the -- the res judicata

23 impact with respect to any of those claims we could add that

24 statement to the order and be done.  What appears to be the

25 case based on the position being taken by the applicants, that

1  they would instead want to force the issue to be decided today

2  by a summary cut off of Mr. Winget's rights or potentially, I

3  would assume, by getting into a detailed examination of those

4  claims and potential mini trials or big trials on each of the

5  fee applications.  Those would be apparently the -- the

6  choices that the Court has in terms of resolving these.

7      The -- the point -- the points that the Court made with

8  respect to the Chapter 7 trustee's rights and so on, I think

9  are directly on point in terms of the difficulties here.  The

10  -- the concern that the applicants have, at least as expressed

11  in the Foley application papers and ex parte motion, et

12  cetera, were the impact of the <u>Specker</u> case.

13      But when you asked her would this bar a Chapter 7

14  trustee's rights, the answer was unequivocally yes.  Mr.

15  Hodara suggests in thinking through the problem that there

16  might be other solutions.  The Court also asked a couple of

17  questions that Ms. O'Neill responded to and made arguments

18  about other parties were here and had opportunities to object

19  and so on and -- and didn't.

20      The fact is in a case like this, the professionals run

21  the estate.  The -- especially at this stage there is no

22  client really.  There is no board of directors.  There is one

23  -- there is one liquidating agent who was picked by the

24  professionals and that's who makes the decisions.

25      And at this point what is readily apparent is that if you

1 adopt the position taken by the applicants, no parties would

2 ever have any right to object to anything that's been done

3 from day one in this case. There has been 25,000,000 or more

4 of fees and there would be no objections and we're all going

5 to do this on 20 days notice, or in Mr. Hodara's case, seven

6 days notice.

7 That strikes me as being quite aggressive. I don't

8 disagree with -- with Ms. O'Neill's point that this does

9 happen in Chapter 11 cases that are then converted to Chapter

10 7. Because it happens every day, it's like jay walking and

11 that doesn't make it right. And I think to bar anyone's

12 rights at this point given these circumstances is just not

13 proper.

14 With respect to Mr. Winget's rights, I think what the

15 focus that I'd like to bring the Court to, is that these same

16 professionals, in particular Akin, Gump and Pepper, Hamilton

17 for the committee, and Foley for the debtors, brought a

18 post-petition breach of fiduciary duty claim against Mr.

19 Winget. It's Paragraphs 380 and 381 of their complaint. This

20 is the 04-4373 adversary number.

21 And I'll quote it. "Winget has continued his breaches of

22 fiduciary duties post-petition based on his failure to

23 disclose to the debtors his personal interest and motives

24 regarding the restructuring". That's part of Paragraph 380.

25 And then Paragraph 381, "Winget's actions have caused the

1 | debtors to incur enormous expenses for professional fees

2 | related to the restructuring process, contrary to the

3 | interests of the debtors' estate".

4 | So these same professionals have put directly at issue

5 | and have put the cloud of -- of litigation over Mr. Winget

6 | about everything that happened in this case from day one, but

7 | they don't want to have any risk for having participated in

8 | that same process and anything that they may have done wrong.

9 | Now, I would suggest to the Court that that litigation is

10 | where those questions will need to be resolved. It may be

11 | that the -- that based on the motions to dismiss that are on

12 | file, or the -- that claim gets dismissed, or others like it

13 | get dismissed, or others that bear on that get dismissed, it

14 | may be that the -- the Chapter 7 trustee will -- will decide

15 | to have a new round of -- of discussions and maybe the case

16 | could get settled. Or if not, the -- if there were no bar,

17 | the Chapter 7 trustee could presumably look at these potential

18 | malpractice claims and decide to pursue them or not. And Mr.

19 | Winget could come in here and ask for the trustee to abandon

20 | them if the trustee doesn't want to pursue them and -- and

21 | allow Mr. Winget to pursue them.

22 | The point is that there -- this issue is not ripe. It

23 | simply is not ripe. And to suggest that there's some sort of

24 | inherent right of finality for -- for Chapter 11 fee awards,

25 | particularly in a case like this and of this magnitude, is

1  extremely aggressive.

2      They're -- I've seen plenty of cases where a Chapter 7

3  trustee did review the fees and did object to them and did get

4  substantial reductions.  That happens regularly too.  And that

5  -- that process and particularly in Mr. Winget's ability to --

6  to deal with the first independent person in this case from

7  the beginning and then ask this Court if the trustee isn't

8  inclined to pursue them to ask to pursue them then, that might

9  be appropriate too.

10      Now, the -- I'm not saying that Mr. -- I don't think Mr.

11  Winget should be forced here today to say exactly what these

12  claims are.  This other case is in its infancy.  We haven't

13  even filed an answer yet.  There are motions to dismiss out

14  there that have not been resolved and there is no reason in

15  particular to -- to make that order of finality.

16      And -- and the -- the concept that every -- that res

17  judicata would then bar Mr. Winget from raising any defenses,

18  is absurd.  Yet I would be willing to bet that the same firms,

19  at least Akin and presumably now Clark, Hill for the committee

20  since the debtor is out of that case, would make those --

21  those res judicata arguments saying none of the firms did

22  anything wrong and you can't blame anything that happened

23  post-petition on them because there's already a finding

24  implicit in this -- in this fee award that bars you from doing

25  that.  They would be the first ones to make that argument.

1    So we're put in a -- in a very difficult position.  We --

2    they say on the one hand, you can't even raise these

3    arguments, you have no standing.  Yet some of the cases,

4    particularly <u>Intellogic Trace</u> says right in there the -- and

5    <u>Englander</u>, the <u>Brows v Englander</u> case says right in there that

6    -- that the -- the party -- the shareholder has a pecuniary

7    interest sufficient to confer standing to contest those

8    because there -- it would impact on whatever deficiency claim

9    might -- might exist and so on for the expressed purpose of

10   applying a res judicata bar.

11       So on the one hand you don't have any standing to make

12   these claims and on the other hand but you didn't so you're

13   barred.  That -- that is a Catch 22 that shouldn't be allowed

14   by this Court.

15       There is also good 6th Circuit authority, <u>Wells Hardware</u>

16   <u>Company, Inc.</u>, 223 F 3d 382 which indicates that a -- a third

17   party to the bankruptcy proceeding, a guarantor in that case,

18   could assert the company's rights defensively in litigation

19   even where the -- the company had already settled those

20   matters with -- with -- a trustee on behalf of the company had

21   already settled those matters with -- with the same parties

22   that the -- that the principles were litigating with.

23       That case stands for the proposition that -- at least in

24   a defensive mode he can't be barred.  I don't want to have to

25   be in this Court litigating those matters later, that's the

1    whole point of this.  There is no reason to do that when all

2    we ask is that they be -- that they be dealt with when they're

3    ripe and that isn't now, that's why we're here.

4        I also wanted to make a few comments about why the -- why

5    everyone else is here.  The reason that -- that all of this is

6    happening, the reason everyone's been brought to this Court to

7    deal with these matters now, is that after almost three years

8    of a spectacularly unsuccessful case incurring all these fees,

9    and by the way paying probably somewhere between 85 and 90% of

10   them, this Court said to those firms, it's time to admit that

11   this is over and convert this to a 7 or say why not.

12       You've already heard at the last show cause hearing why

13   no plan was possible, that there was no agreement with the

14   larger administrative creditors, particularly Deluxe.   In

15   response all the firms scrambled to protect themselves from

16   any questions regarding anything that they've done or charged

17   for in the last three years.

18       So they got an expedited hearing.  Why the urgency?

19   According to their papers they're worried about other

20   administrative creditors under the Specker case.  With all due

21   respect, Your Honor, that is not a reason to strip Mr. Winget

22   of his rights in the same litigation or any other litigation

23   that he might otherwise have.

24       There is -- that is not a good enough reason to take

25   someone under any kind of fairness or due process grounds to

1  take his rights away simply so that they can get an order of

2  finality because they want one to protect themselves.  We want

3  to protect Mr. Winget's rights for the same conceptual type of

4  uncertainty and we're entitled to that language in order to do

5  that.

6      The --

7          THE COURT:  Your objections by the way to a final

8  approval order applies to debtors' professionals, not to the

9  committee's professionals, is that right?

10          MR. MCKEE:  Judge --

11          THE COURT:  You're not objecting to the committee --

12          MR. MCKEE:  I did not -- we did not object to the

13  committee's professionals.  I would make an objection here

14  today and I could certainly follow it up today or tomorrow

15  with an objection to the Akin fee application because that was

16  filed one week ago today.

17      And I think to -- to require that any objection we done

18  on -- on shorter notice than that is completely out of bounds.

19  And we would intend to object to that one on the exact same

20  grounds.

21          THE COURT:  Well, I set it for expedited hearing

22  today though.

23          MR. MCKEE:  I understand that.

24          THE COURT:  So what are your objections to that

25  application?

1          MR. MCKEE:  The same exact -- same -- same exact

2    objection that was done to all the rest of them.  That-- that

3    we want the ability to raise those issues in any appropriate

4    litigation for the same reasons.

5          The -- the -- the committee was involved in the -- in the

6    restructuring of this matter, or the attempted restructuring

7    in this matter.  And they are the -- the plaintiffs

8    essentially, or the people prosecuting the estate's claim for

9    this same post-petition breach of fiduciary duty in which one

10   of the allegations is that Mr. Winget made them run up their

11   fees.

12         And that has to be defended.  It's ironic, I think,

13   Judge, and this is really the last point I wanted to make --

14         THE COURT:  Do you need -- do you need anything

15   other than -- from what you're saying it sounds like you don't

16   need, according -- in your view of this, you don't need

17   anything other than an order that would effectively --

18   effectively say that the Chapter 7 trustee if the case is

19   converted is not barred by in any of these final orders from

20   defending the claims.  And Mr. Winget is not barred, his

21   entities are not barred by asserting any -- in asserting any

22   defenses to any claims that have been or may be brought

23   against him by anyone.

24         Is it -- is it really anything more than that?  Are there

25   -- are there any affirmative claims that -- that Winget would

1   have standing as Winget to bring, you know, if -- you

2   mentioned the Chapter 7 trustee may be abandoning claims

3   against debtors' professionals for example.  I don't know if

4   that works, but if that works, that -- that would be a claim

5   that belonged to the debtors?

6           MR. MCKEE:  Yes.

7           THE COURT:  And it's not a claim -- it's not a

8   Winget claim?

9           MR. MCKEE:  Correct.

10          THE COURT:  And so what -- is there really anything

11  other than the two things that I mentioned that really matter

12  to Winget?

13          MR. MCKEE:  There could be --

14          THE COURT:  If any.

15          MR. MCKEE:  There could be direct claims.  Again we

16  haven't -- we haven't gone through and -- and done the -- the

17  full investigation of them, but there could be direct claims.

18      For example, the -- there could be defamation claims.

19  There could be direct claims under Michigan statute 450.1489

20  which is the separate right of a shareholder to -- to go after

21  directors for damage on things that affected him personally.

22  That could apply.

23      There could be aiding and abetting claims arising from

24  that.  The -- there could be things of that nature that-- that

25  need to be done that would not necessarily be defensive only.

 1  And there would also be the claims that are derivative of the

 2  debtors' estate that frankly no one in this case has any

 3  incentive to bring and the Chapter 7 trustee may not want to

 4  bring either.  That battle hasn't even been joined yet.  And

 5  there's no reason to do so here today.

 6           THE COURT:  Well, in your view under applicable case

 7  law, is it -- would it be effective for the Court to grant

 8  final fee applications but say in the order the -- the kind of

 9  language that you're asking for, would that be legally

10  effective to avoid a res judicata bar under res judicata case

11  law.

12           MR. MCKEE:  I think --

13           THE COURT:  I think that's what you've asked for.

14           MR. MCKEE:  I think that -- that is what I think

15  would be the case.  If -- I don't think that -- that a -- that

16  the parties would be able to -- the other -- the opposing

17  party should be able to assert that -- that there's a res

18  judicata bar with -- which the Court order expressly accepted.

19       I mean res judicata is a -- is a doctrine that arises

20  from a decision made by a Court.  So logically if there was --

21  if there was that type of exclusion it's the same kind of

22  exclusion that you see in orders every day which have been

23  used in this case many many times.

24           THE COURT:  So Winget would be content with that

25  kind of order, the final allowance with that kind of language

1  in the order.  I think that's what you said in your objection.

2            MR. MCKEE:  Yes.

3            THE COURT:  And if some Court later said that isn't

4  effective and you're barred, you're out of luck, you asked for

5  it.

6            MR. MCKEE:  I think under -- under the position that

7  we've taken, Judge, that's -- that's the position that we're

8  taking.  I'm not -- it seems to me that if -- that if -- if

9  the -- if the Court is uncomfortable with that, the other

10 choices are we do -- you know, we roll all this in -- into the

11 other litigation now, or -- or we have separate little

12 discovery proceedings and -- and flesh out the -- whatever

13 those claims are and decide if they're -- if they have merit

14 or not and -- and go forward on that.

15     We weren't interested in -- in doing that at this point,

16 it doesn't make sense, I don't think given where that other

17 case is.

18            THE COURT:  What -- what is the precise wording you

19 would -- you're requesting here in -- in orders granting final

20 fee applications?

21            MR. MCKEE:  We would --

22            THE COURT:  I don't think you had a proposed order.

23            MR. MCKEE:  No.  No, we didn't.

24            THE COURT:  I'm looking at your objection, but --

25            MR. MCKEE:  The -- the --

1          THE COURT:   How would you put it?

2          MR. MCKEE:   Well, we had proposed language, and I

3  could read that, it's pretty short, to the Court now.   Nothing

4  in this order shall preclude, bar, or in any other way affect

5  assertions relating in any way to the applicant made by Larry

6  Winget or any Winget family member or affiliate, collectively

7  the Winget affiliates whether individually or derivatively in

8  any adversary proceeding or other matter involving Larry

9  Winget, any Winget family member, or any of the Winget

10 affiliates.

11         THE COURT:   Read the first of that to me one more

12 time.

13         MR. MCKEE:   Nothing in this order shall preclude,

14 bar, or in any other way affect assertions relating in any way

15 to the applicant made by Larry Winget or any Winget family

16 member or affiliate, collective -- (collectively the Winget

17 affiliates), whether individually or derivatively in any

18 adversary proceeding or other matter involving Larry Winget,

19 any Winget family member, or any of the Winget affiliates.

20         THE COURT:   It's kind of odd, the wording says

21 assertions rather than claims or defenses.   Res judicata

22 normally would bar a claim or possibly a defense, but a claim.

23         MR. MCKEE:   I think --

24         THE COURT: You're worried about judicial estoppel of

25 parties from res judicata --

 1          MR. MCKEE:  Collateral estoppel and -- and judicial

 2   estoppel.  I think in many cases are -- that -- that arena is

 3   pretty murky in my view.  And I wouldn't want to have to worry

 4   about that.  It might -- it would be better perhaps to say

 5   assertions, claims, or defenses would probably be better

 6   language.

 7          THE COURT:  All right.  Go ahead, anything further,

 8   Mr. McKee?

 9          MR. MCKEE:  I think that's it for now, Your Honor.

10          MS. O'NEILL:  Your Honor?

11          THE COURT:  Yeah.

12          MS. O'NEILL:  What you're being asked to do today is

13   to hold open fee applications for the right to possibly assert

14   claims by a party whose been involved in the case for three

15   years and hasn't asserted them either by objections to any fee

16   applications that you've seen before you, and you've seen

17   many, including monthly fee statements, or by cross claim or

18   counter claim in the litigation that's pending before you.

19       And while he was not required in that proceeding to bring

20   those because he filed a motion to dismiss, he certainly could

21   have.  And he has not asserted those in the nature of an

22   objection which the rules allow for and permit him to do as

23   well.

24       So without setting forth any real basis for any claims,

25   just the amorphous assertion that he may have them, he wants

1  to have discovery and fishing expeditions. You're being asked

2  to do something which I don't think the Court can do, try to

3  twist the doctrine of res judicata, which isn't for this Court

4  but for a subsequent Court to apply, in your order.

5      I've heard the doctrine of res judicata totally turned on

6  its head by this pleading and by what you're being asked to do

7  today. Res judicata is as this Court said, claim preclusion.

8  Why do we not preserve things in orders for claims that can

9  later be brought? Because what res judicata does for purposes

10 of finality and repose, is it says when people know facts and

11 circumstances that give claims that arise out of the same

12 transaction and occurrence, they have to be brought. And this

13 was the opportunity to do that.

14     And Mr. Winget knew he had that opportunity and he didn't

15 do it. And now this Court is being asked to -- to twist the

16 doctrine in a way that will suit him. Your Honor, res

17 judicata is something for the next Court to apply when it sees

18 the claim, you can't do it in a vacuum because you have to see

19 the claim to decide if it arose out of the same transaction

20 and occurrence and therefore should be bound.

21     Now to go to your issue about the trustee. We have an

22 odd circumstance here. And this isn't on the eve of

23 conversion. It is with respect to Foley right before the eve

24 of -- before conversion because as I said, Foley was stuck in

25 the case throughout this time and didn't abandon its duties.

1       And I don't think we can twist what's happened here

2   because for both the creditors' committee and for the debtors'

3   attorneys we have crossed two firms.  So because we don't know

4   what these amorphous claims are, we don't even know if they

5   lie with the professionals who did the services at one firm or

6   the next firm.  We don't know what they are and they've never

7   been asserted.

8       In Dykema's fee application and Pepper -- and I'm not

9   sure about Pepper's, but clearly Dykema's wasn't filed on the

10  eve of the conversion.  So how now do you keep them open for

11  one debtors' professional and not the -- one debtors' firm and

12  not the other?

13      And then, Your Honor, I go to Mr. Rose's point which is

14  the important point here.  Who will a trustee in this action

15  represent?  A trustee will represent the benefit of unsecured

16  creditors.  And the unsecured creditors know every fact and

17  circumstance about this case.  And they could have asserted

18  these rights all along and did not.

19      The reason is because they don't lie.  And so I'm telling

20  you to keep it open for a trustee is duplicative.  Parties

21  have had the opportunity all along to raise these issues, both

22  the debtor because there was a board that was incredibly

23  active throughout the entire case, and there is still a board,

24  one member, who -- who was appointed not by the debtors, but

25  was appointed by the creditors' committee, the real

1  stakeholder here with the consent of the agent and -- and New

2  Venture Holdings, the other stakeholders in the case.

3      So it's not like we don't have a watch dog here.  And

4  indeed the debtor -- the professionals make no decisions in

5  this case without going through the board, the acting board

6  member, Mr. Scherrer who does take the temperature of the

7  constituents before he makes decisions.

8      So, Your Honor, we have a group of professionals here who

9  have taken a lot of risk in this case.  They have gone months

10 without payment, months while they were in trial spending --

11 spending fees, and now till the end without -- without --

12 without clear hope of payment of these claims.

13     I would suggest just because of the time element the fees

14 are not even what they've been stated to be on the papers,

15 they're less because the time value of money makes them less.

16 And we have years before the litigation is concluded.

17     Certainly Mr. Winget knows all the facts and could have

18 asserted them, he hasn't done that.  We shouldn't preserve the

19 rights for him.

20     And as for the trustee, because the very people that the

21 trustee represents have been actively involved and could have

22 asserted these issues and didn't, there is no problem here

23 with claim preclusion if it applies.

24          THE COURT:  Let's -- let me ask you to talk briefly

25 about the Specker problem that debtors' counsel at least in

1  their application for expedited hearing raised as their

2  concern and the reason they wanted to have the final hearing

3  on the final fee applications before conversion.

4       I mean I -- but for that reason or for that concern,

5  there's no reason really, particular reason that I can see at

6  least, for granting final fee applications for anybody at this

7  point.  Why should I do it?  And so what's -- what's the

8  Specker issue -- why do you think that's a real concern or

9  real issue?

10       I've read the case and it didn't strike me that way.

11  But, you know, that case on disgorgement seemed -- the issue

12  -- the Court's holding on disgorgement struck me as really not

13  -- the case would have come out differently had there -- had

14  there not been an interim order in that case.

15            MS. O'NEILL:  Would not have been?

16            THE COURT:  The Court noted --

17            MS. O'NEILL:  I'm sorry, did you say would not?

18            THE COURT:  Yeah, the Court noted that it was an

19  interim order.  But why -- why is the potential of

20  disgorgement, why -- why is that changed or lessened any, or

21  that risk lessened any for professionals here if I grant final

22  fee allowance then convert and the estate ends up being

23  administratively insolvent down the road?

24            MS. O'NEILL:  Because finality is res judicata on

25  those kinds of issues.  What --

1          THE COURT:  What if --

2          MS. O'NEILL:  The holding on issues like

3   disgorgement under 724.

4          THE COURT:  How so?  How so?

5          MS. O'NEILL:  Because, Your Honor, as I understand

6   Specker and it's progeny and -- and I say this to you having

7   even had these issues vetted at a recent ADI conference that I

8   went to, the difference between the administrative claimant

9   who is a professional and the guy who got the lights paid is

10  just that under 363, you really have finality to payments that

11  are made in the ordinary course.

12     The only kind of payment that isn't final until a final

13  fee award is a professional.  And under the Code there is

14  interim, meaning not finality on those payments.  And that's

15  why you only see those subject to attack.  Otherwise you would

16  see all administrative claimants kick back all of their money

17  and all of it would then be redistributed pro rata.

18     You don't see that because of the difference in finality

19  in one case and the lack of finality in another.  What enabled

20  the Specker Court to say, you can go back and get those --

21  those fees, is the interim nature of the payment.

22          THE COURT:  That's how you read Specker though.

23          MS. O'NEILL:  And its progeny.  I think you have to

24  read it all to -- to get a feel for how it -- how it does.

25  And U.S. Flow is Judge Gregg's recent decision on that.

1          THE COURT:  Right.

2          MS. O'NEILL:  Who also believes it should be limited

3  to its holding and sees the most --

4          THE COURT:  But there's nothing in Judge Gregg's

5  decision to suggest that final versus interim makes a

6  difference, is there?

7          MS. O'NEILL:  Only the point that he believes it's

8  got to be limited to its facts.  And those facts were in

9  there.

10          THE COURT:  All right.  There's no other 6th Circuit

11  case in the progeny.

12          MS. O'NEILL:  No other 6th Circuit case that I'm

13  aware of it.

14          THE COURT:  Yeah, all right.  Okay.  Any other --

15          MS. O'NEILL:  And let me -- let me just say this on

16  your other point if I may, Your Honor.

17          THE COURT:  Yeah.

18          MS. O'NEILL:  What we're talking about, it's not

19  clear that this Court's going to convert this case today

20  versus when the motion to convert is up in a few days.  With

21  respect to Foley's fee app, the difference between your

22  expedited order and -- and what would have happened in the

23  normal course, is we would be here arguing on the same

24  amorphous facts in three or four days.

25          Either three or four days before conversion if the Court

1 | waits until the motion is up, or three or four days after

2 | conversion when the motion -- when the fees would have been

3 | final. Because they'd have filed this objection, we would

4 | have had a hearing and we would have been here.

5 | So what I suggest to you, Your Honor, is this

6 | particularly -- particularly as to this entity, this party in

7 | interest that's objecting, the difference is really nothing.

8 | This objection has been out there since October. Final fee

9 | apps were up for Dykema, and again the same professionals who

10 | worked on this case were both at Dykema and Foley.

11 | So the only difference here is a few days. And I don't

12 | think he's prejudiced from having asserted the real issues

13 | that seem to trouble him. They have never been set forth.

14 | THE COURT: All right. Anyone else want to reply on

15 | behalf of applicants?

16 | MR. ROSE: Your Honor, just briefly. Without

17 | repeating any of the arguments that Ms. O'Neill made, I would

18 | suggest to Your Honor that first of all, the Doeren fee

19 | application was filed October 19th, the Dykema fee app -- final

20 | fee application was filed October 17th.

21 | So it's been not far from three months since those fee

22 | applications have been filed. The -- the only objection that

23 | -- that Mr. Winget made is contained -- it's barely more than

24 | a three page objection, the first page and a half are

25 | definitions and then there's a single paragraph that covers

1  about a half a page in which Mr. Winget asserts that there's

2  -- there's res judicata which nobody argues about.

3      As Your Honor looks at this, it seems to us that there

4  should be some standard of disclosure in a pleading that's

5  made to you that -- that says that there's a possibility of

6  injury.  Every order has a possibility of injury.  Anybody can

7  come up with a reason why an order you're going to enter could

8  hurt them down the road.

9      But that's not the standard for what we're asking, Your

10  Honor.  You say why do you want finality?  Because we want to

11  know that our fee app -- that our fees have been approved.

12  And -- and we have a right to.  We followed the rules, there

13  is -- there is no reason -- and -- and Mr. Winget really

14  hasn't said one fact to you to say that the entry of a final

15  order is going to really hurt us.

16      They've just asserted here's the law, Judge, and because

17  the law is the law, we may get hurt down the road.  They had

18  time for discovery, they had time for years to make assertions

19  against the professionals in this case.  There hasn't been a

20  single peep and -- and to merely say it has preclusive effect

21  shouldn't be a full reason to deny the finality that -- that

22  the professionals are seeking.

23      THE COURT:  All right.  Anyone else brief reply on

24  behalf of that?

25      MS. O'NEILL:  Your Honor, if no one else does want

1  to speak, I wanted to add one other thing if that's all right.

2          THE COURT:  Sure.

3          MS. O'NEILL:  Obviously I feel strongly about this

4  issue.  Your Honor, what you're being asked to do here today,

5  and what I hear Mr. McKee say, is that as a defendant in

6  litigation brought by the estate and the creditors' committee,

7  he wants to be able to preserve rights and claims against the

8  professionals for the plaintiff.

9      That's a leverage tactic and it's very extraordinary.

10  He's the defendant in litigation and he wants to preserve

11  claims against the professionals for the plaintiffs.  It's

12  just -- again, I say it's an inappropriate use, a twisting of

13  res judicata for purposes that I don't think are --

14          THE COURT:  Well, if there is a conversion those may

15  be professionals for the trustee down the road.

16          MS. O'NEILL:  Same thing.

17          THE COURT:  Right.  Which may or may not be the same

18  professionals.

19          MS. O'NEILL:  May or may not.

20          THE COURT:  Yeah.  All right.  All right.  Ms.

21  Evans, I think you were waiting.  Did you get to say your say?

22  I don't remember if we -- you were waiting until Mr. Winget

23  argued.  And I don't know if I got -- you had a chance yet.

24          MS. EVANS:  Actually, Your Honor, thank you.

25  Claretta Evans for the United States Trustee.

1          Your Honor, we did file objections.  The objections are

2    on file.  I did have an opportunity to meet with several of

3    the parties and we were able to resolve or to the United

4    States Trustee's satisfaction the objections.

5          To the extent that any of the professionals in this case

6    filed a fee application or filed fee applications that do not

7    comply with Bankruptcy Rule 2002(a)(6), the objection still

8    stands.

9              THE COURT:  What do you mean?

10             MS. EVANS:  Well, I spoke with a few law firms and I

11    don't even know whether there are other professionals here

12    today who filed applications that were not within the

13    Bankruptcy Rule 2006 -- I mean I'm sorry, 2002.

14         And -- and I know that some of them have been adjourned.

15    So I guess what I'm saying is, the objections with respect to

16    Foley and Lardner and Akin, Gump, et al were resolved.  If

17    there are still parties here today who filed applications that

18    do not comport with Bankruptcy Rule 2002, those objections

19    still stand.  I don't know if there are parties here today who

20    are in that situation.

21             THE COURT:  Well, shall we go through the list and

22    you tell me?  At the hearing today are Foley and Lardner,

23    Pepper, Hamilton, you heard Mr. Cohen on their behalf, Akin,

24    Gump, Dykema, Gossett, Jefferies, Pricewaterhouse was

25    adjourned, Doeren Mayhew, Conway, MacKenzie, FTI Consulting, I

 1  don't think anybody spoke for them, but the debtor I think

 2  yesterday filed a withdrawal of the debtors' objection to

 3  their fee application and that was the only objection to

 4  theirs.

 5      MR. APPLEBAUM:  Your Honor, that's correct.  Joel

 6  Applebaum on behalf of the committee.  I spoke with Ms. Shaps

 7  yesterday from FTI and that resolution was, but I don't

 8  believe their final fee application was filed -- filed as was

 9  Conway, MacKenzie's long ago.

10      THE COURT:  Right.

11      MR. APPLEBAUM:  So I don't know if they fall into

12  Ms. Evans' objection.

13      THE COURT:  All right.  All right.  So, Ms. Evans, I

14  think that's the list of the ones that are up here today.

15      MS. EVANS:  All right.  Then, Your Honor, again with

16  respect to the objections to the -- the -- the creditors'

17  committee's consult and the debtors' consult, those have been

18  resolved.

19      THE COURT:  And there are no objections as to the

20  others that are up for hearing today?

21      MS. EVANS:  No.

22      THE COURT:  Okay.  Did you want to say anything

23  about this -- this -- this whole res judicata business?

24      MS. EVANS:  Well, Your Honor, to be honest it was

25  not my issue.  I didn't really focus on it.  And I'm really

1 | not in a position to argue for limiting the rights of a

2 | subsequently appointed trustee or binding the -- a

3 | subsequently appointed trustee to provisions that would limit

4 | what the trustee does. And I recognize that all the parties

5 | here are represented by competent counsel and it's more their

6 | issue than mine.

7 | THE COURT: All right. Thank you. I'm going to

8 | take a very short --

9 | MR. MCKEE: Judge --

10 | THE COURT: I hope a very short recess.

11 | MR. MCKEE: Judge, can I respond? Can I respond

12 | very briefly to their --

13 | THE COURT: I think no, we're done. I'm going to --

14 | there are the applicants they get the final reply. I'm going

15 | to take a very short -- I hope a very short recess. I do want

16 | to consider these res judicata cases cited by Mr. Winget

17 | further and reflect on the arguments made here briefly a

18 | little bit.

19 | So I'm going to say -- I'm going to say ten minutes. And

20 | I'll see if I can hold to that, but if not it will be shortly

21 | after that and we'll resume.

22 | THE CLERK: All rise, please.

23 | (Court in Recess at 1:51 p.m.; Resume at 2:14 p.m.)

24 | THE CLERK: Please rise. This Court is back in

25 | session. You may be seated.

1        THE COURT:  All right.  Thank you.  As always I took

2   longer than I estimated.  Thank you for your patience.

3        I'm prepared to rule now on the final fee applications

4   and the objections of the rejection that remains to them which

5   is the objection of Mr. Winget which was argued today at the

6   hearing.

7        My decision on this is based upon the assumption without

8   actually deciding, or the need to actually decide that in

9   determining the res judicata effect if any of granting the

10  final fee applications in this case, that that -- that the res

11  judicata effect of that would be -- that as held by the cases

12  cited by Mr. Winget in his objections.  The -- it's a

13  Intellogic decision.

14       The -- IN, INO Chino case from the 1ˢᵗ Circuit and the

15  Intellogic being a 5ᵗʰ Circuit case and the Englander case from

16  the 4ᵗʰ Circuit.  Assuming that that -- the 6ᵗʰ Circuit would

17  follow those decisions on res judicata, but -- and therefore

18  this Court would be bound to do so.  But we're not deciding --

19  actually deciding that at that point.

20       The -- in my view the objections of Mr. Winget must be

21  overruled.  First, Mr. Winget has in his written objection and

22  in the argument today, has not identified any claims that he

23  has brought to date or any specific claims that he would want

24  to bring in the future.  Nor has he identified any specific

25  claims which he has shown he would have standing to bring in

1  terms of these direct or derivative claims.

2      The only specific -- specifically identified issue in --

3  in any pending litigation, or any specific issue or claim

4  litigation that I heard identified in the hearing today by Mr.

5  Winget's counsel had to do with a concern that Mr. Winget

6  might be precluded from fully defending against an allegation

7  and a claim in case adversary proceeding number 04-4373, and

8  Mr. Winget is contesting the allegations of Paragraphs 380 and

9  381 of the complaint in that case, including the allegation

10  that an alleged breach of fiduciary duty by Mr. Winget caused

11  a significant increase in the professional fees in this

12  bankruptcy case.

13      In my view there is nothing in the doctrine of res

14  judicata or judicial estoppel or otherwise that will have the

15  effect of precluding if I do grant final fee applications

16  today, that will preclude Mr. Winget from fully defending

17  against and contesting those allegations and claims in that

18  adversary proceeding on any available factual basis.  So there

19  is no need in my view to either delay or condition or limit

20  the granting of final fee applications because of -- of that

21  concern.

22      Mr. Winget has not identified any other particular

23  defense in this hearing that in my view would be -- a defense

24  of his in defense of any claims pending or potential claims

25  that would be with which -- with respect to which he would be

1  prejudiced in defending against.  So Mr. Winget's objection in

2  my view is -- must be overruled, that is without merit.

3      With respect to the issue of the final fee applications

4  themselves, the only objection that remains unresolved having

5  been overruled to the granting of those final fee

6  applications, I turn to the final fee applications themselves

7  and I will grant those.  In my view the -- that relief with

8  respect to the final fee applications that were scheduled for

9  re-hearing and heard today is appropriate under the factors

10  the Court must consider and has considered under Section 330

11  of the Bankruptcy Code.

12      So those will be granted.  And I am going to need

13  submitted through the Court's order submission program

14  electronically, proposed orders.  The counsel for each of the

15  applicants should submit a proposed order through the Court's

16  order submission program granting their respective final fee

17  applications.

18      Is there anyone here who cannot do that?  Or needs

19  someone else to help them do that?  We're not doing paper

20  orders anymore.

21          MS. GUTMAN MANN:  Judge, I am not authorized yet to

22  use the electronic filing system, but I believe that we'll

23  leave that --

24          MS. EISELE:  I'm happy to do that on their behalf.

25  Submit the order for them if that's okay with Your Honor.

1          THE COURT:  Yes.

2          MS. GUTMAN MANN:  Thank you.

3          THE COURT:  All right.  How soon can we get all

4    these orders submitted?  I'm going to waive presentment on the

5    orders.  I will review each of them of course.  How soon can

6    we get those?

7          MS. O'NEILL:  This afternoon, Your Honor.

8          MR. ROSE:  The same, Your Honor.

9          MR. HODARA:  Tomorrow, Akin, Gump, please, Your

10   Honor.

11         THE COURT:  All right.  Is tomorrow -- at the end of

12   the day tomorrow soon enough for everyone?

13         MS. O'NEILL:  Yes, Your Honor.

14         MR. ROSE:  Yes.

15         THE COURT:  Okay, sure.  Yeah.  I've just had a

16   request from my courtroom deputy that I'll pass along to each

17   of you.

18       When you submit these proposed orders, please include a

19   little note or memo with them that the courtroom deputy can

20   read when she sees them telling her that this is a proposed

21   order for one of the final fee applications that was granted

22   at today's hearing.  That will save her some time in trying to

23   pull up the docket and figure out what the order relates to

24   and what it's about.

25       Just -- just indicate it's -- what I just said and also

1 which party -- which party's order it is. All right. I think

2 that brings us to the final matter, I think that's scheduled

3 for hearing today in this case, is the Court's December 20,

4 2005 order to show cause why this Chapter 11 case should not

5 be dismissed or converted to Chapter 7.

6     I do note that three days after I issued my show cause

7 order scheduling today's hearing, the committee filed a motion

8 to convert this case to Chapter 7. And I do note also that

9 the United States Trustee concurred in the committee's motion

10 in a response filed January 4, 2006, but objected to the

11 portion of the committee's motion that asked for expedited

12 appointment -- expedited scheduling of a -- of a Section 341

13 meeting so that a permanent Chapter 7 trustee could be elected

14 sooner than might be otherwise.

15     I have reviewed those items. The committee's motion is

16 not up for hearing today, we didn't schedule it for hearing.

17 But I did review those items and considered them in preparing

18 for the hearing on the show cause order. Ms. Eisele, on

19 behalf of the debtor your response to the Court's show cause

20 order is what?

21     MS. EISELE: Your Honor, Laura Eisele on behalf of

22 NM Holdings. We determined in December that there was not an

23 ability to -- to confirm a liquidating plan in this case. We

24 were hopeful and have used every effort to try to come up with

25 a liquidating plan that was capable of confirmation.

1      Given the voluminous millions of dollars of

2  administrative expense claims in this case and the lack of

3  funding for a plan and the inability of the parties to reach

4  consensus, we determined in December that there wasn't a

5  possibility of further negotiations and that conversion of the

6  case was appropriate.

7      In consultation with the committee, however, we

8  determined that we wanted to give all constituents an

9  opportunity to respond for a motion to convert for the reason

10  that most of the admin claimants, most all of the admin

11  claimants that we had talked to preferred a liquidating plan

12  and were not anxious to see a conversion take place, so

13  there's also money in the estate and we wanted to give parties

14  the opportunity if they so chose to raise any issues that they

15  might have with respect to a conversion.

16      So the debtors' position at this time, is we'd like to

17  see that time play out.  We'd like to see -- I believe, the

18  time for the responses on the committee's motion is about

19  another week.  And we'd like to, you know, give the creditors

20  the opportunity to respond to that motion, but assuming that

21  there are no objections or pending resolution of the

22  objections, we would then be amenable to the conversion.

23      And the committee's motion does state that the debtor

24  does not object to the conversion, but wanted to give the

25  creditors an opportunity to respond to the motion to convert.

1  So our position would be we'd like to see that time play out.

2          THE COURT:  No one has responded other than the U.S.

3  Trustee so far to the motion, right?

4          MS. EISELE:  That's correct, Your Honor.  But there

5  is still time in connection with the committee's motion for

6  people to object.

7          THE COURT:  All right.  Thank you.  Anyone else want

8  to be heard on this issue of this show cause order?

9          MR. HODARA:  Fred Hodara, Akin, Gump for the

10  creditors' committee.  Your Honor, our thought with respect to

11  the United States Trustee's objection and the timing of our

12  motion is as follows.

13      The reason why the creditors' committee asked to expedite

14  the 341 meeting of creditors was that if it was not possible

15  to work out an arrangement with the office of the United

16  States Trustee to -- to name a trustee that is favored by the

17  creditors, it was the desire of the creditors' committee that

18  the 341 meeting be held as quickly as possible so that an

19  election could be held as quickly as possible so that the

20  trustee of choice of creditors could be put in place.

21      The thing that the creditors' committee wanted to be

22  certain of was now that it appears it would simply be

23  impossible to proceed pursuant to the liquidating plan, that

24  continuity be maintained in the one real remaining aspect of

25  these cases which is the pending litigation and so that we

1 would not have a lengthy period of even several weeks between
2 the date of conversion and the time of the election of the
3 trustee.

4     We've explored a little bit with the office of the United
5 States Trustee a potential mechanism for having a trustee that
6 is favored by the creditors be put in place. We understand
7 that pursuant to the Chapter 7 rules that upon conversion the
8 trustee would be named automatically through the electronic
9 system. And the likelihood of that person being the party
10 that's been identified by the creditors would be a small
11 percentage.

12     What we've explored with the United States Trustee is for
13 the various parties in this case to consent to the appointment
14 of a trustee in Chapter 11 prior to the actual conversion.
15 And then that party being the trustee rolling into the
16 capacity of being trustee in the Chapter 7 without the need
17 for another interim trustee to be temporarily appointed or the
18 need for an election.

19     And that's something that the office of the United States
20 Trustee is considering. And one of the things we discussed
21 this morning is that if Your Honor has any views about those
22 concepts that we have described, that might assist all of us
23 in concluding whether in fact that is a practical and
24 expeditious and efficient way to proceed.

25     The one other thing I would say about this whole issue of

1 who would that trustee be, is that the creditors' committee

2 has interviewed several parties for a variety of reasons.

3 After interviewing parties who are both on the panel here in

4 Detroit, as well as parties who are not from the area, they --

5 they concluded that their top two choices were in fact parties

6 who are based here in Detroit and so we had spoken with the

7 lenders. They've indicated support for one of those nominated

8 candidates.

9       And -- and if we can go forward in this manner we would

10 have a trustee in short order who has the support of the

11 lenders, the creditors' committee, the consent of the debtors.

12 And it would be somebody who is on the formal panel here in

13 Detroit.

14       THE COURT: What's the difference between we have a

15 Chapter 11 trustee and then the case is converted and getting

16 that person appointed as the interim trustee by the U.S.

17 Trustee's office versus converting without that step and the

18 U.S. Trustee appointing that individual as the interim trustee

19 in the Chapter 7 case? Why can the former be done but not the

20 latter if that's what you're suggesting?

21       MR. HODARA: Yes. We've been advised by the office

22 of the United States Trustee that if the party is not -- if

23 the trustee is not already in place in the Chapter 11, that

24 then the process will be automatic that a name will be spit

25 out of the computer as soon as the Chapter 7 conversion

1 happens. So you will then have this other interim party.

2 As compared with if there is a Chapter 11 trustee, then

3 there is a mechanism I'm told by their office to override the

4 automatic naming of an interim trustee with the carry over of

5 the Chapter 11 trustee.

6 THE COURT: Ms. Evans, is that correct?

7 MS. EVANS: I wouldn't put it in those terms. There

8 is a mechanism --

9 Your Honor, first of all, the United States Trustee --

10 trustee's preference would be for the -- I guess the motion to

11 be heard by the committee, or the Court clearly can -- can

12 appoint -- I mean can convert a case on its own order to show

13 cause. But the U.S. Trustee would prefer that the mechanism

14 in place pursuant to the Code be allowed to take its course.

15 My suggestion -- my -- my comment to the parties were in

16 a Chapter 11 case if -- if the -- if say the -- the motion to

17 convert is heard and the parties agree to the appointment of a

18 Chapter 7 -- 11 trustee rather than conversion, our office has

19 a duty to consult with the parties in interest to ascertain

20 their recommendation. At that point I would -- I would submit

21 that recommendation to our United States Trustee and the

22 United States Trustee would make the ultimate choice, would

23 make the choice -- the final choice anyway.

24 Since one of the parties or the leader -- the forerunner

25 in this case is a panel trustee whom we have no objection to

1 and would have no problems recommending that person be

2 appointed in this case, but still it's the U.S. Trustee's

3 discretion to appoint whom he believes would be appropriate in

4 this case.  That's in the Chapter 11 context.

5      If in fact in the -- if this case were converted to a

6 Chapter 7, then under Section 341, the United States Trustee

7 would give a date for the 341 to the Court.  The Court would

8 send out notice -- notice to the creditors of the estate, and

9 a 341 would be conducted by the interim trustee.  Could be a

10 party that they want in the case anyway, or it might not be.

11 In any event it would be the interim trustee.

12      At the 341 meeting, creditors who complied with the

13 various Code provisions and rules regarding -- pertaining to

14 elections have a right to elect their own trustee if in fact

15 the interim trustee is not the party.

16           THE COURT:  Right.

17           MS. EVANS:  And that's done, there are no additional

18 notices that need to be sent out, but that's -- all the

19 parties have to do is contact the United States Trustee,

20 indicate they want to elect their own trustee, and the United

21 States -- a representative from the office rather will appear

22 at the 341, conduct the election, and file the report with the

23 Court.

24           THE COURT:  Well, I think I had a narrower question.

25 The narrower question is, you had this auto --

 1          MS. EVANS:  Sorry.

 2          THE COURT:  -- auto assigned system for assigning

 3   interim trustees on conversion.

 4          MS. EVANS:  Correct.

 5          THE COURT:  Just like with a filing of a Chapter 7.

 6   And I -- I think the question is, can the U.S. Trustee bypass

 7   that in an individual case if the -- if they want to appoint a

 8   particular one of the panel trustees, for example, as interim

 9   trustee.

10          MS. EVANS:  Your Honor, that -- the -- the clerk's

11   office now does the appointing from our list.

12          THE COURT:  Through the auto assigned system, isn't

13   it?

14          MS. EVANS:  Correct, exactly.

15          THE COURT:  Yeah.

16          MS. EVANS:  And the United States Trustee has not

17   and I guess is not inclined to interfere with that process.

18          THE COURT:  All right.

19          MS. EVANS:  I don't understand --

20          THE COURT:  Okay.  All right.  So -- so given what

21   you've said as between this 11 trustee then conversion versus

22   just straight conversion route, what -- what does the U.S.

23   Trustee prefer?

24          MS. EVANS:  Your Honor, the Court today can convert.

25   If the parties are concerned that time is of the essence and

1  they want to move on this right away.  If the Court enters an

2  order of conversion today, the trustee would be appointed

3  probably tomorrow morning.

4      Notices would go out shortly thereafter.  In 20 days from

5  perhaps tomorrow, a 341 will be scheduled.  And at that 341

6  the parties in interest could elect their own trustee.

7          THE COURT:  Sure.  So is that -- are you saying

8  that's your preference?

9          MS. EVANS:  Correct.

10          THE COURT:  All right.  Thank you.  I think I

11  interrupted Mr. Hodara to ask you that question.  Mr. Hodara,

12  what else would you like to say if anything?

13          MR. HODARA:  Your Honor, just very briefly and I

14  think these are things that you have heard already.  The

15  preference of both the debtor and the creditors' committee

16  would be to wait for the remaining several days for the full

17  notice period to run and then have the conversion ordered by

18  the Court at that time, assuming that's what the Court

19  believes appropriate.

20      We could simply provide a certificate of no objection,

21  assuming there are none at that time since most of the parties

22  are represented here in Court today and any issues or

23  questions can be addressed now.  And then at that point in

24  time our preference would be that we use this -- this week

25  interim period before the notice period runs to complete the

1  process with the U.S. Trustee's office of appointing the

2  parties so that then upon the conversion we won't have a 20

3  day gap before the trustee can actually come into place.

4      We don't know whether there would be additional expense

5  entailed in conducting the -- the election.  It may be that

6  that is simply part of the notice process on the 341

7  proceeding.  But elections are funny things and who knows in

8  this case what all that amounts to.  So our strong preference

9  would be to take care of this now, have the trustee named so

10 that we can just smoothly go into the Chapter 7 period and

11 continue on.

12      THE COURT:  Let me ask Ms. Eisele, I meant to ask

13 you earlier.  The show cause order I issued on December 20

14 requires debtors to immediately serve a copy of the show cause

15 order for today's hearing on all parties on the limited

16 service list with this case and then promptly file a proof of

17 that service.  Was that done?

18      MS. EISELE:  The show cause order was served on all

19 the parties and I believe a proof of service was filed, but I

20 would have to go back and just confirm that the proof of

21 service was actually filed.  That would have been handled by

22 our claims agent.

23      THE COURT:  When was the order served, do you know

24 that?

25      MS. EISELE:  It was served the day that we received

1  the show cause order, that was sent out for service.

2        THE COURT:  Sent out for service, so when was it

3  actually --

4        MS. EISELE:  It was sent Administar to serve, so I

5  believe it was served that evening or the following day.

6        THE COURT:  So December 20 or 21?

7        MS. EISELE:  Right.

8        THE COURT:  All right.  Okay.  Thank you.  Anyone

9  else want to address the -- the issue of the show cause order

10  and the issues we've been discussing?  Ms. Teicher.

11        MS. TEICHER:  Yes, Your Honor.  Julie Teicher.

12  We're special counsel for the debtors in this case and my

13  concern really just relates to some procedural issues.

14      As the Court may recall, we were handling preference

15  matters of amounts under $15,000.  And we have a few pending

16  cases remaining, a couple on settlement payment orders, one

17  left to go to trial, and a few other administrative matters as

18  well as approximately 106 files with default judgments that

19  remain -- that are ready for collection.

20      I just want to make sure that we don't get lost in the

21  shuffle of things here and have the Court and other counsel be

22  aware that we do have some pending matters.  We will need to

23  address either our continued representation or the estate in

24  this regard, or provide for some transfer.  At this point with

25  the very few cases it would make sense for us to continue to

 1  resolve those.  Our -- our --

 2          THE COURT:  Do you have a trial -- do you have a

 3  trial or any particular events in the next couple of weeks in

 4  any of these cases?

 5          MS. TEICHER:  There is a hearing on January 26".

 6  There was supposed to be a trial on a different case on

 7  January 26".  Defense counsel did not show up for the

 8  pre-trial and I have the default judgment.  I don't know if

 9  defense counsel will move to set that aside.

10      And then there is a trial on the case that has the

11  hearing on January 26", I believe set for March 6" or sometime

12  in March.  And we can hold off in terms of collection of the

13  default judgments, but again as to the other matters where

14  there are pending collections, we would obviously like to make

15  sure those are concluded and we have some -- a few files to

16  make sure that dismissals are appropriate orders or concluding

17  the cases.

18          THE COURT:  So is there anything in particular you

19  want the Court to do today if I order conversion?

20          MS. TEICHER:  I think --

21          THE COURT:  About all of this?

22          MS. TEICHER:  -- in the event the case is converted

23  today, we would like as soon as possible to get an order

24  continuing our employment to at least handle the matters which

25  are pending which I could specifically identify.  And

 1  obviously to preserve our fees with regard to the matters that

 2  we have money on trust in our -- in our trust account.

 3      Our retention order did provide that we have a lien on

 4  amounts that we have collected.  We have two pending

 5  disbursement reports with Mr. Scherrer and a third which I am

 6  going to send to him today.  And then we'll also have what

 7  we've collected in January.

 8          THE COURT:  Well, in order to continue employment

 9  for who?  The trustee is going to decide whether to employ

10  you.

11          MS. TEICHER:  Right.  But I want to make sure that

12  I'm protected on the cases that have been pending or where we

13  may not have disbursed the funds yet.  I believe our order

14  gives us that right, but --

15          THE COURT:  Well, if I -- if I decide today to

16  convert now without waiting any -- any longer, we're talking

17  probably a couple days before the order gets entered if that

18  helps you any.

19          MS. TEICHER:  It may.  It would give me an

20  opportunity for a conversation I think.

21          THE COURT:  Yeah.  All right.  Thank you.  Anyone

22  else want to --

23          MS. TEICHER:  Thank you.

24          THE COURT:  -- address this issue?

25          MS. EVANS:  Your Honor, just for a point of

1   clarification.  Section 702(b) of the Bankruptcy Code states

2   in pertinent part that at the meeting of creditors held under

3   Section 341 of this title, creditors may elect one person to

4   serve as trustee in this case.

5       There is no additional expenses involved in this -- in

6   this -- in this process.  But Bankruptcy Rule 2002 does state

7   that the clerk or some other person as the Court may direct

8   shall, not may, not should, but shall give the debtor, the

9   trustee, all creditors, and the indentured trustees at least

10  20 days notice by mail of the meeting of creditors under

11  Section 341.

12      And I guess what I'm saying to the Court, I see no reason

13  to deviate from the procedures that are already in place that

14  deal with elections in this case.  And the case has been

15  around for almost three years.  And 20 days should not break

16  anything the parties have done here.

17          THE COURT:  All right.  Anyone else want to address

18  this matter?  All right.  Thank you.

19      All right.  The -- there is -- is clearly cause to

20  convert or dismiss this case under Section 1112(b) of the

21  Bankruptcy Code including among other possible provisions,

22  Section 1112(b)(4) as outlined in the Court's show cause

23  order.

24      Debtors did not file a plan and disclosure statement by

25  the extended deadline of December 19, 2005, that's the reason

1 | for the show cause order. That creates a cause in and of
2 | itself to dismiss or convert, whichever is in the best
3 | interests of the estate creditors.

4 | It seems clear to me that -- that there -- the best
5 | interest in the estates of creditors is to convert rather than
6 | dismiss this case given the choice under Section 1112(b). And
7 | no one is contesting at this point that this case should be
8 | converted. No one is arguing that the case should be
9 | dismissed rather than converted and in my view the case should
10 | be converted and converted "now". And I'll talk about that in
11 | a minute.

12 | And without waiting for further responses -- time for
13 | responses to expire to the committee's motion filed December
14 | 23, 2005 seeking a conversion. In response to that motion to
15 | date the only objection was the objection filed by the United
16 | States Trustee that I described earlier.

17 | I note that the limited service list for this case was
18 | served according to debtors' counsel Ms. Eisele whose
19 | representations I accept of course, on December 20 or December
20 | 21. So all of those creditors had notice that the Court was
21 | holding a hearing today at noon on the question -- the Court's
22 | show cause order whether this case should be dismissed or
23 | converted. And therefore those creditors all had an
24 | opportunity to appear here today and express their views.

25 | So there is no good reason to wait any longer in my view.

1  This -- the concerns expressed by the committee in their

2  motion to convert about the need to move expeditiously forward

3  in this case in my view supports my approach of converting

4  this case as soon as possible and not waiting any longer than

5  absolutely necessary here to get that done so that the case

6  can move forward beginning as soon as possible as a Chapter 7

7  case which is where it has to go.

8       The -- the issue of the trustee and whether to appoint a

9  Chapter 11 trustee and then convert, with respect to that

10  issue, I don't see any -- any real need or good cause to go

11  that route.  It seems to me that by -- rather than waiting and

12  ruling on the committee's motion and then appointing a U.S.

13  Trustee and then converting, I think the -- the best thing to

14  do is convert right away and let the United States Trustee do

15  their job as they are currently set up to do it for the

16  appointment of an interim trustee and get the 341 meeting

17  scheduled and noticed so that a permanent trustee is to be

18  elected.  That can be done as soon as possible.

19       The -- the -- with respect to the order for conversion, I

20  will ask the United States Trustee to prepare a proposed order

21  of conversion.

22            MS. EVANS:  I will, Your Honor.

23            THE COURT:  Ms. Evans, you've done this many times

24  and -- and I will ask you to do that.  I'm going to waive

25  presentment on that order.

1          MS. EVANS:  Thank you.

2          THE COURT:  And ask you to submit that

3  electronically to the Court as soon as possible.  Now having

4  said that, I will say that I am going to review and -- I have

5  in mind reviewing and getting entered as orders of the Court,

6  the orders granting the final fee applications before I enter

7  -- sign and enter the order of conversion.

8          In case that does make a difference under _Specker_, I

9  think I don't want the fortuity of minor timing differences

10  there to make a difference with respect to those fee

11  applications.  So I will do that.

12          And I think given the speed with which the parties have

13  told me they will get those proposed orders submitted to the

14  Court electronically, I think that should work with -- and

15  make it possible for the Court to issue a -- its conversion

16  order shortly.  Ms. Evans, how quickly can you get your order

17  in?

18          MS. EVANS:  I can have it filed first thing tomorrow

19  morning.

20          THE COURT:  Okay, fine.  We'll look for that.  All

21  right.  Is there anything else we need to talk about today?  I

22  think that completes our agenda.  Ms. Teicher.

23          MS. TEICHER:  Yes, Your Honor.  I have --

24          THE COURT:  Would you get to a microphone?

25          MS. TEICHER:  I have three -- three or four pending

1  settlement orders on some adversary cases and I'd like -- I

2  recognize it's minor in the course of this whole case, but the

3  other Judges' clerks will be unhappy with me if I don't

4  conclude those cases as expeditiously as possible.  So

5  likewise, I will do what I can to submit those orders before

6  the order of conversion.

7          THE COURT:  Now is this -- is this a -- on an Rule

8  9019 motion, or pursuant to authority previously given to

9  settle?

10         MS. TEICHER:  Pursuant to authority previously

11 given.

12         THE COURT:  So you need to submit those.  How soon

13 can you get those in?

14         MS. TEICHER:  I have them out for counsel.

15 Hopefully I could have them tomorrow.

16         THE COURT:  When you submit those electronically let

17 me ask you to note in the memorandum what they -- what they

18 are.  That those -- these are the -- as to each one, this is

19 one of the settlement orders that we have discussed in this

20 hearing today.

21         MS. TEICHER:  Okay.

22         THE COURT:  I don't have any problem with trying to

23 get those things entered --

24         MS. TEICHER:  And they actually go to either Judge

25 McIvor or Judge Rhodes.

1           THE COURT:  The settlement orders?

2           MS. TEICHER:  Yes.  Where the --

3           THE COURT:  Unless you set it up that way, that

4  shouldn't be the case, it should go to me.

5           MS. TEICHER:  Where the adversary cases are pending.

6           THE COURT:  I know, they should go to me though when

7  I have the case, the main case.

8           MS. TEICHER:  On the adversaries?

9           THE COURT:  Did the order - did the order set it up

10  that way that I signed?

11           MS. TEICHER:  Yes, yes.

12           THE COURT:  It did?

13           MS. TEICHER:  Yes.

14           THE COURT:  All right.  Tell you what, could you

15  give us -- I just don't remember that, but that -- that may

16  well be, it's been a long time since I signed that order and

17  that's fine if that's what it says.  Could you just call my

18  office and give us the date if you can of the order that --

19  that established that procedure?  I recall the order, but I

20  don't remember those details.  Which -- and I think that was

21  entered in the main case.

22           MS. TEICHER:  I believe so.

23           THE COURT:  Could you do that for me?

24           MS. TEICHER:  Yes.

25           THE COURT:  All right.  Thank you.

1          MS. TEICHER:  Okay.  Thank you.

2          THE COURT:  Ms. Teicher, let me ask you also, I'll

3 assume what you've just said is correct.  When you submit the

4 orders to those chambers, please let them know the urgency of

5 getting them entered, please.

6          MS. TEICHER:  I will.

7          THE COURT:  All right.

8          MS. TEICHER:  Thank you.

9          THE COURT:  Okay.  Thank you.  Anything else from

10 anyone today on this case?  All right.  Thank you all.

11          MS. EISELE:  Thank you very much, Your Honor.

12          MS. O'NEILL:  Thank you, Your Honor.

13     (Court Adjourned at 2:50 p.m.)

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5

6

7

8

9 We certify that the foregoing is a correct transcript from the

10 electronic sound recording of the proceedings in the

11 above-entitled matter.

12

13 _Deborah L. Kremlick_                    Dated: _1-17-06_
   Deborah L. Kremlick, CER-4872

14 Shelley J. Grasel, CER-0889

15

16

17

18

19

20

21

22

23

24

25