```
 1              UNITED STATES BANKRUPTCY COURT
               EASTERN DISTRICT OF MICHIGAN
 2                    SOUTHERN DIVISION

 3   IN THE MATTER OF,          Case No. 03-48939
                                Detroit, Michigan
 4   VENTURE HOLDINGS COMPANY,  April 19, 2005
     INC.                       1:53 p.m.
 5   _____/

 6   IN THE MATTER OF,          Case No. 04-54977

 7   DELUXE PATTERN CORPORATION

 8   _____/

 9             CONTINUED CONFIRMATION HEARING
          BEFORE THE HONORABLE THOMAS J. TUCKER
10          TRANSCRIPT ORDERED BY: LARRY NYHAN, ESQ.

11   APPEARANCES:

12   For the Venture Debtors:   NICOLE LAMB-HALE, ESQ. (P46202)
                                Foley & Lardner
13                              150 West Jefferson
                                Suite 1000
14                              Detroit, MI  48243
                                313-963-9684
15
     For the Creditor's Committee: KERRY THOMPSON, ESQ.
16   (By Phone):                Akin, Gump, Strauss, Hauer &
                                Feld
17                              590 Madison Avenue
                                New York, NY 10022
18                              212-872-1000

19                              JOEL APPLEBAUM, ESQ. (P36774)
                                Pepper, Hamilton
20                              100 Renaissance Center
                                Suite 3600
21                              Detroit, MI  48243
                                313-393-7361
22
     For Deluxe Pattern:        BRIAN GRAHAM, ESQ.
23   (By Phone):                Shaw, Gussis
                                321 N. Clark Street
24                              Suite 800
                                Chicago, IL 60610
25                              312-276-1333
```

| | | |
|---|---|---|
| 1 | For Pre-Petition Seniors: | MATTHEW CLEMENTE, ESQ. |
| | (By Phone): | Sidley, Austin, Brown & Wood |
| 2 | | Bank One Plaza |
| | | 10 S. Dearborn Street |
| 3 | | Chicago, Illinois 60603 |
| | | 312-853-7710 |
| 4 | | |
| | | WILLIAM BURGESS, ESQ. (P36922) |
| 5 | | Dickinson, Wright, PLLC |
| | | 500 Woodward Avenue |
| 6 | | Suite 4000 |
| | | Detroit, MI 48226 |
| 7 | | 313-223-3500 |
| 8 | For Black Diamond: | PAT NASH, ESQ. |
| | (By Phone): | Skadden, Arps, Slate, Meagher & |
| 9 | | Flom |
| | | 333 West Wacker Drive |
| 10 | | Chicago, IL 60606 |
| | | 312-407-0700 |
| 11 | | |
| | For Yucaipa: | THOMAS WALPER, ESQ. |
| 12 | (By Phone): | Munger, Tolles & Olson, LLP |
| | | 355 S. Grand Avenue |
| 13 | | Suite 3500 |
| | | Los Angeles, CA 90071 |
| 14 | | |
| | For Harvard Distressed | THOMAS MAYER, ESQ. |
| 15 | Investment Master Fund: | AMY CATON, ESQ. |
| | (By Phone): | Kramer, Levin |
| 16 | | 1177 Avenue of the Americas |
| | | New York, NY 10036 |
| 17 | | 212-715-9100 |
| 18 | | |
| | For Newstart Factors, Inc.: | KENNETH NATHAN, ESQ. (P39142) |
| 19 | | Nathan, Neuman, Nathan & |
| | | Zousmer |
| 20 | | 29100 Northwestern Highway |
| | | 260 Franklin Center |
| 21 | | Southfield, MI 48034 |
| | | 248-351-0099 |
| 22 | | |
| | For Harper Properties of | ROBERT PEURACH, ESQ. (P34446) |
| 23 | Clinton Township, Ltd.: | Fitzgerald & Dakmak |
| | | 615 Griswold |
| 24 | | Suite 600 |
| | | Detroit, MI 48226 |
| 25 | | 313-964-0800 |

| | | |
|---|---|---|
| 1 | For Larry Winget: | RALPH MCKEE, ESQ. (P39484) |
| | | Allard & Fish, P.C. |
| 2 | | 535 Griswold Street |
| | | Suite 2699 |
| 3 | | Detroit, MI 48226 |
| | | 313-961-6141 |
| 4 | | |
| | For Johnson Controls & | PAULA OSBORNE, ESQ. (P61101) |
| 5 | Delphi Automotive Systems, | Butzel, Long |
| | Inc.: | 150 W. Jefferson Avenue |
| 6 | | Suite 100 |
| | | Detroit, MI 48226 |
| 7 | | 313-225-7040 |
| 8 | For Multimatic Sales & | NORMAN ORR, ESQ. (P25310) |
| | Marketing, Inc.: | Kemp, Klein, Humphrey, Endelman |
| 9 | | & May |
| | | 201 W. Big Beaver Road |
| 10 | | Suite 600 |
| | | Troy, MI 48084 |
| 11 | | 248-740-5693 |
| 12 | For Autoliv ASP, Inc., | STEPHEN LAPLANTE, ESQ. (P48063) |
| | Super Carts of North America: | Miller, Canfield, Paddock & |
| 13 | | Stone |
| | | 150 W. Jefferson Avenue |
| 14 | | Suite 2500 |
| | | Detroit, MI 48226 |
| 15 | | 313-496-8478 |
| 16 | For Welsh & Katz: | MARK SHAPIRO, ESQ. (P43134) |
| | | Steinberg, Shapiro & Clark |
| 17 | | 24901 Northwestern Highway |
| | | Suite 611 |
| 18 | | Southfield, MI 48075 |
| | | 248-352-4700 |
| 19 | | |
| | Court Recorder: | Shelley Grasel |
| 20 | | |
| | Transcriber: | Deborah Kremlick |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | Proceedings recorded by electronic sound recording, transcript | |
| | produced by transcription service. | |
| 25 | | |

1        (Court in Session)

2              THE CLERK:  Please rise.  This Court is now in

3  session.  The Honorable Thomas J. Tucker presiding.

4      You may be seated.  We'll call the matter of Venture

5  Holdings Company, LLC, 03-08939.  And the matter of Deluxe

6  Pattern Corporation, 04-54977.

7              MS. LAMB-HALE:  Good afternoon.

8              THE COURT:  Good afternoon.

9              MS. LAMB-HALE:  I know it was supposed to be morning

10  when you saw me again, but --

11              THE COURT:  All right.  Well, we have a new Pope and

12  we have everyone here.

13              MS. LAMB-HALE:  Yes, we do.  Nicole Lamb-Hale on

14  behalf of the Venture debtors.

15      We have proposed orders, Your Honor, and we have a black

16  line for you minus some handwritten changes that have been made

17  to the order since we arrived this afternoon against the order

18  that was originally filed with the Court.  May I approach with

19  the orders?

20              THE COURT:  Sure, sure.

21              MS. LAMB-HALE:  And we also included in the orders

22  per your request, alternate treatment for the Welsh and Katz

23  issue.

24              THE COURT:  All right.  So the top thing is a black

25  line.

1          MS. LAMB-HALE:  The black line, yes, against the

2  order that was filed with the Court.

3          THE COURT:  And there are some updates of this?

4          MS. LAMB-HALE:  That are in blue in the order that

5  you -- in the big orders that you have.

6          THE COURT:  Oh, I see.

7          MS. LAMB-HALE:  Yeah, those were made this afternoon.

8          THE COURT:  So we've got what looks like three copies

9  of the -- clean copies of the order with some changes

10  handwritten on each one?

11          MS. LAMB-HALE:  Right.

12          THE COURT:  Same changes handwritten on each set?

13          MS. LAMB-HALE:  Exactly.  But they're not reflected

14  on your black line because they were just made.

15          THE COURT:  All right.

16          MS. LAMB-HALE:  And the Welsh and Katz language is in

17  Paragraph 29 with the option A and B.

18          THE COURT:  All right.

19          MS. LAMB-HALE:  And Your Honor, we were hopeful that

20  we could take, if the order is approved, the third copy back

21  with us for copying.  I'm not sure how many you would need.

22          THE COURT:  Well, I don't have a problem with that.

23          MS. LAMB-HALE:  Okay.

24          THE COURT:  You can talk to my courtroom deputy about

25  it, but I wouldn't -- I don't have a problem with it.

1          MS. LAMB-HALE:  And I'm sorry, Your Honor, it's

2   Paragraph 27 for Welsh and Katz, not 29.

3          THE COURT:  All right.  Well, I need to give you the

4   ruling on the Welsh and Katz objection.  And Ms. Lamb-Hale,

5   apart from -- aside from resolving that issue, in -- in your

6   view is this order ready to be signed?

7          MS. LAMB-HALE:  Yes, Your Honor.

8          THE COURT:  And it has been -- as presented here with

9   the latest changes it has been approved by everyone?

10          MS. LAMB-HALE:  Yes, Your Honor.  I would add though,

11   Your Honor, that there are some individuals who were here

12   yesterday that didn't sign.  We have a signature page that we

13   created but have been copied with all the changes except for

14   the ones that were made this afternoon when we arrived to the

15   Court and we believe that they have signed off.

16          THE COURT:  I don't see a signature page for me or

17   anyone.

18          MS. LAMB-HALE:  I have one here, Your Honor, that --

19   actually, Your Honor, excuse me.  May I approach, Your Honor?

20          THE COURT:  Yeah.  All right.  So what about the

21   missing signatures Ms. Lamb-Hale?

22          MS. LAMB-HALE:  Your Honor, one of the missing

23   signatures I am not sure of for Autoliv.  Mr. LaPlante is here

24   and I'm sure he'll make a statement for the record on that one.

25          But with respect to the others, Your Honor, they were --

1 the Deluxe debtors, I am -- I have an e-mail in to Mr. Graham

2 which I think he may have replied to, just one moment.  It

3 looks like he will at the conclusion of the hearing, agree to

4 sign off on behalf of the Deluxe debtors.

5     And with respect to CMS, Oracle -- with respect to CSM and

6 Oracle, who are the only parties that are not here today, Your

7 Honor, they have been participating in the revisions and were

8 on the calls this morning.  And I do believe they have signed

9 off.

10     THE COURT:  Well, they haven't signed off here, so

11 how are we going to get their signatures?

12     MS. LAMB-HALE:  Well, I can call them, Your Honor, to

13 confirm, but they were --

14     THE COURT:  All right.  You can get authority to

15 sign.

16     MS. LAMB-HALE:  Okay.

17     THE COURT:  On their behalf.  That's Oracle, CMS,

18 Autoliv is present in the courtroom you said.

19     MS. LAMB-HALE: Yes.

20     THE COURT:  Through counsel.  Deluxe debtors, Mr.

21 Shapiro is here.  And senior lenders, Mr. Burgess is here.  All

22 right.

23     Why don't we -- let's do this.  First thing, let's --

24 let's get the appearances for the record and then we'll --

25 we'll go from there.  On behalf of debtors first, Venture

1 debtors.

2      MR. GRAHAM: Judge, this is Brian Graham on the phone

3 on behalf of the Deluxe debtors.

4      MS. LAMB-HALE: Nicole Lamb-Hale of Foley and Lardner

5 on behalf of the Venture debtors.

6      THE COURT: All right. Is there anyone else on the

7 telephone?

8      MR. CLEMENTE: Yes, Your Honor. This is Matt

9 Clemente from Sidley, Austin on behalf of JP Morgan with the

10 official committee.

11      MS. THOMPSON: Good afternoon, Your Honor. Kerry

12 Thompson of Akin, Gump, Strauss, Hauer, and Feld on behalf of

13 the official committee.

14      THE COURT: Would you say your name again? I didn't

15 hear you.

16      MS. THOMPSON: Kerry Thompson of Akin, Gump, Strauss,

17 Hauer, and Feld on behalf of the official committee.

18      THE COURT: All right. Thank you. Anyone else on

19 the telephone?

20      MR. MAYER: Yes, Your Honor. Tom Mayer and Amy Caton

21 at Kramer, Levin, Natalis, and Frankel for Harvard Distressed

22 Investment Master Fund, one of the pre-petition senior lenders

23 and one of the purchasers.

24      THE COURT: All right.

25      MR. NASH: Good afternoon, Your Honor. Pat Nash from

1 Skadden, Arps, Slate, Meagher, and Flom, LLP on behalf of Black

2 Diamond.

3      MR. WALPER:  Good afternoon, Your Honor.  Thomas

4 Walper of Munger, Tolles, and Olson representing pre-petition a

5 secured lender Yucaipa as well as one of the purchasers.

6      THE COURT:  All right.  Anyone else on the telephone?

7 All right.  Other attorneys in the courtroom, please.

8      MR. SHAPIRO:  Your Honor, Mark Shapiro on behalf of

9 Welsh and Katz.  Your Honor, when the time is right, I want to

10 make a point for clarification purposes about the order that's

11 been presented to the Court.

12      THE COURT:  Okay.  We'll get to that.

13      MR. BURGESS:  Good afternoon, Your Honor.  William

14 Burgess of Dickinson, Wright appearing on behalf of JP Morgan

15 Chase Bank the pre-petition lenders' agent.

16      MR. APPLEBAUM:  Joel Applebaum on behalf of the

17 committee.

18      MR. ORR:  Norman Orr, Kemp, Klein, Humphrey,

19 Endelman, and May on behalf of Multimatic Sales and Marketing.

20      MR. NATHAN:  For the record, Your Honor, Ken Nathan

21 from the law firm of Nathan, Neuman, and Nathan on behalf

22 Newstart Factors, Inc.  And I need to clarify yesterday we

23 referred to it as Newstart Factors Partners, Inc.  It's

24 Newstart Factors, Inc.  We've taken the partners out of the

25 order.  Thank you.

1          THE COURT:  All right.

2          MR. PEURACH:  Your Honor, Robert Peurach appearing on

3  behalf of Harper Properties.

4          MR. MCKEE:  Ralph McKee, Allard and Fish appearing on

5  behalf of Larry Winget.

6          MR. LAPLANTE:  And, Your Honor, Stephen LaPlante from

7  Miller, Canfield appearing on behalf of Autoliv ASP.

8          THE COURT:  All right.

9          MS. OSBORNE:  Good afternoon, Your Honor.  Paula

10  Osborne of Butzel, Long on behalf of Delphi Automotive Systems

11  and Johnson Controls.

12          THE COURT:  All right.  Anyone else?  All right.  Mr.

13  Shapiro, why don't we let you say what it is you wanted to say

14  at this point.

15          MR. SHAPIRO:  Well, Your Honor, just for purposes of

16  clarification, I wanted to make the point that where we left

17  the issues with regard to Welsh and Katz yesterday was that you

18  had asked the parties to draft some proposed language in the

19  alternative for purposes of the order so that one it can be

20  stricken out.

21      The arrangement that I had with debtors' counsel was that

22  I was going to draft language consistent with the way I wanted

23  the Court to rule.  They would do language consistent with

24  their manner.  I forwarded that language to Ms. Eisele last

25  night.  I didn't get anything back and the two forms, the

1 alternate forms that appear in the proposed order, the one

2 that's supposedly favorable -- favorable to my position is not

3 consistent with what I had drafted.

4     And I haven't agreed to it and I have some issues with the

5 way that it's drafted.  So I just wanted to make that clear.  I

6 haven't signed off on the order and quite frankly I didn't see

7 it until I got down here today.

8         A VOICE:  Oh, gosh.

9         THE COURT:  Well, whoever said that please restrain

10 yourself on the telephone.  All right.  Mr. Shapiro, do you

11 have the language you can hand me that you are proposing?

12         MR. SHAPIRO:  I do, Your Honor.  If I may approach.

13         THE COURT:  Yeah.  All right.  Mr. Shapiro, what I --

14 what I think I want to do with this is take a short break and

15 read the alternatives that are in the proposed order, read your

16 language, and then come back out and give my ruling and then we

17 can -- we can, based on the ruling, finalize the language

18 that's going to actually go in the order.

19         MR. SHAPIRO:  Thank you, Your Honor.

20         MR. MAYER:  Your Honor, this is Tom Mayer.  I do

21 think that our drafts had passed and I'm not sure I have seen

22 Mr. Shapiro's language.  The language that's in the order now,

23 I transmitted to people at about 11:00 o'clock last night.  So

24 if somebody could send me Mr. Shapiro's language, that would be

25 much appreciated.  If he can Blackberry it to me, that would

1 | be --

2 |         MR. SHAPIRO:  Can't do that.

3 |         THE COURT:  Can or cannot?

4 |         MR. SHAPIRO:  Cannot.  I don't have the capability to

5 | do it.

6 |         MS. LAMB-HALE:  Mr. Mayer, I think we can take care

7 | of it through my office.

8 |         THE COURT:  Ms. Lamb-Hale will take care of it, Mr.

9 | Mayer.  This -- what he's handed me is a print out of an e-mail

10 | that he's sent to Laura Eiseley, it looks like yesterday at

11 | 8:48 p.m.  So Ms. Lamb-Hale, you'll get that to Mr. Mayer while

12 | I'm looking at this in chambers?

13 |         MS. LAMB-HALE:  Yes, Your Honor.

14 |         THE COURT:  Okay.  Did you hear that, Mr. Mayer?

15 |         MR. MAYER:  Yes.  I will look forward to it.  My --

16 | my mark up was sent around 11:00 p.m. to a laundry list of

17 | people which I thought included Mr. Shapiro, but it may not

18 | have gotten there.  So anyway, I'll look forward to seeing --

19 | to seeing his language.

20 |         THE COURT:  You know, apparently no one told Mr.

21 | Shapiro that the hearing had been moved from 10:00 o'clock to

22 | 1:00 either this morning, although we asked debtors to do that.

23 | So we need to keep Mr. Shapiro in the loop here obviously.  All

24 | right.  Is there anything we should talk about before I take a

25 | short break and review this language?

1      MR. SHAPIRO:  Not that I'm aware of, Your Honor.

2      MR. PEURACH:  Your Honor, if I may.  For the record,

3  Robert Peurach appearing on behalf of Harper Properties.

4      I have approved the order as to form.  There was one

5  matter of housekeeping though that happened from the other

6  hearing that I need to address if you don't mind.

7      THE COURT:  I'll tell you what, let's hold that.  I

8  want to deal with the Welsh and Katz piece of this first, get

9  that resolved.

10     MR. PEURACH:  This was simply just saying that Harper

11 would be a party to the reservation of rights contained in

12 Paragraph 47 in the order, that's all, dealing with the

13 adequate assurance.

14     THE COURT:  Well, is it in the order or isn't it?

15     MR. PEURACH:  I think the parties made their

16 statements on the record that they would be part of that.  And

17 I just wanted to include Harper on the record as being part of

18 that.

19     THE COURT:  Well, does the order take care of that

20 concern or doesn't it?  If it does not, let's do that.

21     MR. NATHAN:  It does not, Your Honor.

22     THE COURT:  It does not.

23     MS. LAMB-HALE:  Unless he --

24     THE COURT:  Ms. Lamb-Hale.

25     MS. LAMB-HALE:  Your Honor, I think that the concern

1 was that though we have reservations of rights language in the

2 order, they wanted to be sure that their clients stated for the

3 record that they wanted to be a part of that. I think that's

4 the issue. There was some confusion as to the -- the --

5 THE COURT: So this is a matter of things you want to

6 state for the record rather than have included in the order, is

7 that it?

8 MR. ORR: Your Honor, perhaps -- the order now

9 reflects that the reservation of rights only exists if you made

10 the reservation on the record by counsel at the sale hearing

11 which was not what we thought you had said, but it was easy

12 enough to fix by each of us coming in and reserving our rights

13 which is what I think some of us wish to do.

14 MR. PEURACH: Yeah, that's just what I wanted to do

15 is all.

16 THE COURT: All right. What paragraph is this in the

17 order?

18 MS. LAMB-HALE: Forty-seven.

19 MR. PEURACH: Forty-seven.

20 THE COURT: Forty-seven. All right, just a moment.

21 Page what? Oh, I see, wait, 47?

22 MS. LAMB-HALE: Yes, it is.

23 MR. PEURACH: Paragraph 47.

24 MS. LAMB-HALE: Paragraph 47, Your Honor. Your

25 Honor, if you have difficulty finding it, if I could approach

1  the numbering has changed.

2         THE COURT:  No, no, I see Paragraph 47 at Page 31.

3         MS. LAMB-HALE:  And it should refer to the testimony

4  proffered at the sale hearing, that should be --

5         THE COURT:  I see it.

6         MS. LAMB-HALE:  Okay, great.

7         THE COURT:  All right.  Look, we're going to take

8  care of this after I come back out and deal with the Welsh and

9  Katz issue.

10         MS. LAMB-HALE:  Thank you, Your Honor.

11         THE CLERK:  All rise.

12         THE COURT:  All right.  Be back in a bit.

13      (Court in Recess at 2:08 p.m.; Resume at 2:30 p.m.)

14         THE COURT:  All right.  I want to begin by ruling on

15  the Welsh and Katz objection which was argued yesterday.

16      I want to begin by noting the nature of the interest

17  claimed by Welsh and Katz in the assets that are the subject of

18  this sale.  Welsh and Katz claims to have an attorney's lien

19  which amounts to -- there are two types of liens, common law

20  liens, attorney liens involved here as I understand the

21  argument and the cases cited in -- by Welsh and Katz in their

22  objection to the sale that was filed April 13th.  This is at

23  Page 3 of the objection.

24      The -- the first type of lien and a lien which is

25  recognized in favor of attorney under Michigan common law under

1  certain circumstances is commonly called a -- referred to as a

2  retaining lien as recognized by the cases, at least a couple of

3  cases cited by Welsh and Katz, Michigan cases, including the

4  case of <u>George v Gellman</u>, 201 Mich App 474, 506 NW 2d Reporter

5  at 583, a decision of the Michigan Court of Appeals from 1993.

6      It discusses how there are two kinds of attorney liens.

7  First, what it refers to as a general retaining or possessory

8  lien.  And second, a special, particular, or charging lien.

9      With respect to the retaining lien, the Michigan Court of

10 Appeals in that case said that a general or retaining lien is

11 the right to retain possession of all documents, money, or

12 other property of the client until the fee for services is

13 paid.  The retaining lien then is a -- is a possessory lien and

14 essentially would apply to property of the debtor which is the

15 attorney's client, that the attorney has in his or her

16 possession.

17     The second type of lien recognized by the Court in the

18 <u>Gellman</u>, <u>George v Gellman</u> case, was described by that Court as

19 -- as I've indicated a moment ago, a special, particular, or

20 charging lien.  And the Court described that lien as follows.

21     "The special or charging lien is an equitable right to

22 have the fees and costs due for services secured -- secured out

23 of the judgment or recovery in a particular suit.  The

24 attorney's charging lien creates a lien on a judgment,

25 settlement, or other money recovered as a result of the

1  attorney's services.

2      The Court went on to say that these liens, that is the

3  charging liens, automatically attach to funds or a money

4  judgment recovered through the attorney's services". This is

5  from again the Gellman -- George v Gellman case and I'm quoting

6  from 201 Mich App at Page 476 to 477, 506 NW 2d at Pages 584 to

7  585.

8      The -- I want to comment on one other Michigan case that

9  -- that is cited in the objection filed by Welsh and Katz and

10 that is the case of Mahesh v Mills, Mahesh, —a-h-e-s-h, a

11 decision of the Michigan Court of Appeals from 1999, the

12 citation is 237 Mich App 359, 602 NW 2d Reporter at 618.

13     In that case the Michigan Court of Appeals noted that,

14 "first, the attorney's charging lien is an equitable right

15 inherent in the judgment. The Court in that case also held

16 that where there was a conflict between an attorney's charging

17 lien and an opposing party's right to set off against the same

18 judgment, Michigan Courts adhere to the policy that the

19 attorney's charging lien takes precedence".

20     Now in that case that dealt with the right which Michigan

21 law recognizes of a party where parties have competing

22 judgments against each other. One party's right to set off the

23 amount of its judgment against the other judgment as a partial

24 satisfaction of the other's judgment.

25     In that situation both -- it appears under common law and

1 under a statute cited by the Michigan Court in that case, the

2 attorney's charging lien takes precedence over the opposing

3 party's right to set off of the judgment.

4     Now, I think that holding as well as discussion and

5 holdings in the other case that's cited by -- another case

6 cited by Welsh and Katz, the Keisor Industrial Corporation v

7 D.M. Liquidating Company case, 11 Mich App 438, 161 NW 2d at

8 452.  And its discussion of issues dealing with priorities of

9 attorney liens against other claimed interests highlights the

10 fact that it is on the present record given the authorities

11 cited by the parties, our parties, unclear at this point the

12 extent to which if at all one side or the other, that is the

13 Welsh and Katz on the one side and the senior lenders on the

14 other side, which side's liens, claimed liens in the specific

15 property at issue of the debtors has priority over the other.

16     And that is not an issue that the parties -- that the

17 Court is going to decide at this point.  And I think we

18 discussed that a bit yesterday.

19     I mentioned those cases and issues dealing with priority

20 only to highlight the fact that it is not necessarily a simple

21 issue when dealing with the priority of an attorney's lien

22 versus other claimed interests such a security interest in all

23 the debtors' assets, but I'm making a decision about priorities

24 at this point.

25     As I understood the argument, Welsh and Katz claims to

1 have a retaining lien in at least some of the debtors' -- the

2 Venture debtors' property.  Although it is unclear from the

3 argument yesterday whether any of that property in which Welsh

4 and Katz claims a retaining lien, it is proposed to be sold or

5 not.

6      Welsh and Katz further claims to have what appears to be a

7 charging lien securing payment of the fees, expenses owing to

8 it in the among other things, the two -- or the patent

9 litigation, the claims that are in patent litigation that are

10 proposed to be sold here as part of this sale.  Welsh and Katz,

11 I believe has also indicated through their counsel that they

12 claim to have some sort of attorney lien in certain patents

13 themselves.

14      Now the -- as I understand it there are patents that are

15 proposed to be sold as part of the sale and there are patent

16 claims that are proposed to be sold as part of the sale.  There

17 is a breach of contract claim that -- that Welsh and Katz has

18 worked on and is owed fees for or claims to be owed fees for,

19 and claims to have a lien in the claim that is not being sold.

20 And so that is not specifically the subject of today's ruling

21 on the objection to the sale.

22      The debtors and other proponents of the sale, including

23 the purchasers argue that the assets of the debtors in which

24 Welsh and Katz claims an attorney lien may be sold free and

25 clear of any such claim of lien under Section 363(f)(5) of the

1 Bankruptcy Code which authorizes the sale of property under sub

2 section (b) which is the applicable section here authorizes --

3 that's the one that authorizes the sale other than the ordinary

4 course of business of property of the estate.

5 And authorizes under Section 363(f) such sale free and

6 clear of any interest in such property of an entity other than

7 the estate only if -- and then one of the grounds, the ground

8 at issue here is sub (5) there. That being that such entity,

9 that is in this case Welsh and Katz, could be compelled in a

10 legal or equitable proceeding to accept a money satisfaction of

11 such interest.

12 The parties cite and discuss the case, the <u>Grand Slam</u> case

13 which is <u>In Re: Grand Slam USA, Inc.</u>, 178 BR 460, a decision of

14 the United States District Court from this district in 1995 for

15 support of their competing positions on the issue of whether

16 the Welsh and Katz lien, or whether the -- the sale of the

17 property at issue must be subject to the Welsh and Katz liens

18 or may be free of those liens, claimed liens.

19 <u>Grand Slam</u> held first of all, and <u>Grand Slam</u> was a Chapter

20 7 case that had been converted from Chapter 11. One of the

21 things that it held was that -- that a claim, a tax lien claim

22 that is subject to subordination and treatment under Section

23 724(b) of the Bankruptcy Code in a Chapter 7 case, is a claim

24 or lien which may be subject to sale -- subject -- free of that

25 lien under Section 363(f)(5) of the Code because section -- the

1  provisions of Section 724(b) are a mechanism that qualify for

2  coverage under Section 363(f)(5) as a procedure in which the

3  tax lien claimant can be compelled in a legal or equitable

4  proceeding to accept a money satisfaction of its lien.  And to

5  accept less than full payment of its lien as well in such a

6  proceeding.

7       Section 724(b), of course, has no bearing here in this

8  case.  There is no tax lien at issue here and that's what that

9  section applies to.

10      But the Court in Grand Slam as the parties discussed, also

11  cited the cram down provision of Section 1129(b)(2)(A) of the

12  Bankruptcy Code as another such legal or equitable proceeding

13  that is of the type covered by Section 363(f)(5).  And the

14  Court in Grand Slam indicated that -- that -- "that a 363(f)(5)

15  sale may occur free and clear of a lien without consent of the

16  secured creditor claiming that lien if present or future

17  payments are made to the secured creditor in an amount equal to

18  the present value of the collateral, even if such value is less

19  than the debt".

20      That's the Grand Slam case, 178 BR at 462.  The Grand Slam

21  Court then held that -- "that a 363 sale may occur under

22  Section 363(f)(5) with less than full payment of a secured

23  creditor's lien and the property may be sold free and clear of

24  that lien if the secured creditor could be compelled through a

25  cram down under Section 1129(b)(2)(A) to essentially and

1 voluntarily receive the -- and suffer an extinguishment of its

2 lien upon payment of the present value of its allowed secured

3 claim".

4     Which is what Section 1129(a)(2) -- (b)(2)(A) permits in

5 -- in terms of confirming a plan over the objection of and

6 dissent of a secured creditor under the cram down provisions of

7 Section 1129(b).

8     Given that, I conclude that if that standard is met, that

9 is that if the secured creditor here, Welsh and Katz, is

10 receiving as a result of this sale at least the value, the

11 present value of its collateral, even though that may be --

12 even though that is -- is or may be less than actually

13 receiving present value of its allowed secured claim, what

14 would be its allowed secured claim, even if that is less than

15 the value of the total claim which Welsh and Katz claims is

16 secured by, that -- that that sale may be permitted free and

17 clear of the Welsh and Katz liens under Section 363(f)(5).

18     Now, Welsh and Katz argues though that that cannot be done

19 at this point because there has been no valuation.  And for one

20 reason there has been no valuation of its collateral -- its

21 claimed collateral.  So the amount of its allowed secured claim

22 within the meaning of Section 506(a) has not yet been

23 determined and must be before this property could be sold free

24 of its claimed liens.

25     In my view, however, the proponents of the sale free and

1 clear are correct in arguing as I understand them to argue,

2 that the sale process that has just occurred in this case,

3 including the advertising, the bids, the auction, that entire

4 process, the marketing, has in fact established the value of

5 the debtors' assets being sold which include but are not

6 limited to the assets in which Welsh and Katz claims an

7 attorney lien.

8 And that value has been by that process demonstrated to be

9 far less than an amount sufficient to pay off the liens of the

10 senior lenders. So the conclusion I draw from that is that the

11 claimed liens of Welsh and Katz must be valued at zero unless

12 the Welsh and Katz liens have priority over the senior lender

13 liens.

14 If and to the extent they do have priority over the senior

15 lenders liens, then they are not valued at zero, but have value

16 that must be protected through a continuation of the lien. So,

17 unless Welsh and Katz's liens have both exist and have priority

18 over the senior lender liens as the situation exists prior to

19 the sale here, Welsh and Katz would not have an allowed secured

20 claim to put it another way under Section 506(a), its allowed

21 secured claim would be zero. And also the mechanism of cram

22 down under 1129(b)(2)(A) would enable an extinguishment of

23 Welsh and Katz's lien for that reason such that Section

24 363(f)(5) would apply.

25 Welsh and Katz could be compelled in a legal or equitable

1 proceeding to accept a money satisfaction of less than the full

2 amount of its claim that is allegedly secured by this property.

3 And in fact could be compelled to accept zero because they have

4 -- that because they would be junior in priority to liens that

5 have been unpaid if in fact that's the case.

6     As I indicated earlier, the Court is not yet determining

7 the question of whether any of the Welsh and Katz claimed liens

8 have priority over the senior lenders' liens, or the extent to

9 which any Welsh and Katz liens have such priority.  So the

10 conclusion I draw is that the property in which Welsh and Katz

11 claims a lien, whether it be a retaining lien, or a charging

12 lien, may be sold free and clear of all liens, claims, and

13 interests except that the sale is subject to all claimed liens

14 of Welsh -- Welsh and Katz -- Welsh and Katz only to the extent

15 those liens in fact exist and -- for part of the sale and have

16 priority over the liens of the senior lenders prior to the

17 sale.

18     This means that we need to in the order, I think is the

19 place to do this, but we need to identify the -- all the

20 particular property that is being sold, that is property in

21 which Welsh and Katz claims a lien, whether it be a retaining

22 lien, or a charging lien.  And indicate the -- the one

23 limitation on sale free and clear that I have described of that

24 property and the purchaser here.

25     Then we can talk about a schedule if the parties wish to

1 do that for further proceedings if Welsh and Katz does want an

2 opportunity to argue that one or more of its claimed liens does

3 -- did in fact exist pre-sale and did in fact have priority

4 over one or more of the liens of the senior lenders.

5     I want to comment briefly on the argument, an argument

6 made by the senior lenders/purchaser yesterday.  I understood

7 the argument at least, which was that Section 363(f)(5) also

8 applied to prevent the sale free and clear of any claimed lien

9 by Welsh and Katz because under non-bankruptcy law, essentially

10 state law, the senior lenders could foreclose on their liens in

11 the property at issue through a foreclosure sale and sale.  And

12 by so doing could extinguish the junior lien of Welsh and Katz

13 with Welsh and Katz receiving nothing because the proceeds to

14 be received from the sale would be insufficient to pay the

15 senior lien of the senior lenders.

16     First of all, that argument obviously assumes that the

17 senior lenders' lien is senior rather than junior to the Welsh

18 and Katz lien.  And so for the same reasons I discussed a

19 moment ago, even if the Court were to accept this argument,

20 this particular argument, the order still would have to contain

21 the caveat or reservation regarding -- that I described a

22 moment ago, regarding determination of whether or not the Welsh

23 and Katz lien is senior or junior.

24     And second, this argument also assumes that under

25 applicable law, state law, the -- that such law would permit a

1 foreclosure type sale of this -- these assets that are at issue

2 here in such a way that would extinguish an attorney's charging

3 lien or retaining lien, given that we are dealing at least in

4 large part with causes of action.

5 There has been no authority cited by the senior

6 lenders/purchasers or any other party that state law permits a

7 sale of that -- a foreclosure sale of that type that would in

8 fact extinguish junior liens. So I'm unable at this point to

9 conclude that that -- that that is a correct argument.

10 For those reasons the -- the -- the particular argument

11 I've just described which deals with state foreclosure law and

12 extinguishing of junior liens under that law is rejected. And

13 even if I were to accept it, the order would still have to

14 contain the reservation that I described.

15 So, that brings us then to the terms of the order that

16 need to be put in. Now I reviewed -- the terms that you need

17 to put in the order, I reviewed the portions of the proposed

18 order submitted by debtors and others, Paragraph 27, Option A

19 and Option B.

20 Option B is out based on my ruling. And I had some

21 questions about Option A. I also read the proposed order

22 language that Mr. Shapiro submitted for the most recent hearing

23 this afternoon and that is out as well, since the ruling

24 rejects that view of the objection.

25 And so the -- first of all, the objection to the sale by

1  Welsh and Katz is sustained in part to the extent I've

2  indicated and otherwise overruled.  Now with respect to the

3  order, Mr. Shapiro, I had some questions about the proposed

4  order, Paragraph 27, Option A.  And I don't think you have had

5  yet an opportunity to comment about Option A as opposed to the

6  version that -- of the order -- of the order that would -- that

7  would apply if I had ruled more in your favor, your client's

8  favor on this objection.  Did you want to comment on the form

9  of Option A under the debtors' proposed order?

10         MR. SHAPIRO:  Are you talking about commenting in

11  open Court, or having a discussion with debtors' counsel?

12         THE COURT:  You know, either way is fine with me.  I

13  think -- I indicated in my ruling that -- let me just mention a

14  couple of my concerns and then perhaps it might be well for the

15  parties to talk about this rather than hash this out in open

16  Court.  And see if you can work out appropriate language.

17      As I under -- let me just mention the concerns I -- or

18  questions I had.  First, Paragraph 27 leading up to Option A

19  and Option A, I think deal only with transferred claims.  As I

20  understood Welsh and Katz's objection, they are claiming a lien

21  in actual patents themselves as well and they are or may be

22  claiming a lien, a retaining lien in property of the debtor

23  such as books and records and so forth that is also being sold.

24      I don't know the extent to which there -- there is such

25  property as part of this sale.  So that's part of, I guess, the

1 comment I made in my ruling that the property in which Welsh

2 and Katz claims to have a lien that is being sold, needs to be

3 defined with particularity to make sure that all of it is

4 covered by this order.

5        The second question I had was, in Option A the second

6 line, it contemplates as a procedure for resolving post-sale

7 dispute about the priority of these competing liens as between

8 the agent for the senior lenders on the one hand and Welsh and

9 Katz on the other hand, that the agent can wait up to nine

10 months to file a motion to ask the Court to resolve that issue.

11        And I didn't understand why we should wait nine months or

12 anything approaching nine months, but that -- the parties can

13 certainly talk about that and give me their --

14             MR. MAYER:  Your Honor, this is -- this is Tom --

15             THE COURT:  Just a minute.

16             MR. MAYER:  -- Tom Mayer.

17             THE COURT:  Hold it, hold it, hold it, hold it, hold

18 it, stop.  I'll let you know when you can talk, Mr. Mayer, all

19 right?  Mr. Mayer?

20             MR. MAYER:  Yes, Your Honor.

21             THE COURT:  I'll let you know when you can talk.  We

22 have a problem here in that when you're talking on that speaker

23 phone I can't interrupt you and you can't hear me.  So wait

24 till I'm done and I call on you and then you can talk, okay?

25             MR. MAYER:  Yes, Your Honor.

1          THE COURT:  All right.  Thank you.  All right.  So,
2   you know, we're going to need to perhaps talk about that.

3          Now it may be the best thing is for the parties to go out
4   in the hall so to speak, maybe Mr. Mayer needs to be patched in
5   by phone and talk about refining the language in this order
6   under Paragraph 27, including Option A.

7          Now I'll start with Mr. Shapiro, does that make sense to
8   you, Mr. Shapiro, that you want to go out and talk about the
9   form of this order?

10         MR. SHAPIRO:  That's perfectly fine, Your Honor.  I
11  don't have a great deal of changes.  And one of them was
12  exactly what the Court had mentioned with regard to defining
13  all of the assets subject to the alleged lien.  But I'm more
14  than happy to sit down.  Did the Court have any other comments
15  about the Option A?

16         THE COURT:  Well, I didn't.  I thought the idea of an
17  escrow in case money does come in in the interim before there
18  is a determination on priority was a good idea.  But you know,
19  again you can talk about that.

20         Now, let me turn then to Mr. Mayer.  Mr. Mayer, can you
21  hear me?

22         MR. MAYER:  Yes, Your Honor.  I claim blame for this
23  language and I just wanted to indicate first, I don't have any
24  problem with defining more specifically the interest that Welsh
25  and Katz is asserting a lien and it should be -- the issue is

1 to preserve the -- their rights to assert the liens and

2 therefore adding in patents and other references are fine with

3 me.

4      With respect to the nine month period, Your Honor, the

5 point was not to wait nine months.  The point was to say that

6 there are other places in the order where is it contemplated

7 that a plan of reorganization will be confirmed within nine

8 months.

9      And since the issue of priority relates not just to assets

10 that are being transferred to the purchaser, but to assets that

11 are remaining in the estate, seemed to me that the issue needed

12 to be teed up for litigation within that nine month period.

13 That was the purpose of the language, not that we'd wait nine

14 months, but that we would have to start it within the nine.

15           THE COURT:  Okay.  And perhaps what the parties can

16 talk about when you talk about this working out this language

17 as well is a mechanism by which Welsh and Katz can trigger a

18 Court determination through a motion or otherwise of the issue

19 of priority of liens so that they're not, you know, essentially

20 held hostage having to wait until, you know, the agent or

21 somebody other than them file something to challenge the

22 priority.

23      All right.  Did anyone else want to say anything on this

24 subject of getting the form of this -- this part of the order

25 finalized?

1          MR. SHAPIRO:  Your Honor, there's one particular

2    issue that I think it may be better addressed by the Court or

3    with you here.  And that's with regard to a reference in Option

4    A, it's Line 7 and then 13.

5          There's a reference to the asserted interest in the

6    transferred claims being prior to the interest asserted by the

7    agent.  I'd like to change that to senior in whole or in part.

8          THE COURT:  That's -- that may be fine, but that's

9    the kind of thing I want you to talk about in the hall.

10          MR. SHAPIRO:  Well, I kind of figured that it might

11    become an issue and we might have to --

12          THE COURT:  It is -- it has priority.  It's an issue

13    of priority.  So, you know, if you want to --

14          MR. SHAPIRO:  That's fine.

15          THE COURT:  Want to make sure we say that

16    unambiguously you're right.

17          MR. SHAPIRO:  All right.

18          THE COURT:  If that's what --

19          MR. SHAPIRO:  That's fine, Your Honor.

20          THE COURT:  Yeah, sure.  And that's maybe a good

21    point.  I'm just saying this is the kind of thing you don't

22    need me to try to work out this language in the first instance

23    I don't think.  So --

24          MR. SHAPIRO:  Understood.

25          THE COURT:  All right.  Anyone else want to say

1  anything about the subject of the Welsh and Katz -- the form of

2  the order portion dealing with Welsh and Katz?

3      All right.  Why don't we then allow Welsh and Katz and the

4  attorneys, other attorneys who are appropriate, to deal with

5  this language which I assume includes Mr. Mayer, to go out and

6  work on that.  Mr. Mayer, are you able to work on that by

7  telephone or otherwise while we deal with other portions of the

8  order, or do you need to be here for the rest of this?

9          MR. MAYER:  May I speak, Your Honor?

10         THE COURT:  Sure.

11         MR. MAYER:  First, no, I don't have to be present.  I

12 do actually have another call I need to take.  But if Mr.

13 Shapiro can send me comments say in half an hour, I'm sure I

14 can turn them around pretty quick and my colleague Ms. Caton

15 will be on for the balance of the call.  So if it's okay with

16 the Court, I would ask to be excused and I'll turn to Mr.

17 Shapiro's comments as soon as I get them.

18         MS. LAMB-HALE:  Your Honor, I don't think we have

19 half an hour.  I would like to accommodate Mr. Mayer, but I

20 wondered if maybe we could get it done sooner.

21         THE COURT:  I was thinking Mr. Shapiro go out in the

22 hall right now and do this with you Mr. Mayer now, right now.

23         MR. MAYER:  Oh, right now?  Oh, okay.  I don't have a

24 -- in open Court.  I can --

25         THE COURT:  Not in open Court.  Out in the hall and

1 you on the phone.

2          MR. MAYER:  I'm happy to take his call.

3          THE COURT:  All right.  Mr. Shapiro, do you -- are

4 you able to do that while we take up the rest of the order, or

5 do you need to be here for the rest of the order?

6          MR. SHAPIRO:  I do not need to be here if I can just

7 get a phone number to call Mr. Mayer, I'm more than happy to

8 contact him.

9          MS. LAMB-HALE:  I do.

10          MR. SHAPIRO:  Okay.

11          THE COURT:  All right.  Mr. Mayer, we'll give Mr.

12 Shapiro the phone number our Court Reporter has, is that -- is

13 that a good number?

14          MR. MAYER:  It's 212-715-9169.

15          MR. SHAPIRO:  I have it, Your Honor.

16          THE COURT:  Okay.  Mr. Shapiro, you have a copy of

17 this Paragraph 27?

18          MR. SHAPIRO:  I do.  I do, Your Honor.

19          THE COURT:  All right.  Okay, fine.  Thank you.  Good

20 luck on that.  Now, we have the rest of the order then.

21          MS. LAMB-HALE:  Yes.  And Your Honor, if I may add.

22 We made an additional change, I know you hate to hear that.

23          THE COURT:  No, that's fine, that's fine.

24          MS. LAMB-HALE:  To Recital U of the order.  So if I

25 could indulge you to take those two copies back.

1          THE COURT:  Yes.  Here they are.

2          MS. LAMB-HALE:  Thank you.  And we'll make that

3  change so you can see.

4          THE COURT:  I think you got the signature page back.

5      (Off the Record Comments)

6          MS. LAMB-HALE:  May I approach, Your Honor?

7          THE COURT:  Sure.  All right. You've given me one

8  copy of the order.  The others are being marked up, is that it?

9          MS. LAMB-HALE:  Yes, they are, Your Honor.

10          THE COURT:  All right.  So this copy has all the

11  change, the latest change.

12          MS. LAMB-HALE:  Yes, it does.  That's the master.

13  Here are two copies of the signature pages.

14          THE COURT:  Okay.  Okay.  We're missing the signature

15  only of Mark Shapiro which we'll deal with after we finish the

16  Welsh and Katz order -- portion of the order.

17      Okay.  Now, I think this might be the best time to allow

18  anybody who wants to make any statements about reservations of

19  rights, any other statements to -- to do that for the record.

20  I'm going to have to take few minutes and review the changes in

21  the order and not only the handwritten changes, but the changes

22  from the original form of the order.

23      On the last recess I focused on the Welsh and Katz portion

24  only.  So I've got to go back and I've got to take a little

25  time to do that.  But before we do that, why don't we hear from

1  any attorneys for any party that want to say anything about

2  this.  Mr. Orr, you want to go first, I guess.

3          MR. ORR:  Thank you, Your Honor.

4          THE COURT:  Go ahead.

5          MR. ORR:  Norman Orr on behalf of Multimatic Sales

6  and Marketing.  Again as I tried to explain earlier, Paragraph

7  49 indicates that it's necessary to reserve on the record

8  concerns about use of the proffers of testimony or the

9  stipulations and findings of fact contained in the record in

10  other matters.

11      And on behalf of my client, I would like to reserve their

12  rights that those -- that testimony and those stipulations not

13  be used in the separate adversary proceeding that exists or

14  should there be a future attempt to assume and assign a

15  contract involving my client.  Thank you, Your Honor.

16          THE COURT:  Now, Mr. Orr, you referred to Paragraph

17  49.  Did you mean Paragraph 47?

18          MR. ORR:  I'm sorry, 47.  I apologize.  I'm working

19  off an earlier draft.

20          THE COURT:  All right.

21          MR. ORR:  Sorry, Your Honor.

22          THE COURT:  Okay.  Who is next, Ms. Fish?

23          MS. FISH:  Good afternoon, Your Honor.  Mr. Peurach

24  had to leave on behalf of Harper Properties.  He had made his

25  reservation prior to the Court taking the break and I just

1  confirmed for him that I would make the reservation again if

2  called upon on behalf of Harper Properties.  We'd like the same

3  reservation as to all the other parties making the reservation

4  pursuant to Paragraph 47.  Thank you.

5          THE COURT:  So you're -- you're doing this on behalf

6  of Mr. Winget, the Winget living trust, and Harper Properties?

7          MS. FISH:  Correct, Your Honor.

8          THE COURT:  Okay.

9          MS. FISH:  I think that would also include based on

10 the language in the cure notice too, that it would be any

11 entity owned or controlled by Mr. Winget other than the

12 debtors.  Thank you, Your Honor.

13         THE COURT:  All right.  Ms. Osborne.

14         MS. OSBORNE:  Good afternoon, Your Honor.  I believe

15 I did this yesterday, but I want to be clear in making the same

16 type of reservation of rights on behalf of Delphi Automotive

17 Systems, LLC and any of its affiliates as well as Johnson

18 Controls, Incorporated and any of its affiliates reserving any

19 rights or claims they may have.  And certainly complete

20 reservation of rights with respect to any evidence proffered by

21 the debtor in support of finding the adequate assurance or

22 otherwise under Section 365 of the Code.

23         THE COURT:  All right.

24         MS. OSBORNE:  Thank you, Your Honor.

25         MR. LAPLANTE:  Your Honor, on behalf of Autoliv, in

 1 Paragraph 27 but maybe elsewhere in the order there is a

 2 statement of the amount of the judgment against Autoliv and we

 3 reserve the right to verify that amount.  I haven't have an

 4 opportunity to do so with my client before now.

 5          THE COURT:  That's the jury verdict judgment?

 6          MR. LAPLANTE:  Yes, Your Honor.

 7          THE COURT:  Well, what do you mean you want to verify

 8 the amount?  When are you going to do that?

 9          MR. LAPLANTE:  I'm waiting to hear back from my

10 client that that is in fact the amount and that it's properly

11 calculated.

12          THE COURT:  Oh, I see, I see.  So you want to --

13 before we finish this afternoon, you want to tell me yea or nay

14 that's the right -- the right amount or not.

15          MR. LAPLANTE:  That's correct, Your Honor.

16          THE COURT:  Okay.  All right.  Thank you.

17          MR. LAPLANTE:  Thank you.

18          THE COURT:  Remind me please before we finish about

19 that if I forget.

20          MR. LAPLANTE:  I will, Your Honor.

21          THE COURT:  Thank you.  Mr. Nathan.

22          MR. NATHAN:  Good afternoon again, Your Honor.  Ken

23 Nathan for Newstart Factors, Inc.  In an abundance of caution,

24 I would put the same reservation of rights on the record.

25          I would also ask the Court if the Court is inclined to

 1 sign an order today, are you going to come back out and do

 2 that, or are you going to just do it in chambers?

 3          THE COURT:  I'm going to come back out.

 4          MR. NATHAN:  Then I reserve the right at that time to

 5 ask the Court for additional relief.  Thank you.

 6          THE COURT:  I'm sorry, additional relief?

 7          MR. NATHAN:  Yeah, possibly of stay pending appeal or

 8 some type of oral motion in that regard.

 9          THE COURT:  Oh, I see.  All right.

10          MR. NATHAN:  Thank you.

11          THE COURT:  Mr. Burgess.

12          MR. BURGESS:  Thank you, Your Honor.  I just want to

13 make sure that the record is clear as to the scope of these

14 various reservations that have been noted this afternoon.

15      It's my understanding and in the specific context of

16 Paragraph 47 of the proposed order, that these reservations as

17 to evidence that was proffered cannot later be used to attack

18 the sale itself or the good faith transfer of the assets,

19 assuming the Court approves the order.  But rather these

20 reservations pertain to items such as adequate assurance of

21 future performance as to contracts that may subsequently be

22 assigned.

23      But I do think it's necessary to make it clear that this

24 is not a reservation to attack the order itself as to the sale

25 of the assets.  I think that's clear as to the parties, but I

 1  wanted to make sure that the record was crystal clear on that

 2  point.

 3          THE COURT:  Does any party who has made any

 4  reservations of rights during this hearing have any different

 5  view than what Mr. Burgess just expressed?  Hearing nothing, I

 6  think that then is clear and agreed, Mr. Burgess.  All right.

 7  Anyone else want to say anything?

 8      All right.  I think it's time then for me to go back and

 9  -- and review the order.  And I will do that as quickly as I

10  can.  And then come back out.  Oh, Mr. Shapiro, you're back.

11  Are you still working on your language?

12          MR. SHAPIRO:  Actually, Your Honor we were able to

13  resolve all the issues very quickly.  Apparently Mr. Mayer had

14  another conference call he had to get to, so he was

15  consummately reasonable.

16          THE COURT:  Okay.  So --

17          MR. SHAPIRO:  I'm just writing those in.  Do you want

18  me to bring it around into chambers after?  I'm just trying to

19  finish the last --

20          THE COURT:  Sure.  Why don't you -- as soon as you

21  get the language done that's agreed on, you know, why don't you

22  hand it in, let me -- I'll look at it while I'm looking at the

23  rest of this stuff.

24          MR. SHAPIRO:  Yeah, actually I'll obviously give it

25  to Ms. Lamb-Hale first and let her take a look at it.

1          THE COURT:  Yeah.  All right.  Thank you.

2          MR. SHAPIRO:  Thank you.

3          THE CLERK:  All rise, please.

4       (Court in Recess at 3:14 p.m.; Resume at 4:10 p.m.)

5          THE COURT:  All right.  Thank you all.  I have

6  reviewed the proposed order as well as the language submitted

7  -- submitted -- submitted by Mr. Shapiro regarding the Welsh

8  and Katz treatment and have just a couple of things to raise

9  here.

10       First, a very minor point on the order, Page 2.  The

11  recital that the day of the hearing, I just added where it says

12  hearing on this motion having been held on April 18, I added

13  and 19.  Given the reservation of rights and some of the other

14  things that took place today, I wanted to add that.  So I'm

15  adding that to each copy of the order and initialing that.

16       Then I wanted to talk about the Welsh and Katz language.

17  Mr. Shapiro --

18          MR. SHAPIRO:  Yes, Your Honor.

19          THE COURT:  I reviewed what you submitted.  A couple

20  of questions about it.  One, under Option A there, do you have

21  a copy there of what you handed in or --

22          MR. SHAPIRO:  I actually gave you my only copy.

23          THE COURT:  All right.

24          MR. SHAPIRO:  I have one here, Your Honor.

25          THE COURT:  All right.  Option A, the second sentence

1  which begins with the words if an order is entered determining.

2          MR. SHAPIRO:  Yes, Your Honor.

3          THE COURT:  Do you see that?

4          MR. SHAPIRO:  I do.

5          THE COURT:  I'm wondering if we should say in there

6  if and to the extent an order is entered determining.

7          MR. SHAPIRO:  That's fine.

8          THE COURT:  Okay.  And then the same comment

9  regarding the next sentence where it says if such final order

10 determines that.  Should we say if and to the extent such final

11 order determines that.

12         MR. SHAPIRO:  That's fine, Your Honor.

13         THE COURT:  Do you see what I'm saying there?

14         MR. SHAPIRO:  I do.

15         THE COURT:  All right.  The order contemplates -- the

16 rest of the order -- section there or paragraph contemplates

17 that it may not be an all or nothing proposition with respect

18 to priority of these liens.

19     And I'm wondering also whether on -- in the opening

20 paragraph before the Option A language, where it says at the

21 end of that paragraph Welsh and Katz has asserted interest and

22 the transfer of claim shall be treated as follows.  I'm

23 wondering whether given the other language in the order in

24 various places you don't want to say something like that

25 wonderful phrase that everybody likes to use, notwithstanding

1 any other provision of this order, Welsh and Katz's asserted

2 interest shall be treated as follows.

3      There is other language for example, Paragraph 34 of the

4 order that you would want to be sure this order is clear that

5 the Welsh and Katz particular treatment will trump that with

6 respect to Welsh and Katz's claimed liens.  So it's up to you,

7 but it would seem to me that would make sense just for clarity.

8           MR. SHAPIRO:  Yes.

9           THE COURT:  That to the extent there's any language

10 elsewhere in the order that could suggest -- might suggest

11 Welsh and Katz's liens are sold free and clear, this -- this

12 makes clear that -- that this -- this governs.

13           MR. SHAPIRO:  I have no problem with that, Your

14 Honor.

15           THE COURT:  Okay.  The other proposed changes you

16 wrote in there I guess you made some changes in blue ink are

17 fine with me.  And so I think what I would ask you to do --

18 now, Mr. Mayer is no longer with us, I guess, or is he on the

19 phone?  Is he back?  No.

20      All right.  I wouldn't think he would have a problem with

21 any of these changes that I have added.  So we'll go ahead and

22 make these.  But the other changes, he agreed to those, right?

23           MR. SHAPIRO:  He did, Your Honor.

24           THE COURT:  Okay.  All right.  Why don't we do this?

25 Why don't I give -- hand back the order -- somebody needs to

1 write in your changes. In paragraph, it's 27, I guess.

2         MR. SHAPIRO: Yes.

3         THE COURT: Actually. All right. So I have -- I'll

4 put a little tag on the top one of these and somebody can write

5 that into each of the orders. So let me hand that back.

6 Whoever has the neatest handwriting, Ms. Lamb-Hale, how about

7 you?

8         MS. LAMB-HALE: It's not me it's --

9         THE COURT: It's not yours?

10         MS. LAMB-HALE: It's Ms. Abram's.

11         THE COURT: And here, let me hand back, Mr. Shapiro,

12 what you brought into chambers. The red markings on there are

13 scribblings of mine having to do with the changes we just

14 talked about.

15     And Mr. Shapiro, we need your signature at least approval

16 as to form, assuming that's appropriate in your view to the

17 order. If you don't want to sign off even as to that you can

18 say so and that's --

19         MR. SHAPIRO: No, Your Honor, I'm more than happy to

20 sign off on the order with those changes.

21         THE COURT: All right. Why don't you -- let me hand

22 you the signature pages. There's an original -- well, there's

23 a couple of copies. So you can sign it if you want to indicate

24 approval as to form or some other limitation, whatever you want

25 to write in there, go ahead. That's going to be attached to

1 the back of the order right after this page with my signature

2 on it I think.

3      Has everyone who wants to had an opportunity to review the

4 -- what will be the final form of the language in Paragraph 27

5 regarding Welsh and Katz?  Anyone want an opportunity to review

6 that who is present?  Hearing nothing, that's fine.

7      All right.  As soon as those changes have been written in,

8 I'm ready to sign the order.  Mr. Nathan, you wanted to be

9 heard from?

10          MR. NATHAN:  I do.

11          THE COURT:  All right.  Okay.

12          MS. LAMB-HALE:  Your Honor, if I might.  I just have

13 a logistical clean up matter.  With respect to the sale hearing

14 as you know, there are a number of executory contracts that are

15 kind reserved at this point that the purchaser will determine

16 during the time period provided in the order whether they will

17 take assignment of -- of the same.  And I wondered if it would

18 make sense to continue the sale hearing after entry of the

19 order as it relates to those matters.

20          THE COURT:  No.

21          MS. LAMB-HALE:  Okay.

22          THE COURT:  No, this hearing ends right now, today

23 when I sign this order.

24          MS. LAMB-HALE: Okay.

25          THE COURT:  If we need to set a hearing on any

1 disputes dealing with that, we can do that later.  I had wanted

2 a procedure in the order that dealt with all of this.  To the

3 extent it's not in there, the parties will -- can ask for a

4 separate order.

5          MS. LAMB-HALE:  Okay.

6          THE COURT:  If you want that establishes a mechanism

7 that triggers a hearing to be set on filing of a notice and

8 objections.

9          MS. LAMB-HALE:  Yes.  And I think that's provided

10 therein.  I just didn't know if you wanted it technically --

11          THE COURT:  To the extent it's not and you think

12 something needs to be cleaned up for that --

13          MS. LAMB-HALE:  Sure.

14          THE COURT:  -- then you know you can submit you can

15 ask for entry of an order that cleans that up.

16          MS. LAMB-HALE:  Okay.

17          THE COURT:  Or you can make the changes in this thing

18 right now if you think further changes need to be made.  But I

19 don't -- I don't think we want to continue -- I don't want to

20 continue this hearing.

21          MS. LAMB-HALE:  Okay.

22          THE COURT:  Mr. LaPlante, did you want to say

23 something?

24          MR. LAPLANTE:  Your Honor, I did want to verify for

25 the record that --

1          THE COURT:  Oh, that's right, I'm sorry.  Go ahead.

2          MR. LAPLANTE:  The amount is correct from the Autoliv

3   judgment referenced in Paragraph 27.

4          THE COURT:  Okay.  Thank you.

5          MR. LAPLANTE:  Thank you.

6          THE COURT:  For the benefit of those in the

7   courtroom, Mr. Shapiro did sign the -- his signature to each

8   copy of the signature pages.  I indicated he wrote in above it

9   approved as to form.

10      I'll tell you what, Mr. Nathan, would you like to be heard

11  from now while we're waiting for this?

12         MR. NATHAN:  Yes, Your Honor.  In light of the fact

13  that you've indicated you're going to sign the order and once

14  that change is made and everybody else has signed off.

15         THE COURT:  Yeah, I am.

16         MR. NATHAN:  We can move the process along.

17         THE COURT:  Okay.

18         MR. NATHAN:  For the record again, Your Honor, Ken

19  Nathan appearing on behalf of Newstart Factors, Inc.  We'd like

20  to make an oral motion on behalf of my client for a stay

21  pending appeal with regard to entry of this order and the sale.

22      There has been no indication on the record from the debtor

23  or the purchasers as to when they intend to close this

24  transaction.  It's my client's concern that they will close and

25  impede my client's rights of appeal prior to us getting back

1   before you and before a District Court Judge.  We're trying to

2   expedite that process.

3              THE COURT:  Well, you can make your motion right now

4   and -- if you want to.  It's an oral motion.  Go ahead and to

5   the extent you feel the need to obtain a written order or file

6   after today a written motion in this Court, you're certainly

7   free to do that.

8              MR. NATHAN:  Well, it's just necessary for us to get

9   a ruling from this Court and that the Court normally is not

10  inclined to stay their own entry of a -- of a sale motion.  We

11  do then have to go to the District Court and indicate to the

12  District Court that the Judge in the Bankruptcy Court denied it

13  and the reasons for their denial.

14             THE COURT:  I understand.

15             MR. NATHAN:  I would indicate to the Court that --

16             THE COURT:  Now let me just say that I'm happy to

17  hear your motion now in the interest of time and the urgency of

18  the matter.  And I do note, however, that by definition I

19  presume you have not filed a notice of appeal yet.

20             MR. NATHAN:  I understand and we have not.

21             THE COURT:  The order hasn't been signed yet.

22             MR. NATHAN:  Correct.

23             THE COURT:  We're going to sign the order and then

24  you -- if you want to file a notice of appeal, obviously your

25  client can do that.  I have no problem with hearing your

1 motion, however, before the filing of the notice of appeal and

2 a few minutes before I sign the order with the understanding

3 that -- that we're treating this as if -- the same way we would

4 treat it as if the order had been signed and you had filed a

5 notice of appeal so that you don't have to just go through the

6 same exact steps all over again with -- with the Bankruptcy

7 Court but at the District Court level.

8     And to the extent the law permits me to treat it that way,

9 I'm happy to do that.  So why don't you go ahead with your

10 motion.

11     MR. NATHAN:  Thank you, Your Honor.  On behalf of my

12 client again, Newstart Factors, Inc., we request --

13 respectfully request today that the Court enter a stay pending

14 the appeal on the sale motion.

15     I would indicate too that I do not believe it would cause

16 any detriment to the debtor or to the purchasers who intend to

17 close on this transaction for whom's benefit I believe that

18 this sale has occurred.  I would indicate that I believe that

19 it would cause them no detriment -- no detriment for the reason

20 that there are various issues that need to be resolved prior to

21 the closing or in lieu of the closing and relate to executory

22 contracts, cure amounts, and things of that nature which are

23 going to be the subject matter of negotiations and potential

24 hearings before this Court going forward.

25     There is no, as I can see it, no immediate damage that

1 would be caused to the debtor or the purchasers by a stay for

2 some period of time to allow an appeal to move forward.  There

3 would be a significant detriment to my client and their rights

4 of appeal if no stay is granted and the sale closes.

5     A provision under 363 would indicate that the appeal would

6 then be moot once the sale has closed.  So I believe it's

7 363(h), I don't have my Code in front of me, Your Honor, but

8 there is a provision under 363 that provides that if a sale

9 closes with an appeal pending, without a stay being issued then

10 that appeal is moot.  So there would be significant detriment

11 and harm to my client if no stay is issued at this time.

12          THE COURT:  You're referring to 363(m), reversal or

13 modification --

14          MR. NATHAN:  (m), excuse me.

15          THE COURT:  -- on appeal of an authorization, et

16 cetera.

17          MR. NATHAN:  Yes, Your Honor.

18          THE COURT:  Does not affect the validity of the sale

19 or lease unless such authorization or sale were stayed pending

20 appeal.

21          MR. NATHAN:  Correct, that's exactly correct, Your

22 Honor.

23          THE COURT:  Okay.

24          MR. NATHAN:  363(m) would be correct then, thank you.

25          THE COURT:  All right.  Go ahead.

1          MR. NATHAN:  And so therefore if you waive the harm

2   and the detriment between the parties on the one side the

3   debtor and the purchaser versus the -- my client on the other

4   hand, there will be significant -- I believe it weighs in favor

5   of Newstart over the debtor and the purchaser.  Specifically

6   relating to the fact that again 363(m) provides that if there

7   is no stay pending appeal that these parties can then rush to

8   close, close the transaction, and create a moot appeal at that

9   point and no rights will prevail for my client to have a

10  District Court or a higher Court look at what transpired here

11  and -- and -- and preserve our rights.

12         THE COURT:  Uh-huh.  What -- before coming out

13  knowing what you were going to do, I reviewed Rule 8005 of the

14  Federal Bankruptcy Rules.  What -- what rules -- what rule or

15  rules exactly are you relying on for this Court's authority to

16  issue a stay here?  8000 -- the rule I just referred to, or

17  something else, 8005 or something else?

18         MR. NATHAN:  One moment, Your Honor.

19         THE COURT:  Sure.

20         MR. NATHAN:  Well, there's 8005, Your Honor.

21  Bankruptcy Rule 8005 would be the rule that we would rely on

22  for the stay pending appeal.

23         THE COURT:  All right.

24         MR. NASH:  Your Honor, could I point out a factual

25  point at some point in this process?  This is Pat Nash on

 1 behalf of the DIP lender.

 2        THE COURT:  Mr. Nash, are you referring to a desire

 3 to respond to the motion for stay?

 4        MR. NASH:  I'm sorry, Judge.  You went out on me just

 5 a little bit there.  I just wanted to make sure that Your Honor

 6 was aware and I would presume Mr. Nathan would be aware since

 7 he represents a member of the DIP lending group that the

 8 debtors' DIP financing facility per its terms expires ten days

 9 after the conclusion of the sale hearing.  And that's certainly

10 a relevant fact when evaluating the harm of staying or not

11 staying the closing of the sale transaction.

12        THE COURT:  Mr. Nash, what I said was, I had asked

13 you whether you were -- wanted to respond to the stay motion.

14 And it sounds like you do and I'll take what you've already

15 said, but you can have an opportunity to respond in a moment

16 further if you wish.

17        MR. NASH:  I'm sorry, Your Honor.  You were --

18 there's a little bit of fading out, I apologize.

19        THE COURT:  I'm -- I'm probably fading out myself,

20 but, all right.

21        MR. NASH:  Thanks, Judge.

22        THE COURT:  Okay.  Mr. Nathan, go ahead.  I didn't

23 want to -- I wanted to make sure you were finished before we go

24 further.

25        MR. NATHAN:  I have nothing further, Your Honor.

1        THE COURT: All right.

2        MR. NATHAN: I'll just retain the right to reply to

3 any further argument.

4        THE COURT: All right. And Newstart does in fact

5 intend to appeal, Mr. Nathan, I presume?

6        MR. NATHAN: I've been told by my client that they do

7 intend to appeal, yes.

8        THE COURT: All right. What sort of security do you

9 think the Court should require if the Court granted a stay

10 here?

11        MR. NATHAN: I don't know that any security is

12 necessary at this point, Your Honor, if there's a stay issued,

13 weighing the relevant harm to the parties would be necessary

14 but at this point we haven't determined what that might be.

15        THE COURT: All right. All right. I'll hear now

16 from anyone who wants to respond to the motion for stay. Let's

17 start -- Mr. Nash, you've already spoken. Let's finish your --

18 whatever you want to say. Did you want to say anything further

19 on this?

20        MR. NASH: I just wanted to make sure that everybody

21 in the courtroom -- I think most are aware that -- that

22 everybody is aware that the DIP financing does expire ten days

23 after the conclusion of the sale hearing and that's I think

24 certainly a relevant factor.

25        MR. WALPER: Your Honor, this is Thomas Walper on

1  behalf the Yucaipa companies, one of the purchasing group.

2          THE COURT:  Yes, sir, go ahead.

3          MR. WALPER:  Thank you.  I had scribbled down a note

4  before Mr. Nash spoke forward, but we -- we would like to adopt

5  the position of Mr. -- the -- the factual statement of Mr. Nash

6  in particular that Newstart is actually a member of the DIP

7  lender group and the -- the loans are to mature ten days from

8  today it sounds because this hearing is going to be concluded

9  today.

10         And it is the plan of the purchasers to close as close as

11  we can if not just before such time as that -- as that facility

12  expires.  In the event that there is a stay and we are unable

13  to foreclose -- excuse me, to close, obviously there is going

14  to be very significant damage if the debtor in possession

15  financiers are to foreclose or otherwise be able to proceed

16  against the assets.

17         And the damage may, you know, be up to, you know, the full

18  amount of the purchase price.  Hard to tell, it's not something

19  that can be calculated.

20         THE COURT:  The damage you're referring to includes I

21  presume the -- the DIP expiring and the debtor Venture, the

22  Venture debtors having no further ability to operate.

23         MR. WALPER:  That's correct, Your Honor.  And then

24  the inability then to purchase the assets as a going concern,

25  or to -- to ever be able to purchase the assets if the -- if

1 the DIP lenders are able to -- and require -- and allowed to

2 foreclose as a result of the maturity of their loan.

3 THE COURT: All right. Anyone else on the telephone

4 want to respond to the stay motion? I don't know who else we

5 have on the telephone at this point. Anyone else want to

6 respond on the telephone?

7 All right. Ms. Lamb-Hale, I think you were up.

8 MS. LAMB-HALE: Yes, Your Honor. And I would echo

9 the thoughts raised by the counsel for the purchasers and for

10 the DIP agent. I just think it's pretty ironic that Newstart

11 as a part of the lending group would number one, not know that

12 the financing expires in ten days.

13 And -- and number two, make such an argument when the DIP

14 lenders themselves are the ones who've kind of put us on the

15 track for the closing to occur at the end of the month. I

16 would certainly expect that if Mr. Nathan is prepared to -- to

17 file the stay that he would post a bond in the amount of the

18 purchase price. I think that would be appropriate.

19 Because I think and I need to check my asset purchase

20 agreement, but I think that we may be in danger as well of

21 losing our purchaser if the -- if the order is not stayed.

22 Also, I would also state that all of the assets that are

23 essential to the operation of the business are being

24 transferred. So the few executory contracts and leases that

25 must be dealt with -- that remain to be dealt with should in no

1 way suggest that the sale -- there's no harm if the sale isn't

2 consummated and that the 6004(g) provision is waived. And I

3 think Mr. Burgess would like to speak to the issue of whether

4 Newstart is prejudiced with respect to the matter at hand.

5       THE COURT: Well, before you -- before you sit down,

6 a couple questions. And this -- this is related -- the

7 comments were also made by Mr. Nash and Mr. Walper.

8       The terms of DIP facility in place now, remind me, because

9 I remember -- I recall an end of April expiration. Does the

10 DIP facility provide that it expires ten days after the -- the

11 completion of the hearing on the sale motion or the end of

12 April whichever occurs sooner?

13       MS. LAMB-HALE: I think it's ten days after the

14 conclusion of the sale hearing, Your Honor. And Mr. Nash would

15 probably know better than I to the -- to the letter. But that

16 is my understanding of the documents, Your Honor.

17       THE COURT: Mr. Nash, what is your understanding on

18 the question I just asked? Did you hear me?

19       MR. NASH: I did, Your Honor. The DIP financing

20 expires ten days after the conclusion of the sale hearing,

21 period, full stop. That ultimately outside date of April 30th

22 that Your Honor is no doubt recalling from the term sheet, did

23 not make its way into the amendment and its not part of the

24 amendment, so the financing expires ten days after termination

25 of -- or conclusion of the sale hearing which, you know, I

1 guess will be the end of April in any event.

2          THE COURT:  All right.  Thank you.  Ms. Lamb-Hale, I

3 don't know if that is part of the reason you were asking

4 earlier that this sale hearing be adjourned or continued rather

5 than concluded today.  If that was part of your reason you

6 didn't tell me that.  But I still think it's -- it's not

7 appropriate to continue this hearing or to say that it's not

8 completed.  It is going to complete today because the order

9 that grants all the relief sought by the motion, to the extent

10 it's going to be granted at all, is -- is being signed.

11      And to the extent it defers issues until a later time, it

12 seems to me that's not a basis given the issues involved to

13 continue the hearing.  So let me just reiterate that -- that

14 this hearing is going to complete today when I sign this order.

15          MS. LAMB-HALE:  Yes.

16          THE COURT:  All right.  Mr. Burgess, did you want to

17 say something?

18          MR. BURGESS:  Yes, Your Honor.  Your Honor, I think

19 it's important to pick up on the question that the Court raised

20 a few minutes ago as to whether or not a bond would be

21 required.

22      I think under the circumstances the harm that would be

23 imposed upon the debtors' estates if this sale approval order

24 were to be deferred or stayed are substantial such that a bond

25 would be required.  I know that this is not an adversary

1 proceeding technically and so I don't want to overplay the

2 import of Rule 7062 which incorporates Rule 62 of the Federal

3 Rules of Civil Procedure.

4 But at least in that context any stay that would be

5 considered by the Court would require the filing of a bond.

6 And then under Rule 8005 of the bankruptcy rules, there is a

7 further reference to the ability of the Court to enter orders

8 that would protect the interests of all the parties.

9 The Court's ruling as to Newstart's objection was that

10 Newstart was fully protected by its ability if it desires to

11 file an action against the agent or other parties suggesting

12 that there has been a breach of contract or a breach of some

13 other duty and result in damages.

14 The entry of the order approving the sale of the assets

15 will have no impact upon that right of Newstart and therefore

16 protecting its interest by staying the sale is unnecessary. It

17 has its other remedies in some other form.

18 So we do in fact join the suggestion raised by the debtors

19 and other parties that the filing of a bond would be absolutely

20 required if a stay were to be entertained here. But that in

21 all events it's neither necessary nor appropriate to consider

22 staying the order because Newstart has all of its rights and

23 potential remedies preserved in some other forum. Thank you,

24 Your Honor.

25 THE COURT: All right. Thank you. Anyone else wish

1   to be heard on the -- before we hear again from Mr. Nathan on

2   the stay motion?

3          MS. LAMB-HALE:  Your Honor, Mr. Applebaum on behalf

4   of the committee had to leave and he requested that I also put

5   the position of the committee on the record and the committee

6   concurs with what's been said today by other counsel and is

7   opposed to a stay.

8          THE COURT:  By other counsel opposing the stay?

9          MS. LAMB-HALE:  Correct.

10         THE COURT:  All right.  Anyone else before we hear

11  from Mr. Nathan?  Okay, Mr. Nathan.

12         MR. NATHAN:  I'll be brief, Your Honor, it's late in

13  the day.  Your Honor, the requirement of a bond is not an

14  absolute in the Rule 8005.  It's discretionary to the Court in

15  weighing the harm and -- and the issues that are involved.

16  It's up to the Court to make that determination.  I just want

17  you to be aware of that, that it's not an absolute.

18      I think everybody has presented it in a way that it is an

19  absolute.  It's a balancing act for the Court to make that

20  determination.  And certainly on behalf of Newstart, we would

21  ask that any bond be waived and that a stay of appeal be

22  entered.  Thank you.

23         THE COURT:  All right.  Thank you, Mr. Nathan.

24      I'm going to deny the stay motion rather than condition --

25  grant on posting of a bond.  The -- there is no written motion

1  but -- and therefore New start has not by definition had an
2  opportunity to file any sort of brief or statement of --
3  written statement of authorities in support of its motion for a
4  stay here.

5       But I will note that traditionally the factors that trial
6  Courts in the Federal Court system consider under -- under --
7  when dealing with stay pending appeal requests under Federal
8  Civil Rule 62 which does not strictly apply here because this
9  is not an adversary proceeding, but under that rule as well as
10 in other contexts, and I believe Bankruptcy Courts as well in
11 contested matters which is what we have here, and under Federal
12 Bankruptcy Rule 8005 which does appear to have some application
13 here, the Courts consider several factors in deciding whether
14 to issue a stay pending appeal on an order or judgment.

15      One of those is the probability of success on appeal or
16 sometimes put as the likelihood of success on appeal, the
17 merits of the appeal.  As commentators in cases have frequently
18 noted when you're asking the same Court or same Judge that
19 issued the order that you're appealing to in effect rule that
20 this factor weighs in your favor, it's tantamount to asking the
21 Judge to predict that the decision he just made is likely wrong
22 and will likely be reversed on appeal either as legal error
23 based on findings that are clearly erroneous, or is an abuse of
24 discretion.

25      And it is hard of course to expect a party to very often

1 persuade a Judge that just -- the Judge that issues the order

2 or a judgment at issue that that is so.  And the case law

3 generally I think understands that and gives some leeway on

4 that factor by indicating that as long as there are -- that a

5 Court can find this factor weighs in favor of the stay as long

6 as there are serious issues going to the merits with respect to

7 issues on appeal, I don't find though that the -- I conclude

8 that the likelihood of success on appeal is low, quite low, and

9 by Newstart here, and that there are not serious issues going

10 to the merits of potential appeal, at least based on the issues

11 as I understand them that were the subject of Newstart's --

12 Newstart's objection.

13      And it's not to say that Newstart's arguments were

14 frivolous or that -- that Newstart would not have a colorable

15 basis, a good faith basis for pursuing an appeal here and for

16 having made the objections that it made.  When I say they're

17 not serious issues going to the merits, I mean that in the

18 terms of the meaning that the case law gives to that kind of

19 formulation.  Which is that really another way of saying that

20 there -- there is at least a decent chance of success on appeal

21 here.

22      I don't think there is.  And so that factor weighs against

23 the estate in any appeal in my opinion, although I grant you

24 we're talking about a decision that I have made that's being

25 appealed and so there is always, you know, that consideration

1 there.

2     The District Court when -- when and if Newstart asks the

3 District Court for a stay pending appeal, will not have that

4 constraint in this consideration the of probability of success

5 on -- on an appeal.

6     Another factor that the Courts consider is the balance of

7 harms.  That is the -- the harm that may occur to the appellee

8 or appellees if there's a stay pending appeal versus the harm

9 that may occur to the appellant or appellants if there is not a

10 stay pending appeal.

11     And -- and sometimes similar to that, or woven into that

12 is a factor, or at least sometimes overlapping with that is the

13 factor of the public interest.  With respect to those factors,

14 I think those factors, I think those factors weigh strongly in

15 favor of denying a stay pending appeal.

16     The harm or potential harm here to the debtors and the

17 estates of the debtors in the Venture case and the Deluxe case

18 both of staying this approval of this sale motion and order

19 pending appeal and thereby preventing the sale that is -- is

20 being approved here from closing for a period necessary for the

21 appeal to be is presumably some months of time.  It certainly

22 can't be done by the end of April, is damage and harm to the

23 debtors' estates and to the creditors of these estates and

24 other parties in interest who have an interest in maximizing

25 the value of the debtors' estates in these bankruptcy cases.

1    The -- the DIP financing facility for the Venture debtors

2  expires roughly at the end of April.  There is absolutely no

3  assurance or reason to believe on the record before the Court

4  now that there's any reason to believe that the DIP facility

5  would be extended by current DIP lenders, one of which is

6  Newstart, the party seeking the stay here, but only one of

7  which is New start.  Or that it would be extended on terms that

8  are anything but extremely expensive simply because in the

9  marketplace there are no other choices extremely expensive to

10 the debtors' estates.

11    So the -- the ability of the debtors to continue operating

12 this going concern, the Venture debtors, and by extension the

13 Deluxe debtors because they received funding from the Venture

14 debtors and depend on that for their operation, the ability to

15 operate.  The ability of the debtors in all of these cases to

16 continue operating beyond the end of April if there's a stay

17 pending appeal, it appears to be -- would appear to be in very

18 serious jeopardy and probably they would not be able to

19 continue operating and that could lead to any number of

20 catastrophic results from the view from the perspective of the

21 value of the estates in these bankruptcy cases.

22    The sale offers the opportunity to sell the businesses of

23 these debtors as a going concern and I have found and I believe

24 the order recites that this is -- that this maximizes the value

25 of the debtors' estates in these cases opposed to some other --

1 any other alternative other than a sale as a going concern.

2      If debtors' DIP facility expired and they were unable to
3 continue operating the ability to ever sell the debtors'
4 estates as a going concern would be in very serious jeopardy to
5 say the least.  The result any number of catastrophic events
6 could or would occur if the debtors were unable to continue
7 operating because they lost the benefit of their financing
8 through their DIP facilities because the sale could not close
9 by the end of -- by the end of April or within ten days of
10 today before the DIP facility expires.

11      The harm then to the debtors' estates, the value of the
12 debtors' estates to the creditors in the estates of which there
13 are thousands, both administrative claimants and priority
14 claimants as well as the secured creditors as well as the large
15 unsecured creditors and the many smaller unsecured creditors.
16 It would be contrary to their interest in my view to stay this
17 sale order pending appeal.

18      The -- the harm on the other side in my view to denying a
19 stay to Newstart in my view is -- is minimal in that I do
20 believe as I have indicated I think previously in this hearing
21 in dealing with Newstart's objection, that the provisions that
22 we have put in the order approving the sale for the benefit of
23 protecting Newstart does give Newstart the ability to pursue
24 its claims against the agent for the pre-petition lenders, and
25 the other pre-petition lenders to the extent Newstart is

1 correct that there has been any violation by those -- any of

2 those persons or entities of Newstart's rights under the

3 pre-petition loan agreements and related documents.

4     Notwithstanding the approval of the sale order, those

5 claims are preserved expressly by the order and to the extent

6 they exist, Newstart may pursue them if it wishes to without

7 even appealing the order.  And therefore without obtaining a

8 stay pending the appeal and without concern about whether the

9 sale closes or not.

10     The public interest I think given what I've already said,

11 obviously weighs against a stay here.  The public interest is

12 not only the interest of the many administrative claimants and

13 many unsecured creditors in these bankruptcy cases including

14 suppliers to the debtors' businesses, but also the employees of

15 all of these debtors, a large number of -- of people in each

16 case would have -- would be adversely affected if -- in my view

17 if this stay is granted and the sale is not able to close

18 before the DIP facility expires.  So in my view the public

19 interest strongly weighs against granting of a stay pending

20 appeal as well.

21     Further, with respect to the issue of whether the terms

22 that I have discussed to the bankruptcy estates and resulting

23 harm to the parties in interest and the public interest

24 concerns that I have expressed, to the extent Newstart might

25 argue or can be used arguing that that can all be -- that that

1  can all be protected by the -- the Court requiring as a

2  condition of stay pending appeal, the filing of a bond or a

3  security in a sufficient amount, you know, I do note that the

4  Court could stay this order pending appeal and require a bond

5  in what would necessarily be a very large amount, hundreds of

6  millions of dollars probably.

7       But a problem with this is, it's very hard -- it's very --

8  it would be very hard for the Court to -- to accurately

9  estimate today what harm may be suffered and to quantify the

10  dollar amount of that harm that may be suffered by the debtors'

11  estates, in this case by the purchasers, by the pre-petition

12  senior lenders and by other parties in interest if the case the

13  sale order is stayed, the sale cannot close, the DIP facility

14  expires, debtors can no longer operate.

15      It is very hard to -- to quantify that number and

16  therefore it's very hard to be sure that any amount of bond the

17  Court would require astronomical though it might be, would be

18  sufficient.  So in my view that's another factor along with the

19  others that I mentioned that weigh in my view strongly against

20  granting the stay pending appeal.

21      Now Section 363(m) and its provisions do make it difficult

22  and do create problems for Newstart if they are not able to get

23  a stay pending appeal, there's no doubt about that.  But that

24  is the way the Bankruptcy Code is and that's how Congress --

25  Congress chose to give protections of Section 363(m) and (n) in

1  the case of good faith -- good faith purchasers and sales under

2  Section 363 and so that is a choice that Congress made and --

3  and one which I am bound to -- to respect in -- and is part of

4  the regime we all live under the Bankruptcy Code as its

5  presently worded.

6        So the motion for stay pending appeal by Newstart is

7  denied.  Mr. Nathan, if you would like a written order

8  reflecting this ruling, please prepare one.  Simply say for the

9  reasons stated by the Court on the record that the oral motion

10  for stay pending appeal is denied.  I'll -- I'll be happy to

11  sign that very promptly so that you, if you want to, can take

12  that to the District Court.

13              MR. NATHAN:  Thank you.  Can I do that without

14  signature of any of the other parties present?

15              THE COURT:  Yes, absolutely.  You prepare it, and get

16  it in.  I will as soon as I see it, I'll review it and sign it

17  probably immediately.

18              MR. NATHAN:  Thank you.

19              THE COURT:  All right.  All right.  Thank you.  Now,

20  is there any -- do we have the orders -- the order --

21              MS. LAMB-HALE:  Yes, we do, Your Honor.  May I

22  approach?

23              THE COURT:  Sure.  Okay.  So you made the changes in

24  Paragraph 27 in these then?

25              MS. LAMB-HALE:  Yes, where you have it tabbed, Your

1  Honor, in each copy, yes.

2           THE COURT:  All right.  Mr. Shapiro, has he left?

3           MR. NATHAN:  He left.

4           THE COURT:  He left, okay.  Have a chance to check

5  these?

6           MS. LAMB-HALE:  Mr. Shapiro did not look at the other

7  copies.  He looked at the --

8           THE COURT:  All right.

9           MS. LAMB-HALE:  -- original.

10          THE COURT:  Okay.  I've looked at the top copy of

11 that and that's fine, Paragraph 27.  So what I intend to do

12 then is attach the signature pages to the back of the order

13 that's right before the Tab A, one on each and then sign each

14 copy of the order and this can be entered promptly then after

15 that and I think Ms. Lamb-Hale, you'll be able to take a copy

16 with you.

17          MS. LAMB-HALE:  That would be great, Your Honor.  I

18 wondered if you could also do a true copy of the third as well.

19 We can make copies of the signature page.

20          THE COURT:  Ask -- deal with my courtroom deputy on

21 any requests like that.

22          MS. LAMB-HALE:  Okay.

23          THE COURT:  And I'm sure she'll accommodate you if

24 possible.

25          MS. LAMB-HALE:  Thank you.

1          THE COURT:  Is there anything else we need to talk

2    about?  I'm going to take these back in chambers right now and

3    sign them and give them to my courtroom deputy.  Anything else

4    we need to talk about?

5          MR. NATHAN:  I would only ask that they be forwarded

6    to our office as soon as possible, a copy of that order.

7          MS. LAMB-HALE:  We'll talk about that.  We'll get

8    that to you.

9          THE COURT:  Ms. Lamb-Hale?

10          MS. LAMB-HALE:  Yes, I will get that to Mr. Nathan.

11          MR. NATHAN:  Thank you.

12          THE COURT:  Will you -- will you get Mr. Nathan a

13    copy right away?  They're going to file an appeal so they're

14    going to need it.

15          MS. LAMB-HALE:  Okay.

16          THE COURT:  All right.  Anything else?  All right.

17    Thank you all.

18          MR. NATHAN:  Thank you, Your Honor.

19          MS. LAMB-HALE:  Thank you.

20          THE CLERK:  All rise, please.

21       (Court Adjourned at 4:55 p.m.)

22

23

24

25

1

2

3

4

5

6

7 We certify that the foregoing is a correct transcript from the

8 electronic sound recording of the proceedings in the

9 above-entitled matter.

10

11 _Deborah L. Kremlick_                    Dated: _9-11-06_
   Deborah L. Kremlick, CER-4872
12 Shelley J. Grasel, CER-0889

13

14

15

16

17

18

19

20

21

22

23

24

25