FILED (I)

2006 OCT -6 ⊃ 3: 29

COURT
DETROIT

IN THE MATTER OF,                    Case No. 03-48939
                                     Detroit, Michigan
NM HOLDINGS COMPANY, LLC             September 20, 2006
_____/           1:59 p.m.

NM MOLD & ENGINEERING                Adversary No. 04-4125
CORPORATION,

        Plaintiff,

              v

CAROL SHELBY, et al,

        Defendants.
_____/

NM HOLDINGS COMPANY, LLC,            Adversary No. 04-4373,

        Plaintiff,

              v

WINGET, et al,

        Defendants.
_____/

NM HOLDINGS COMPANY, LLC,            Adversary No. 05-4963

        Plaintiff,

              v

VENCO MANAGEMENT CANADA,
LTD.,

        Defendant.
_____/

1 | NM HOLDINGS COMPANY, LLC,      Adversary No. 05-4964

2 |     Plaintiff,

3 |          v
  | MILLARD DESIGN AUSTRALIA
4 | PARTY, LIMITED,

5 |     Defendant.
  | _____/
6 |
  | NM HOLDINGS COMPANY, LLC,      Adversary No. 05-4968
7 |
  |     Plaintiff,
8 |
  |          v
9 |
  | LINDEN CREEK REAL
10 | ESTATE, LLC,

11 |     Defendant.
  | _____/
12 |
  | NM HOLDINGS COMPANY, LLC,      Adversary No. 05-4972
13 |
  |     Plaintiff,
14 |
  |          v
15 |
  | WINGET,
16 |
  |     Defendant.
17 | _____/

18 |                 MOTION HEARING
  |            HONORABLE THOMAS J. TUCKER
19 |    TRANSCRIPT ORDERED BY: JOEL APPLEBAUM, ESQ.

20 | APPEARANCES:

21 | For the Trustee:          JOHN KARACZYNSKI, ESQ.
  |                           Akin, Gump, Strauss, Hauer,
22 |                           & Feld
  |                           2029 Century Park East
23 |                           Suite 2400
  |                           Los Angeles, CA 90067-3012
24 |                           310-229-1020

25 |

```
 1                              JOEL APPLEBAUM, ESQ.  (P36774)
                                EDWARD HOOD, ESQ. (P42953)
 2                              Clark, Hill
                                500 Woodward Avenue
 3                              Suite 3500
                                Detroit, MI 48226
 4                              313-965-8591

 5                              STUART GOLD, ESQ. (P27766)
                                Gold, Lange & Majoros
 6                              24901 Northwestern Highway
                                Suite 444
 7                              Southfield, MI 48075
                                248-350-8220
 8
     For Larry Winget:         JOSEPH DAVIS, III, ESQ.
 9                              Greenberg, Traurig, LLP
                                One International Plaza
10                              Boston, MA  02110
                                617-310-6204
11
                                KEVIN FINGER, ESQ.
12                              KIMBERLY DESHANO, ESQ.
                                Greenberg, Traurig
13                              77 W. Wacker Drive
                                Suite 2500
14                              Chicago, IL 60601
                                312-456-8400
15
                                RALPH MCKEE, ESQ. (P39484)
16                              DEBORAH FISH, ESQ. (P36580)
                                Allard & Fish, P.C.
17                              535 Griswold Street
                                Suite 2699
18                              Detroit, MI 48226
                                313-961-6141
19
     For Alicia Winget, Brian   POWELL MILLER, ESQ.
20   Winget, Gwendolyn Cameron, MARTHA OLIJNYK, ESQ. (P60191)
     Atalicia Tigginelli, Golf  Wienner & Gould
21   Course Services, Winget    950 W. University Drive
     Construction Services:     Suite 350
22                              Rochester, MI 48307
                                248-841-9401
23

24

25
```

| | | |
|---|---|---|
| 1 | For N. Matthew Winget, Linden | FRANK MANDLEBAUM, ESQ. (P17046) |
| | Creek Enterprises, M & M Flow | 430 Rolling Rock Road |
| 2 | Through Systems, Linden Creek | Suite 100 |
| | Real Estate: | Bloomfield Hills, MI 48304 |
| 3 | | 313-875-8080 |
| 4 | For Venture Australia, | SETH GOULD, ESQ. (P45465) |
| | Venture Asia, Miller Design | Wienner & Gould |
| 5 | Australia: | 950 W. University Drive |
| | | Suite 350 |
| 6 | | Rochester, MI 48307 |
| | | 248-841-9401 |
| 7 | | |
| | For Carol Shelby, Shelby | GORDON GOLD, ESQ. (P14087) |
| 8 | International, and Shelby | Seyburn, Kahn, Ginn, Bess & |
| | | Serlin |
| 9 | | 2000 Town Center |
| | | Suite 1500 |
| 10 | | Southfield, MI 48075 |
| | | 248-353-7620 |
| 11 | | |
| | Court Recorder: | Diane Bullis |
| 12 | | LaShonda Moss |
| 13 | Transcriber: | Deborah Kremlick |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | Proceedings recorded by electronic sound recording, transcript produced by transcription service. | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |

1    (Court in Session)

2        THE CLERK:  Please rise.  This Court is back in

3    session.  You may be seated.

4        The Court will call case number 04-4125, 04-4373,

5    05-4963, 05-4964, 05-4968, 05-4969, and 05-4972.

6        THE COURT:  All right.  Good afternoon to everyone.

7    We've called all of these cases at one time just to get that

8    formality out of the way.

9        I want to start out by having everyone state their

10   appearance for the record and then I will talk a bit about the

11   order in which I envision handling this event this afternoon.

12   But I'm going to be open to suggestions, good suggestions from

13   anyone about what order makes the most sense if anyone has

14   them.  Why don't we start then with appearances starting with

15   the plaintiff's side in these cases?

16       MR. KARACZYNSKI:  Good afternoon, Your Honor.  John

17   Karacyznski on behalf of the trustee.

18       MR. APPLEBAUM:  Joel Applebaum, Clark, Hill on

19   behalf of the trustee.

20       MR. HOOD:  Edward Hood, Clark, Hill also on behalf

21   of the trustee.

22       THE COURT:  Mr. Gold is here.  Good afternoon, Mr.

23   Gold.  Others.  Anybody else on the plaintiff's side?  All

24   right, defendant's side.  Let's start with the Winget and --

25   well, let's start with Mr. Winget.

1          MR. DAVIS:  Good afternoon, Your Honor.  Jody Davis

2    on behalf of Mr. Winget.

3          MR. FINGER:  Kevin Finger on behalf of Mr. Winget.

4          MR. MCKEE:  Ralph McKee on behalf of Mr. Winget.

5          MR. MILLER:  Your Honor, my name is Powell Miller

6    and Martha Olijnyk from my firm is here with me.  We represent

7    Alicia Winget, Brian Winget, Gwendolyn Cameron, Atalicia

8    Tigginelli, Golf Course Services, and Winget Construction

9    Services.

10         MR. MANDLEBAUM:  Your Honor, my name is Frank

11   Mandlebaum.

12         THE COURT:  Hold on.  Wait a minute, just a minute.

13         MR. MANDLEBAUM:  Sorry.

14         THE COURT:  Golf Course Services and what was the

15   last one?

16         MR. MILLER:  Winget Construction Services.

17         THE COURT:  All right.  Thank you.  Mr. Mandlebaum.

18         MR. MANDLEBAUM:  Yes, Your Honor.  I represent N.

19   Matthew Winget.  I also represent Linden Creek Enterprises,

20   M & M Flow Through Systems.  Those are actually the same

21   corporate entity, and Linden Creek Real Estate.

22         THE COURT:  All right.  Thank you.

23         MR. GOULD:  Good morning -- good afternoon, Your

24   Honor.  Seth Gould of Weinner and Gould.  I represent Venture

25   Australia, Venture Asia, and Miller Design Australia.

1      THE COURT:  All right.  Anyone else on the defense

2  side?

3      MR. GOLD:  I'm over here just because they ran out

4  of room, Your Honor.  I'm Gordon Gold.  I represent Carol

5  Shelby, Shelby International, and Shelby Automobile.

6      THE COURT:  All right.  Anyone else?  All right.

7  And I understand we don't have anyone on the telephone today.

8  Our information is we have not received information that there

9  was supposed to be anyone on the telephone today, but our

10  normal Court Recorder is out sick today, so if any of you know

11  of anyone who is supposed to participate by phone, let me know

12  that because we're not aware of it.  Anyone know about

13  anybody?

14      MR. DAVIS:  No, Your Honor.

15      THE COURT:  Okay.  Mr. Davis, you are on your feet.

16      MR. DAVIS:  Yes, Your Honor.  We actually have an

17  attorney who as a preliminary matter needs to be admitted pro

18  hac vice with the Court's --

19      THE COURT:  Pro hac vice?

20      MR. DAVIS:  -- submission.  Excuse me, admission --

21  I should know better than that.  Admission into this district.

22      THE COURT:  All right.  Let's do that.

23      MS. FISH:  Good afternoon, Your Honor.  Deborah Fish

24  from the law firm of Allard and Fish.  I'm here today to

25  sponsor Kimberly M. Deshano from the Chicago office of

1  Greenberg, Traurig.  May I approach the bench with her card?

2          THE COURT:  Sure.

3          MS. FISH:  Thank you.

4          THE COURT:  Thank you.  Just a question on your --

5  never mind, never mind.  Okay.  Ms. DeShano, welcome.  I'll

6  swear you in.

7          MS. DESHANO:  Thank you, Your Honor.

8      (ATTORNEY KIMBERLY DESHANO WAS SWORN)

9          THE COURT:  All right.  I'll sign your card here.

10  All right.  I've signed your card.  I'll return that to you.

11  That goes back to the District Court and Ms. DeShano, welcome

12  to the Bar of our Court.

13          MS. DESHANO:  Thank you, Your Honor.

14          THE COURT:  All right.  One moment here.  All right.

15  I had -- I had in mind starting the hearing today with two

16  things.

17      First is -- first is to find out if there are any motions

18  among all these, these 23 motions I think that we scheduled

19  for hearing today that are either resolved, no longer objected

20  to, moot, otherwise do not require a hearing.  I think there

21  are some in that category and I'll talk about that in a

22  minute.

23      Then I had in mind of the substantive motions to hear, I

24  had in mind hearing in case 04-4373, the bifurcation motion

25  and the Winget motion to dismiss.  I think in one of the prior

1 scheduling conferences that was described perhaps by Mr.

2 Finger as the most comprehensive of the motions, the many

3 motions to dismiss in these cases.

4      I recognize there is some overlap or common arguments

5 made among the motions before us today.  I set this large

6 number of matters for hearing today because I assumed that the

7 -- that everyone who is here would want to be here even if I

8 was only hearing a smaller subset of the motions, including

9 the two that I just identified.

10     And I do want everyone to have an opportunity to be heard

11 on their motion.  And would of course encourage everyone to --

12 certainly to with respect to all of these motions, certainly

13 to feel free to argue and advocate for your client as you see

14 best.  But would urge you within that -- with that caveat of

15 course, to try to avoid repetition.

16     To the extent you're making an argument that is made in

17 another motion and in the oral argument before you stand up,

18 you just -- there's lots of things you agree with, you don't

19 have to repeat those, you can just add anything else or any

20 other thoughts or comments you want to add regarding that

21 argument.  That will of course save a lot of time if we can do

22 that.

23     I should say also that there were some motions that we

24 missed in setting these hearings.  That is motions that I

25 would have liked to have set for today as well, but we -- we

1  missed them.  And we've remedied that already by yesterday, I

2  think noticing next -- for next Wednesday at 2:00 o'clock,

3  motions in those cases.  There are two of those cases, 03-5356

4  and 04-5178.

5       Now, getting back to my -- the first thing I alluded to

6  and that is it appears there are some -- there may be some

7  motions in this group that was assigned for notice for hearing

8  for today that are resolved, moot, mooted, not objected to.

9  And I do want to identify those at the outset if we could.

10      And then the -- assuming that we'll start with the motion

11  to bifurcate and the motion to dismiss, we'll ask counsel for

12  Mr. Winget to speak first regarding those motions.  With

13  respect to motions that may not be in dispute or otherwise are

14  mooted, it struck me that that list might include, it looks

15  like there are four motions in the various cases that are

16  basically motions to extend time asking for an extension of

17  time for the particular defendants involved to answer the

18  complaint after there is -- a specified period of time after

19  there's a ruling on their motion to dismiss involving motions

20  -- to the extent there are motions to dismiss that don't seek

21  dismissal of the entire action against those parties.

22      An example of that is the one filed by Mr. Winget, et al

23  in 04-4373 which I noticed the -- the committee filed a

24  statement saying they do not object to the motion.  Apparently

25  there was never an order entered terminating those motions.

1  So they were still on our books and so we set them for

2  hearing.

3      So there may be several in that group.  And then there's

4  another motion that I want to ask about which is the -- in --

5  there's a substitution motion involving the committee which

6  was filed while this -- the Venture case was still a Chapter

7  11 case in case number 05-4963 that might no longer -- might

8  now be moot, and I wanted to find out about that so that we

9  can -- if there's some underbrush that we can clear out right

10  away, then let's -- I'd like to do that.

11      So, who wants to speak to these -- to this underbrush, so

12  to speak?  Someone for the trustee?

13          MR. APPLEBAUM:  Your Honor, I don't think we have a

14  complete list of the cases actually.  I was unaware about the

15  motion to substitute and I'm not sure what the nature of that

16  motion was.  I assume it can be disposed of pretty easily.  It

17  doesn't have to be argued today.  I think what it was if

18  memory serves me, is that we were substituting in taking over

19  from the debtor in part on some of the claims prior to the

20  conversion of the case.

21          THE COURT:  Yeah, it was pre-conversion.

22          MR. APPLEBAUM:  Uh-huh.

23          THE COURT:  I -- you know, without studying it real

24  closely, I assume that it's -- it was mooted by the conversion

25  of the case.  But it was filed in 05-4963, NM Holdings versus

1  Venco Management, August 15, 2005.

2      I'm sorry, no, okay.  It was filed early in the case of

3  docket No. 3 in that case, joint motion and brief in support

4  by the debtors and the Official Committee of Unsecured

5  Creditors, order granting substitution of the Official

6  Committee of Unsecured Creditors in place of the debtors as

7  sole plaintiff, et cetera, et cetera, standing to the Official

8  Committee to receive claims on a nunc pro tunc basis to the

9  date of the filing of the complaint against defendant Venco

10  Management Canada.

11      It seems to me we had a hearing on a similar motion that

12  was opposed and --

13          MR. APPLEBAUM:  And the Court granted it.

14          THE COURT:  -- relief was granted.  But that was --

15  must have been still when the case was a Chapter 11 case.

16          MR. APPLEBAUM:  That's correct.

17          THE COURT:  This -- this a motion, the -- I assume

18  the trustee would succeed to the -- to this and to the -- the

19  original movants, the debtor and the committee as movants

20  here.

21      And so, you know -- you know, I just raise the question

22  it would appear that that is moot.  Does -- does somebody have

23  a different view on that?

24          MR. APPLEBAUM:  No, I don't, Your Honor.  I mean the

25  motion -- we filed the joint motion and briefs in support in

1 all of the adversaries that were filed originally by the

2 debtors and which we intervened and then those which we hadn't

3 intervened. And the Court did grant the joint motion in every

4 case, I believe.

5     So consequently I'm not sure why the order wasn't entered

6 in this case as well. But given what's transpired since then

7 and the conversion, I would have no problem dismissing this

8 motion as moot.

9         THE COURT: The party that objected to it was the

10 defendant Venco Management Canada, Limited which was

11 represented by the same people that represent Mr. Winget.

12         MR. APPLEBAUM: That's right.

13         THE COURT: Ralph McKee, Deborah Fish, Greenberg,

14 Traurig firm. So that --

15         MR. APPLEBAUM: And we had --

16         THE COURT: Is that a motion to --

17         MR. APPLEBAUM: -- and we had a hearing on it, I

18 think so, I mean given that there's a trustee now, I think so.

19         THE COURT: Anybody disagree?

20         MR. DAVIS: It's been a long time since any of us

21 have looked at the paperwork, but I can't imagine it would be

22 anything other than moot.

23         THE COURT: All right. I will deem that motion moot

24 due to the subsequent conversion of the underlying main case

25 to Chapter 7.

1   Now what about these motions to extend regarding time to

2   answer the -- I think there are about five of them. And I

3   confess I've not read every single one. I read a couple and

4   said oh, this is all the same thing.

5       Does the trustee succeeded I think to -- or is relying on

6   the paperwork filed before conversion by the committee and the

7   debtors on these. The committee filed a response, I think to

8   the -- all these saying they don't object. So really it's

9   just needed an order or to get shoved off from my desk like

10  that to get rid of those.

11      MR. KARACZYNSKI: We have no objection to those

12  extensions being granted.

13      THE RECORDER: Would you mind stating your name?

14      MR. KARACZYNSKI: I'm John Karaczynski.

15      THE COURT: All right. Anybody have anything they

16  want to say about those motions?

17      MR. FINGER: No, Your Honor, we'll prepare an order.

18      THE RECORDER: And you, sir?

19      MR. FINGER: Kevin Finger for Mr. Winget.

20      THE COURT: All right. All right. So we need an

21  order in each case with respect to each motion granting it. I

22  think the -- at least the motions that I looked at of these

23  asked for 20 days after the Court ruled on the motion to

24  dismiss, so put that in the order.

25      I think the -- the original form of order just said

1 | motion is granted.  Let's put in the order itself 20 days.

2 | The trustee want to review that order?  These orders that Mr.

3 | Finger is going to prepare?

4 |       MR. FINGER:  Yes, Your Honor.

5 |       THE COURT:  All right.  So, Mr. Finger should send

6 | the order to who?

7 |       MR. APPLEBAUM:  Mr. Applebaum.

8 |       THE COURT:  All right.  So those motions will be

9 | granted with order to follow.

10 |     All right.  Then unless anybody has a -- a better idea of

11 | where to start from hearing the motions than what I suggested

12 | and you know, I'm open to any good ideas, believe me.  I want

13 | to start with the -- the two motions I identified.  And I

14 | think I want to begin with the bifurcation motion.  Anybody

15 | want to suggest that we do it some other way.

16 |       MR. DAVIS:  That's fine by us, Your Honor.

17 |       THE COURT:  All right.  So who is going to speak for

18 | Mr. Winget, et al on the bifurcation motion?

19 |       MR. DAVIS:  Your Honor, I will.

20 |       THE COURT:  And again this is the -- the motion in

21 | 04-4373 -- just a moment.  The joint motion by defendants

22 | Larry Winget, Sr. and several others for bifurcation of issues

23 | for discovery and trial.  All right, Mr. Davis.

24 |       MR. DAVIS:  Thank you, Your Honor.  On the motion to

25 | bifurcate, I want to start off by saying that in typically

1    speaking motions to bifurcate are filed at the commencement of

2    the case, or at least early on in the proceedings and -- and

3    while the Court certainly is aware that this was filed early

4    in the proceedings, I don't think that the Court should take

5    from the passage of time that it somehow has become moot.

6        As the Court is aware, discovery in this case has not

7    commenced in the manner that we, and by we, I think I can

8    speak for the collective we of all the people in this room,

9    thought that it would.  And as a result the issues that are

10   actually addressed in it really haven't changed.

11       What I would like to say, however, Your Honor, is

12   something that I don't think you're expecting.  It's our

13   intention to file by the end of the week a motion for

14   implementation of a discovery management plan.

15       As this Court knows at least generally, the documents

16   that all of the parties need to go forward are currently tied

17   up in separate set of proceedings.  The 6th Circuit's opinion

18   with regard to that is still in the process of implementation.

19   We are all stuck while that process works itself out.  And

20   none of us really controls that process.

21       We are trying not to get in the way of the course of

22   these proceedings moving forward.  I really want to reiterate

23   to the Court, we have tried throughout these proceedings to

24   come up with proposals to keep the case moving and our

25   intention is to file a more detailed plan for the Court that

1  would help Your Honor and the parties do that.  And we'd like

2  to do that promptly.

3      We're trying to get it together as quickly as we can, but

4  as I told you on Monday in the other matter, that developments

5  are happening at this general time and so we haven't been able

6  to get anything in before the Court any earlier.  I frankly

7  would like to speak to my brethren on the other side.  They

8  may not be objecting to some of our thoughts and we'd like to

9  engage them in a dialogue over, and I am actually remiss for

10  having not called them this morning because it was my

11  intention to do so and just forgot.  To engage them in that

12  dialogue.

13      I don't know what their position is on bifurcation

14  anymore for example.  We haven't discussed it with them in a

15  very long time.  But the current circumstances I think compel

16  all of the parties to be creative in coming up with ways to

17  keep the case moving without impacting the variety of other

18  issues, some of which we control, and some of which we don't.

19  So that the cases don't just sit, stalled in neutral while

20  people are waiting for things to happen like documents being

21  released so that we can actually review them.

22          THE COURT:  Let me -- let me just say for the record

23  at this point for those who may not be aware of it, on Monday

24  of this -- Monday morning of this week we had a initial

25  scheduling conference in 18 adversary proceedings that were

1 | filed in the Deluxe bankruptcy case.

2 | And during that conference which was attended by counsel

3 | for both sides, Mr. Davis was here and talked a little bit

4 | about the status of what was going on post remand from the 6th

5 | Circuit decision that dealt with Judge Borman's decision of

6 | about a year ago regarding handling claims of privilege in

7 | connection with a Grand Jury subpoena.

8 | And so just for the benefit of those who were not here on

9 | Monday morning, I did receive some information on the record

10 | during those conferences from Mr. Davis about, although not --

11 | not much in the way of concrete information because he didn't

12 | have it, about what's going on there. To the extent those who

13 | weren't here Monday morning, I assume that most of the people

14 | in the room may have some idea of what's going on in that

15 | proceeding but I don't know who knows what and, you know, I

16 | think -- I just wanted to bring to everyone's attention that

17 | we have had fairly recently some discussion about that.

18 | Mr. Davis at the time based on what you said on Monday

19 | morning it does not, unless something has happened since then,

20 | it doesn't appear that you can really -- you really have a

21 | very good idea of how long the process that's being set up

22 | across the street will -- so to speak in that other

23 | proceeding, will take.

24 | And when documents will be available to the defendants

25 | and for that matter to the trustee. And so I guess I'm

1  curious as to what the discovery management plan is going to

2  be other than geez, we'll get them as soon as we can get them.

3        MR. DAVIS:  Well, Your Honor, what we're trying to

4  do is trying to stage the discovery so that we can move it

5  forward in a manner that minimizes the impact of any

6  inaccessibility that the parties may have to at least certain

7  of the records.

8        THE COURT:  Okay.  So you have some creative ideas

9  for trying to do that.

10        MR. DAVIS:  We're trying to be.  I mean we're trying

11  to -- to be as productive as we can under the circumstances.

12        THE COURT:  Well, but you've not sharing any of this

13  with the other side?

14        MR. DAVIS:  No, and I will.  And as I said, I

15  actually am remiss because it was my intention to call them

16  this morning and I -- and I literally forgot and that is my

17  fault.

18        But I think that in terms of -- of the presentation of

19  these issues to Your Honor, if we got something on file by the

20  end of the week unless our dialogue with the -- the plaintiffs

21  is such that -- that as a group we decide to hold off a little

22  bit to see if maybe collectively we can't come up with

23  something.  I understand under the rules they have 18 days to

24  respond.

25        But we can certainly schedule something in the three week

1   period unless they wanted to do it faster.  There's no rocket

2   science to this, it's literally case management stuff.  But

3   we're trying not to delay your ability to try to get these

4   cases properly organized in a way that they can move forward.

5       But it just seemed a little -- it just -- as I sat down

6   and prepared for this discussion, it occurred to me that

7   knowing that we're going to try to come up with a more

8   detailed plan that in our eyes would fit with this, but

9   probably could be segregated from this if the Court did not

10  want to bifurcate, it made no sense to have that argument

11  today and then two or three weeks from now coming back again

12  to talk about more detailed parts.

13      That to me is a -- a more organic subject that could be

14  discussed at once that would be more productive.  And as I

15  said it may well be that we can work with them on something

16  that would -- would work, I don't know.  I literally have not

17  had any discussions with them about how to do it.

18      THE COURT:  Well, what do you want to do about the

19  bifurcation motion then pending the filing of this motion that

20  you said you're going to file at the end -- by the end of the

21  week which is two days?

22      MR. DAVIS:  I would suggest putting it off for

23  hearing at the same time that our discovery management plan

24  motion which I realize hasn't been filed yet, but that would

25  be scheduled.  I'm happy to pick a date with you for the date,

1  that's -- that's fine.  I mean that's the easy part.

2     And I'd like to move it along.  I don't want to -- for

3  some reason they want to file opposition papers that are more

4  extensive than I would think they would be.  I don't want to

5  cut their time short, but at the same time I'm happy to move

6  it along on a prompt basis.  It just seems to me that those

7  two should be heard together as opposed to motions to dismiss

8  and the bifurcation.

9     THE COURT:  Well, all right.  So I assume this is

10 all news to the trustee.  What does the trustee -- what's the

11 trustee's reaction here?

12    MR. KARACZYNSKI:  John Karaczynski on behalf of the

13 trustee.  Your Honor, I think it makes sense to hold over the

14 bifurcation motion until we see -- see the case management

15 motion.  I suspect that what we're going to see in the case

16 management motion is some attempt at bifurcation and that

17 there will -- there will be some synergy between the two

18 motions.  And so if the Court -- it makes sense then, you

19 know, from our standpoint and for us to see that case

20 management motion before the Court considers both of the

21 motions.

22    THE COURT:  Well, all right.  So it seems to me that

23 Mr. Davis, it makes sense for you to have an opportunity to

24 discuss this -- your ideas -- your side's ideas on this with

25 counsel for the trustee before you file the motion.  And I

1 | think you probably had that in mind too.

2 | Which means that potentially to minimize objections and

3 | disputes about it, work out what you can work out and then

4 | just we'll have hearings and arguments about what you can't on

5 | that.

6 | MR. DAVIS: Yes, Your Honor.

7 | THE COURT: The -- you need to talk to the other

8 | side then before you file the motion, right? I assume you

9 | want to do that.

10 | MR. DAVIS: I would prefer to do that. We, I think

11 | can send him an advance copy of at least the draft management

12 | plan order. You know, so they can see the details of what we

13 | have in mind so we can talk about it with him. We can

14 | probably get that to him tomorrow.

15 | But yes, we would want to talk it over with him. I

16 | didn't ask for their schedules. Unless Mr. Karaczynski and

17 | Mr. Applebaum aren't around the balance of the week, this week

18 | would be a great time to do it so we can get something on file

19 | by the end of the week if we need to file a motion.

20 | THE COURT: Get something on file in two days?

21 | MR. DAVIS: Yes, Your Honor.

22 | THE COURT: All right. So what about the trustee's

23 | availability to discuss this with Mr. Davis and company?

24 | MR. KARACZYNSKI: Your Honor, I'm available to

25 | discuss it on Friday. Tomorrow I'm staying over the night and

1  flying back tomorrow, so I'm going to be on an airplane for a

2  good part of the day tomorrow going out to Los Angeles.

3      But -- but I certainly can discuss it -- you know, be

4  available to discuss it either Thursday afternoon, assuming my

5  flight arrives on time, or Friday, you know, any time on

6  Friday.

7      MR. DAVIS:  I forgot.  Mr. Karaczynski actually had

8  told me that.  Maybe Monday then we would file something, Your

9  Honor.  We can speak to Mr. Karaczynski on Friday.

10     THE COURT:  All right.

11     MR. KARACZYNSKI:  Your Honor, from -- from our

12 standpoint, I mean we share some of the frustration that's

13 been expressed by -- by Mr. Davis about -- about the delay.

14 And we do seem to be somewhat -- there are some documents that

15 are not controlled by the post-remand issues and -- and yet

16 the parties have not really made any substantial progress in

17 exchanging those documents.

18     So we -- you know, we welcome to, you know, take a look

19 at this case management approach and reserving our objections

20 to object to bifurcation which had we argued the motion today,

21 that would be our continued position, that bifurcation is

22 inappropriate.

23     THE COURT:  Well, what about documents that are not

24 controlled by the Grand Jury proceedings?  Why haven't those

25 been gotten by either side?

1          MR. KARACZYNSKI:  Quite frankly, Your Honor, it's

2    somewhat of a mystery to me.  We -- there -- there -- I think

3    there was an -- there was an exchange of communications about

4    that and there was some -- I think there was some

5    misunderstanding about what we were -- inability to produce a

6    certain quantity of documents, a fairly limited quantity of

7    documents but could not produce the bulk of the documents that

8    were the basis of the Doeren Mayhew report because they're

9    under the control of cadence, we don't have -- we don't have

10   them and now they're tied up in the 6th Circuit post-remand

11   issues.

12         Recently we have had dialogue about exchanging documents

13   that are within the respective control of each side and -- and

14   I think we have some agreement and in fact we were -- we were

15   promised some documents within the next week or so.  The

16   quantity of documents that we have to produce that we actually

17   have control over is -- is -- is fairly small and we had

18   engaged in some dialogue for a while about the means of

19   producing those documents and dialogue about standing

20   documents that became somewhat pointless when -- when it

21   became apparent we were talking about a much smaller universe

22   of documents because we just don't control, we don't even --

23   we cannot even get possession of those documents that -- that

24   underlie the Doeren Mayhew report.

25         So there have been some false starts.  I don't think any

1 | side is really responsible for why there were false starts,

2 | but I think we -- we are at least sort of at the precipice of

3 | getting some documents and having an exchange of those initial

4 | disclosure documents.

5 | Additionally we did send out a fairly -- numerous sets of

6 | -- of written discovery within the last 30 to 45 days to -- to

7 | many if not all of the defendants.  And some of those

8 | deadlines have been -- have now been continued over.  So we've

9 | attempted to make some progress when it became clear that we

10 | were going to get sort of wrapped around a pole as far as the

11 | post-remand issues are concerned.

12 | THE COURT:  All right.  So --

13 | MR. DAVIS:  And, Your Honor, if I may.

14 | THE COURT:  Yeah.

15 | MR. DAVIS:  We will be producing documents within

16 | the next week or so as Mr. Karaczynski said.  And that has

17 | nothing to do with the discovery management plan that we're

18 | talking about.  We're not using that to -- to slow that

19 | process down.  And I am assuming that the small body of

20 | documents that the plaintiffs have will also be produced in

21 | roughly that same time period.

22 | MR. KARACZYNSKI:  Yes, Your Honor, they will.

23 | THE COURT:  For the record, Mr. Davis, and I'll ask

24 | trustee's counsel the same question I guess too.  And we

25 | talked about this a little bit on Monday morning.

1    But is it correct that you don't have any sort of

2  reliable estimate of when the parties may be able to get

3  access to these documents that are tied up in what I think Mr.

4  Karaczynski referred to as the 6th Circuit post-remand

5  proceedings?

6         MR. DAVIS:  Yes, Your Honor.  I'm not in a position

7  to estimate when those records will be available to the civil

8  litigants.

9         THE COURT:  Mr. Karaczynski, you're in the same

10  boat, are you?

11        MR. KARACZYNSKI:  As far as I know, we're in the

12  same ballpark, we have no idea.

13        THE COURT:  All right.  So the defendants then

14  represented by Mr. Winget -- I'm sorry, by Mr. Davis, then are

15  going to -- and this is 04-4373, but I assume you may want

16  this to apply to other cases.

17        MR. DAVIS:  Yes.

18        THE COURT:  This case could be sort of the lead case

19  for trying to hash these issues out, I suppose.

20        MR. DAVIS:  That's the way we look at it.

21        THE COURT:  Although I'd certainly want anybody else

22  -- I don't want anybody left out of the loop on this who -- I

23  want everybody to have an opportunity for their input on this

24  to the extent they're going to be bound by this in these

25  cases.

1          MR. DAVIS:  We certainly, Your Honor, are

2   communicating with other co-defense counsel.

3          THE COURT:  Yeah, okay.  All right.  So you're going

4   to file this motion no later than Monday, that would be

5   September 25.

6          MR. DAVIS:  Yes, Your Honor.

7          THE COURT:  That's enough time you think?

8          MR. DAVIS:  If for some reason it's not, the parties

9   jointly will notify you.  In other words the only thing that

10  would slow it down is our communications.

11         THE COURT:  All right.  Do the parties want the

12  normal response time for that if there are disagreements, or

13  do you want to expedite this?

14         MR. KARACZYNSKI:  Your Honor, we're willing -- I

15  mean we're willing to expedite it, get a reasonable time to

16  respond.  You know, we -- the issues aren't going to be --

17         THE COURT:  What do you want time wise?

18         MR. KARACZYNSKI:  Ten days.  So if the motion is

19  filed on Monday, then the following Thursday.

20         THE COURT:  All right.  Instead of ten days, we'll

21  say the date which is I believe, September -- I'm sorry,

22  October 5.

23         And when you do file this motion, and again it might be

24  delayed some which would push back this schedule, just submit

25  an order with the revised schedule for response and so forth,

1  we may have to adjust this. But let's set a -- let's just

2  pencil in a hearing date on this if there are objections.

3  Let's make it October 11, 2:00 p.m. That's a Wednesday, it's

4  the Wednesday following the deadline for the trustee's

5  response.

6      Now, you know, we can't officially notice and schedule a

7  hearing in our system for a motion that hasn't been filed yet.

8  So I would ask you when you -- when you actually file this

9  motion to -- to contact the courtroom deputy, Mary, and let

10  her know it's been filed, remind her that we need to set that

11  -- set it for that date and time.

12      MR. DAVIS: We will do so, Your Honor. Do you want

13  to postpone this hearing then for that same date and that will

14  sort of block the time?

15      THE COURT: We'll -- we'll -- yeah, we'll schedule a

16  further hearing on the bifurcation then for that same date and

17  time. And that we can do officially in the system, so that's

18  -- that's going to be the date for further hearing on the

19  bifurcation motion.

20      Now given what we're doing, is there anybody in the room

21  that wants to say anything further about the bifurcation

22  motion today? No, okay.

23      All right. Then that brings us then to the motion by Mr.

24  Winget and other defendants in 04-4373 who are represented by

25  Mr. Davis and company. Just change -- referring to that, Mr.

1  Jody Davis and company.

2         MR. DAVIS:  I'm sure Messers Greenberg and Traurig

3  would love that.

4         THE COURT:  The motion to dismiss, in part the

5  adversary complaint.  Mr. Davis.

6         MR. DAVIS:  Thank you, Your Honor.  With the Court's

7  indulgence, what we would like to do is actually Mr. Finger

8  and I will be dividing the argument.  Mr. Finger will handle

9  the issues, and I'll just use the general headings here, going

10  back to our motion papers of fraudulent transfers, pleading

11  standards which affects the breach of fiduciary duty and the

12  preference claims in the context of the brief.  In essence

13  that would be pages roughly 7 to 22 of our original motion.

14      I will then handle after that the substantive

15  consolidation, unjust enrichment, and judicial estoppel

16  argument.  The first two are roughly Pages 22 to 31 of our

17  brief, using that as the framework and the judicial estoppel

18  argument was in our supplemental memorandum that was filed

19  sometime thereafter.

20      That takes in consideration our understanding that

21  certain claims have been dropped by the plaintiffs and those

22  would be the balance of the claims in the original complaint

23  and that's consistent with what's in our reply brief.  To the

24  best of my knowledge certainly no one ever called us up

25  saying, oh, you missed it, we actually are still asserting --

1          THE COURT: On that subject I assume that there's

2  never been an order entered officially dismissing or --

3  dismissing I guess would be the word, counts that the

4  committee in their response indicated they no longer would --

5  would pursue.

6          MR. DAVIS: Correct, Your Honor.

7          THE COURT: So with respect to that, I assume the

8  parties can work out an agreed order for that much.

9          MR. DAVIS: I would think so, Your Honor.

10         THE COURT: Is that right, Mr. Karaczynski?

11         MR. KARACZYNSKI: Yes. Yes, Your Honor, we can work

12  out an agree order on the dismissal of those claims that we're

13  not pursuing.

14         MR. DAVIS: Thank you, Your Honor.

15         THE COURT: All right. Now, does -- Mr.

16  Karaczynski, does Mr. Winget -- do Mr. Winget, et al have

17  correct in their -- I think in their reply brief they gave a

18  little chart at the beginning with a list of counts that they

19  perceived were no longer being pursued. Is that a correct

20  list?

21      I think that's Pages 3 and 4 of the reply. This is

22  docket 180. There's a chart and it has line throughs, I think

23  it's intended to be a list of counts that are no longer being

24  pursued by the trustee -- now the trustee at least against the

25  defendants represented by Mr. Davis.